# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

# TAMPA DIVISION

| | |
|---|---|
| Samantha M. Markle, | Case No. 8:22-cv-00511-CEH-TGW |
| Plaintiff, | |
| vs. | |
| Meghan Markle, | |
| Defendant. | |

## DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Meghan, The Duchess of Sussex ("Meghan"), sued as "Meghan Markle," respectfully moves to dismiss Plaintiff's First Amended Complaint (Dkt. 31; "FAC") and seeks recovery of reasonable attorneys' fees and costs under Fla. Stat. § 768.295.

## I.    INTRODUCTION

This is a meritless defamation case. In March 2022, Plaintiff filed her original complaint identifying 17 separate allegedly defamatory statements. (Dkt. 1.) The complaint failed for numerous reasons, as Meghan explained in her motion to dismiss. (Dkt. 15.) Plaintiff seemingly agreed. She did not oppose the motion to dismiss and instead filed the FAC, which abandoned roughly half of her case. Plaintiff also added irrelevant and spiteful allegations that are false and do not belong in a complaint—e.g., that Meghan once "hung up the phone on her." (Dkt. 31 ¶ 11.)

The FAC now alleges that only 10 statements were defamatory. (*See* the summary in the Appendix, *infra*, at pp. 24-25.) Plaintiff's claims are based on two alleged "publications": (1) a book by authors Omid Scobie and Carolyn Durand, "two authors known for reporting on Britain's Royal Family," called *Finding Freedom* (*See* Appendix Statements ("App. St.") Nos. 1-7); and (2) a 2021 interview of Meghan and Prince Harry by Oprah Winfrey (App. St. Nos. 8-10).

Plaintiff did not just pare down her case. She *deleted* numerous specific factual allegations and exhibits from her original complaint relevant to these two subjects. Not surprisingly, they completely undermine her entire case. Most obviously, her original complaint attached a 2018 email from Meghan to the then-Communications Secretary of Kensington Palace, Jason Knauf, that Plaintiff alleged was the basis for the allegedly defamatory statements in *Finding Freedom*. However, the email on its face disproved Plaintiff's claim that Meghan was somehow responsible for *the authors'* allegedly defamatory statements in *Finding Freedom*. A second example: Plaintiff omitted the transcript of Meghan's interview with Ms. Winfrey (attached to the original complaint), depriving the allegedly defamatory statements of any context whatsoever. Clearly, Plaintiff recognized that providing context for the statements made in that interview eviscerated her claim that the statements were defamatory.

Simply put, the FAC pretends that the 2018 email never existed; that there is no transcript of Meghan's interview with Ms. Winfrey in the record; and that various other previously alleged facts undermining her case can just disappear. But, as set out below, Plaintiff cannot so easily walk away from her judicial admissions.

In any event, even if the Court were to ignore Plaintiff's unexplained abandonment of her prior allegations, the claims must all still fail for several reasons. Meghan did not write *Finding Freedom*. Omid Scobie and Carolyn Durand did. No allegations to the contrary have been made or could be made consistent with Fed. R. Civ. P. 11. To state the obvious, Meghan cannot be liable for statements she did not make. Likewise, Plaintiff's allegations that Meghan made three purportedly defamatory statements in a 2021 interview with Oprah Winfrey also fail. Indeed, in her desperation to save her case, Plaintiff quite literally *fabricated* one of the statements, as evidenced by the missing interview transcript.

At bottom, Plaintiff is asking a Court to adjudicate whether Plaintiff and Meghan had ever "been close" (Dkt. 31 ¶ 29), how many times the two "crossed paths" as adults (*id.* ¶ 28), and whether Meghan's feelings that she "grew up as an only child" are "true" or "false" (*id.* ¶ 33; Dkt. 1-9 p. 3). We do not empanel juries to rule on whether two people are "close," or whether one genuinely feels that they "grew up as an only child." Courts are not equipped to adjudicate the legitimacy of a person's feelings about their childhood and relationships. Nor should they be.

This dispute has no place in this Court or any other. This case should be dismissed and Meghan awarded her fees and costs pursuant to Fla. Stat. § 768.295.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Original Complaint.

The original complaint alleged that in December 2018, authors Omid Scobie and Carolyn Durand, "two authors known for reporting on Britain's Royal Family,"

were in the process of writing a then unnamed book about Meghan and her newlywed husband, Prince Harry. (Dkt. 1 ¶ 22.) Plaintiff alleged—and Meghan denies—that Scobie and Durand reached out to Meghan, including through Knauf. (*Id*. ¶ 23.) Plaintiff asserted that Knauf agreed to speak to the authors on background and that Meghan sent him an email with "some background reminders" before he did. (*Ibid.*) A supposed copy of that December 10, 2018 email was attached as Exhibit 1 to the complaint. (Dkt. 1-2.) Plaintiff alleged that the email contained seven supposedly defamatory statements. (Dkt. 1 ¶¶ 25.a-g and Dkt. 1-2.)

Scobie and Durand's book, *Finding Freedom*, was eventually published in August 2020. Plaintiff alleged that the book contained seven purportedly "false and defamatory" statements about her. (Dkt. 1 ¶¶ 26-27.) Among *many other* problems, the statements were made by Scobie and Durand, not by Meghan. Indeed, virtually none of *Scobie and Durand's statements* in the book had any nexus whatsoever to Meghan's December 2018 email. (*Id*. ¶¶ 24-26.)

Unrelated to the above, Plaintiff also alleged that three statements made by Meghan over the course of a two-hour interview in 2021 by Oprah Winfrey were purportedly defamatory. (Dkt. 1 ¶ 29 and Dkt. 1-9 [excerpts of interview transcript].)

## B. Plaintiff's First Amended Complaint.

Meghan timely filed a motion to dismiss the original complaint for failure to state a claim on May 13, 2022. (Dkt. 15.) Plaintiff did not, and could not, defend the original complaint. Instead, on June 3, 2022, Plaintiff, having since replaced her counsel, filed the FAC. (Dkt. 31.)

Among the ways in which the two pleadings differ, the FAC dropped all claims based on the supposed December 10, 2018 email from Meghan to Knauf that Plaintiff had alleged were the basis for Scobie and Durand's allegedly defamatory statements in *Finding Freedom*. As set out in the original motion to dismiss, these claims were both time-barred and not actionable for other reasons. (Dkt. 15 pp. 6-8, 13-15.) Not only that. Plaintiff deleted *all* references to the email. It is not hard to see why: Virtually all of the supposedly defamatory statements in *Finding Freedom* could not *possibly* have been based on that email. (*See* Dkt. 15 pp. 13-16.)

Nonetheless, the FAC continues to base its claims on *Finding Freedom*—without ever explaining how *Meghan* is responsible for statements made in a book written by two unrelated and independent professional authors "known for reporting on Britain's Royal Family." The *sole* allegation on this point is ambiguous and conclusory: "[T]he false information contained in the book came from [Meghan] herself, through her agent and communications secretary." (Dkt. 31 ¶ 18.)

The FAC also continues to rely on largely the same statements from Meghan's 2021 Oprah Winfrey interview as did the original complaint. (*Id.* ¶¶ 32-34.) That said, Plaintiff omitted the transcript, which *had* been attached to the original complaint. (Dkt. 1 ¶ 29 and Dkt. 1-9.) Again, it is obvious why. The transcript shows that Plaintiff is blatantly misrepresenting the statements Meghan *actually* made.

### III.   <u>PLAINTIFF'S REPACKAGED DEFAMATION CLAIM STILL FAILS</u>

### A.   Early Dismissals Are Particularly Appropriate in Defamation Cases.

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint's allegations. A complaint overcomes a Rule 12(b)(6) challenge only when it alleges sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]hen, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action," the complaint must be dismissed. *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015).

Pretrial dismissal is particularly appropriate in defamation cases because of the "chilling effect" these cases have on First Amendment rights. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978) (per curiam). As explained by the Eleventh Circuit, "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

### B.   None of the 10 Allegedly Defamatory Statements are Actionable.

As noted above, Plaintiff relies on 10 supposed statements to allege defamation. To aid the Court, those 10 purported statements have been listed in an Appendix to this brief (at pages 24-25 below), along with citations to the First Amended Complaint, short explanations for why they are non-actionable, and citations to the portions of this brief further explaining why. We now turn to those more fulsome explanations.

MOTION TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

### C.    As a Matter of Law, Meghan Did Not "Publish" Any of the Statements in *Finding Freedom*.

Under Florida law, a plaintiff in a defamation case must allege and prove that "(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the falsity of the statement caused injury to plaintiff." *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006).

With respect to the allegedly defamatory statements in the book *Finding Freedom*, all claims based on those statements fail for the simple reason that Meghan did not make the statements. In legal terms, Plaintiff fails to establish the first element of a defamation claim: the requirement that "the defendant *published* a false statement." *Ibid.* (emphasis added). "Because the publication of a statement is a necessary element in a defamation action, *only one who publishes* can be subject to this form of tort liability." *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1017 (Fla. 2001) (citing Restatement (Second) of Torts § 558(b) (1977)) (emphasis added).

Plaintiff cannot possibly allege that Meghan published the statements in *Finding Freedom*. There is no dispute that two unrelated authors wrote and published that book, not Meghan. Plaintiff's vague and conclusory allegation that "the false information contained in the book [*Finding Freedom*] came from [Meghan] herself, through her agent and communications secretary" does not change the analysis. (Dkt. 31 ¶ 18.) Even if we indulge the fantasy that "the false *information*" in the book "came from" Meghan through an agent, the actual (allegedly) defamatory *statements* were made and

published by the authors. Indeed, the FAC itself repeatedly alleges that "the *book* states" or "the *book* falsely states." (*Id.* ¶¶ 20, 21, 23, 24, 26, 28, 30 (emphasis added).)

Plaintiff does not and cannot allege that Meghan actually *wrote* the book or *wrote* the complained-of statements. Plaintiff does not and cannot allege that the statements in *Finding Freedom* were made by Meghan, repeated by Knauf, and then published, verbatim, in the book. Plaintiff does not and cannot allege *any* statement at all *by* Meghan in *Finding Freedom*. Her failure to plead the substance of Meghan's alleged defamatory statements is the end of her claim. *Five for Entertainment S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) ("With respect to the statements made by Baldiri, Plaintiffs failed to allege when those statements were made and failed to include a sufficient description of the statements."); *Gotel v. Carter*, 785 F. App'x 748, 750 (11th Cir. 2019) (dismissing slander claim against rapper where plaintiff "offered no details concerning … the slanderous statements he allegedly made about her in his songs").

Relatedly, the allegation that supposedly "false information" *originated* with a third party (i.e., not the actual publisher) is not enough to support a defamation claim against that third party. Indeed, courts applying Florida law have repeatedly rejected such attempted end-runs around the publication requirement. For example, in *Johnson v. Darnell*, 781 Fed. Appx. 961 (11th Cir. 2019), plaintiff based a defamation claim on allegations that two sheriff's deputies had made "fabrications" in a warrant application, which then resulted in the plaintiff's "name and picture being posted on

Alachua County's Most Wanted list." *Id.* at 964. The Eleventh Circuit held that this was *not* enough to state a defamation claim under Florida law against the two deputies and affirmed the district court's dismissal under Rule 12(b)(6). The Court held that to plead "a valid claim for defamation under Florida law," the plaintiff "need[ed] to allege that *the defendants themselves* were responsible for publishing the [allegedly] defamatory material—here the Most Wanted list—not that something they did indirectly led to the publication of that material." *Ibid.* (emphasis added).

Similarly, in *Klayman v. City Pages*, 2015 WL 1546173 (M.D. Fla. Apr. 3, 2015), an attorney named Larry Klayman asserted defamation claims against several defendants, including a blogger named Ken Avidor. *Id.* at *3. Klayman's claim was based on a news article for which Avidor was a *source*, but *not* the author. In particular, the article highlighted "a couple of nuggets buried" in an Ohio court's ruling in Klayman's divorce proceedings, which it credited Avidor for unearthing. *Ibid.* Nonetheless, the Court held that Avidor could not be liable for the allegedly defamatory statements in the article—even though Avidor had emailed a copy of his own blog post about the ruling to the author of the article—because Avidor did not himself publish or author the article. *Id.* at *10.

The same result applies here. There are no allegations—nor could there be—that Meghan had "any control, directly or indirectly, over whether or not" the authors of *Finding Freedom* used the "false information" she supposedly indirectly provided to them through yet another party, i.e., the Kensington Palace Communications

Secretary (*see* Dkt. 31 ¶ 18). *Brodsky v. Buchanan*, 217 So. 2d 338, 339 (Fla. 3d CA 1969) (affirming summary judgment for a Miami "police inspector" who had "forwarded the name of [plaintiff] to the office of the Sheriff of Dade County, Florida three months prior to the alleged libelous publication" but was "not shown to have had any control over the use, if any, the Sheriff's office made of this information or any control, directly or indirectly, over whether or not the Sheriff's office published anything concerning the same.").

In other words, there is no showing that Meghan herself was "responsible for publishing the [allegedly] defamatory material." *Johnson*, 781 Fed. Appx. at 964. That Meghan herself did not publish the allegedly false statements, and had no control over their publication, means that any defamation claim based on statements in the book by unrelated and independent authors must fail. It is just that simple: Meghan did not make the statements. She is not liable for them.

### D.    There Is No Overlap Between the December 2018 Email and *Finding Freedom* Anyway.

Publication aside, for Meghan to be liable for *Scobie and Durand*'s statements, Plaintiff would have to establish that the allegedly defamatory statements are actually traceable to her, not just that it was "reasonably foreseeable"[1] some of the statements might be used by the authors of *Finding Freedom*.

---

[1] Courts in this District have rejected the proposition that a defendant can be liable for a republication by a third party, over whom the defendant has no control, solely because such a republication might have been "reasonably foreseeable." *Klayman*, 2015 WL 1546173, at *10 (declining "to permit Plaintiff to proceed on [a] theory of liability" that would hold a

As noted above, Plaintiff vaguely alleges that "the false information contained in the book [*Finding Freedom*] came from [Meghan] herself, through her agent and communications secretary." (Dkt. 31 ¶ 18.) But the Court need not stick its head in the sand and ignore the original complaint's very specific allegations about *precisely* where those statements came from: namely, a December 10, 2018 email from Meghan to the Communications Secretary, Jason Knauf. (Dkt. 1 ¶¶ 7, 25.a-g and Dkt. 1-2.) Those allegations are judicial admissions binding on Plaintiff. *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) ("a party is bound by the admissions in his pleadings"); *Burns v. SUPERVALU Holdings, Inc.*, 2009 WL 10687766, at *2 (N.D. Ala. 2009) (plaintiff is bound by allegations in original complaint and attachment thereto as judicial admissions and cannot avoid dismissal of amended complaint by alleging facts contrary to original complaint and omitting attachment).

In fact, the allegedly false statements in the book are not found in the December 10, 2018 email (Dkt. 1-2). To wit:

- The 2018 email did not say that Plaintiff and Meghan's "paths had only crossed twice since they grew up." (*Compare* Dkt. 31 ¶¶ 21-23 [App. St. No. 1], *with* Dkt. 1-2.)

---

blogger liable for a news article merely because it was "reasonably foreseeable" that the news organization would use the blog post he emailed to it as a source for the article); *Pierson v. Orlando Regional Healthcare Systems, Inc.*, 2010 WL 1408391 at *12 n.16 (M.D. Fla. Apr. 6, 2010) (rejecting argument that "a defendant can be liable for defamation based on third-party republication if that republication was 'reasonably foreseeable'").

- The 2018 email said nothing about Plaintiff having only one picture of Meghan and whether Plaintiff ever sold pictures. (*Compare* Dkt. 31 ¶ 24 [App. St. No. 2] *with* Dkt. 1-2.)

- The 2018 email did not assert that Plaintiff "reached out to The Sun" or that she was paid "handsomely" by it. (*Compare* Dkt 31 ¶ 26 [App. St. No. 3] *with* Dkt. 1-2.)

- The 2018 email did not mention Meghan's first wedding and thus necessarily said nothing of whether Plaintiff had been invited to that wedding. (*Compare* Dkt. 31 ¶ 28 [App. St. No. 6] *with* Dkt. 1-2.)

- And the 2018 email did not mention conversations with Meghan's father about Plaintiff. (*Compare* Dkt. 31 ¶ 28 [App. St. No. 7] *with* Dkt. 1-2.)

The *only* potential commonality between the 2018 email and the allegedly defamatory statements in *Finding Freedom* is that *Finding Freedom* states that Meghan did not "grow up with" Plaintiff, that Meghan "barely saw" Plaintiff, and that Meghan and Plaintiff had "never been close." (Dkt. 31 ¶¶ 28-29 [App. St. No. 4, 5].) But as explained immediately below, these statements cannot possibly be defamatory or provably false. They are non-actionable opinion and not defamatory to boot.

In short, not only has Plaintiff failed to allege that Meghan published the allegedly defamatory statements in *Finding Freedom* (*see* § III.C; pp. 7-10, *supra*), but Plaintiff's judicial admissions regarding what Meghan actually did (allegedly) write affirmatively disprove that Meghan made such statements.

### E.   Various Statements in *Finding Freedom* Are Opinion, Substantially, True or Not Defamatory at All.

It is axiomatic that "[o]pinions cannot be defamatory." *Hoon v. Pate Constr. Co.*, 607 So. 2d 423, 429 (Fla. 4th DCA 1992). On top of the defects above, several of the

allegedly defamatory statements are opinions: namely, that they did not "grow up" together; that Meghan "barely saw" her; and that the parties had "never been close." (Dkt. 31 ¶¶ 28-29.) These are textbook examples of non-actionable opinion. Courts are not competent to adjudicate the truth or falsity of whether relationships are "close," or whether two persons "grew up together," or what qualifies as "barely seeing" a person during childhood. There are no objective standards to measure these types of statements.[2]

Plaintiff also takes issue with *Finding Freedom*'s statement that Meghan and Plaintiff's "paths had crossed only twice since they grew up." (Dkt. 31 ¶ 21.) Given the vagueness and indeterminacy of what "cross[ing] paths" means (in person? by phone? email? texting? etc.), this also qualifies as non-actionable opinion. Regardless, Plaintiff does not *actually* allege the statement is false. Plaintiff *asserts* that this statement is false *because* Meghan and Plaintiff "at one point lived together and have been in frequent contact." (*Id.* ¶ 22.) But the two only "lived together" when Meghan was a child (*id.* ¶ 7), and the allegedly "defamatory" statement referred to the number of times they crossed paths "*since they grew up*." (*Id.* ¶ 21 (emphasis added).) Plaintiff does not and cannot deny that the two have only crossed paths "twice since they grew

---

[2] *See Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 755 (R.I. 2004) ("characterizing a relationship as 'close' … does not rise to the level necessary to support a false-light claim when the characterization is mere opinion"); *Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) (Posner, J.) (distinguishing "mere hyperbole," e.g., "scam," "fake," "phony," and "lazy, stupid, crap-shooting, chicken-stealing idiot," from "falsifiable assertions of discreditable fact") (quotation marks omitted).

up." (*Ibid.*) As to the statement that the two "have been in frequent contact," there is no claim as to *when* they supposedly "have been" in such contact (which they have never been). (*Id.* ¶ 22.) More to the point, being in "frequent contact" at *one* point does not mean you have "crossed paths" more than twice "since you grew up."

In any event, Plaintiff's original complaint conceded that she had not actually seen Meghan since her 2008 college graduation. (Dkt. 1 ¶ 25.b.) As discussed above, Plaintiff cannot ignore these judicial admissions. Thus, the facts on record clearly support that Meghan and Plaintiff may only have "crossed paths" twice since "they grew up." (Dkt. 31 ¶ 21.) Stated differently, the statement is "substantially true," i.e., "the 'gist' or the 'sting' of the statement is true" even if it is not "perfectly accurate." *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706–07 (Fla. 3d DCA 1999).

Finally, there is *nothing* defamatory about saying that two persons are not "close," barely saw each other, only "crossed paths" on two occasions, etc. A statement is only "'defamatory' if it tends to harm the reputation of another as to lower him or her in estimation of community or deter third persons from associating or dealing with the defamed party." *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002). Saying that two individuals are not "close," barely saw each other, only crossed paths twice, and did not "grow up together," does not come close to this standard.

## F.   The Claims Based on the Interview with Oprah Winfrey Also Fail.

Plaintiff alleges that three statements made in a 2021 interview of Meghan by Oprah Winfrey defamed her. These are that Meghan "stated that [1] she was 'an only

child,' [2] who only met [Plaintiff] a 'handful of times,' and [3] that [Plaintiff] only changed her surname to Markle after the Duchess started dating Prince Harry so that Mrs. Markle could cash in on her newfound fame." (Dkt. 31 ¶ 33 (bracketed numbers added).) We address each statement in turn.

First, Plaintiff's statement about being an "only child" (App. St. No. 8) is another textbook example of opinion. The full statement from the transcript attached to Plaintiff's original complaint (Dkt. 1-9), occurs after Ms. Winfrey asked Meghan about her "relationship" with Plaintiff (to whom Ms. Winfrey referred as her "half-sister on her father's side"). (*Id.* p. 3.) Meghan responded that she "really [did not] know" Plaintiff: "I don't feel comfortable talking about people that I really don't know. *But I grew up as an only child*, which everyone who grew up around me knows, and I wished I had siblings." (*Ibid.* (emphasis added).)

In context, it is clear that Meghan was not saying that she was *literally* an "only child" in that neither of her parents had other biological children. Rather, she was asked a question about her "half-sister on her father's side," and responded that she really did not know her. She did not deny her existence. Meghan then immediately explained that she "*grew up* as an only child." Any person viewing this interview would understand that Meghan was expressing an opinion about her *lack of* a sibling relationship with her father's other biological children. Such a subjective characterization of *her own childhood* and her relationship, or lack thereof, with Plaintiff cannot support a defamation claim. Such inherently personal and individualized feelings—i.e., how one feels towards their family members and how one characterizes

*one's own* relationship with the father that separated from her mother (and lived elsewhere) from age 2 on—are simply not falsifiable.

Second, the alleged statement in the interview that Meghan "only met [Plaintiff] a 'handful of times'"[3] (Dkt. 31 (FAC) ¶ 33 [App. St. No. 9]) is not even in the transcript of the interview attached to Plaintiff's original complaint. (*See* Dkt. 1-9.) In any event, and particularly without any context, the term "handful" is too vague to be subject to objective measurement and falsifiable. Moreover, as noted above, it is "substantially true" that the two have only met a "handful of times," particularly if the context was Meghan's own memories—after all, Plaintiff moved out of the house when Meghan was 2 years old. *Smith*, 31 So. 2d at 706–07. And again, there is nothing defamatory about saying two persons have only met on a "handful" of occasions. *Mile Marker*, 811 So. 2d at 845.

Third, and finally, Plaintiff alleges that Meghan said, in the interview with Ms. Winfrey, that Plaintiff "only changed her surname to Markle after the Duchess started dating Prince Harry *so that Mrs. Markle could cash in on her newfound fame.*" (Dkt. 31 ¶ 33 [App. St. No. 10] (emphasis added).) This is simply false. The italicized portion was *never* said. According to the transcript that Plaintiff herself has put in the record, this is the *entirety* of what Meghan actually said on the subject during her interview: "She changed her name back to Markle, and I think she's an [*sic*] early fifties at that time,

---

[3] Notably, in her original complaint, Plaintiff referred to only one time that the parties "met" as adults.  (Dkt. 1 ¶¶ 25.b, 29) Plaintiff did refer to *phone calls* and *emails* at unspecified times, but that is not having "met" with Plaintiff. (Dkt. 1 ¶ 25.b.)

only when I started dating Harry. And so I think that says enough." (Dkt. 1-9 p. 4.) Thus, the FAC's most incendiary alleged statement—that "*Mrs. Markle [tried to] cash in on her newfound fame*" (Dkt. 31 ¶ 33 (emphasis added))—is a complete and utter fabrication.

Ironically enough, the remainder of the statement—that Plaintiff "only changed her surname to Markle after the Duchess started dating Prince Harry"—is substantially true and therefore non-actionable. Although Plaintiff is suing under the name "Samantha M. Markle," she admitted that she has also gone by her two married names: Grant and Rasmussen. (Dkt. 1 ¶ 25.c.) The fact is that when Plaintiff first began interviews after Meghan started dating Prince Harry, she went by "Grant."[4] And as late as September *2016*—just two months *before* Meghan's relationship was widely reported,[5] and *12* years after her divorce—Plaintiff was still going by the name "Rasmussen," not "Markle." (*See* RJN Ex. 2 [*Scott Rasmussen v. Samantha M Rasmussen*, No. D-202-DM-200304974 (N.M. Dist. Ct. filed Dec. 2, 2003)]; RJN Ex.

---

[4] See James Beal & Emily Andrews, *PRINCESS PUSHY Prince Harry's new flame Meghan Markle is 'a social climber' who 'is not fit to be royal' – according to her own SISTER*, The Sun (Nov. 1, 2016), online at https://www.thesun.co.uk/news/2096699/sister-of-prince-harrys-new-flame-warns-meghan-markle-is-a-diva-with-soft-spot-for-gingers-who-is-not-fit-to-be-a-royal/. *See also* Req. for Jud. Notice ("RJN") at pp. 4-5.

[5] *See, e.g.*, Estelle Shirbon, *TEXT-Prince Harry's statement on media "harassment" of new girlfriend*, (Reuters Nov. 8, 2016), online at https://www.reuters.com/article/britain-royals-harry-statement/text-prince-harrys-statement-on-media-harassment-of-new-girlfriend-idUSL8N1D93MU (describing "Meghan Markle" as his "girlfriend").

3 [*Samantha Rasmussen v. Winrock Partners LLC et al*, No. D-202-CV-201605774 (N.M. Dist. Ct. filed Sept. 20, 2016)].)

## IV.   PLAINTIFF'S INJURIOUS FALSEHOOD CLAIM IS DUPLICATIVE AND INSUFFICIENTLY PLED

The FAC's other principal gambit is to scrap the original Count II for "defamation by implication" in favor of a new Count II for "injurious falsehood." (Dkt. 31 ¶¶ 55-72.) This obscure tort protects the *economic* interests of an injured party against pecuniary loss, in contrast to defamation, which protects the personal *reputation* of the injured party. *Callaway Land & Cattle Co., Inc., v. Banyon Lakes C. Corp.*, 831 So.2d 204, 209 (Fla. 4th DCA 2002). But it is no help to Plaintiff.

For one thing, injurious falsehood still requires, among other things, "(1) a falsehood; (2) published or communicated to a third party …." *Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984). Florida law thus requires as an essential element a specific and unfavorable falsity uttered by the defendant about the plaintiff— which, as noted above, is lacking here. For another, this claim is impermissibly duplicative of the defamation claim. And, regardless, Plaintiff has not pleaded—and cannot plead—special damages, as required to support this "disfavored" claim. This claim, too, should be dismissed.

### A.   The Single Action Rule Bars Plaintiff's Second Cause of Action.

"In Florida, a single publication gives rise to a single cause of action." *Callaway*, 831 So. 2d 204, 208 (citation omitted). The "single publication/single action rule does

MOTION TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

not permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based." *Ovadia v. Bloom*, 756 So. 2d 137, 141 (Fla. 3d DCA 2000); *see, e.g.*, *Kamau v. Slate*, 2012 WL 5390001, at *7–8 (N.D. Fla. Oct. 1, 2012) (allowing plaintiffs to amend their defamation claim, but dismissing counts for injurious falsehood because it relied on same event as the defamation claim).

In *Klayman*, for example, the plaintiff alleged that he had suffered emotional distress from the allegedly defamatory statement. 22. F. Supp. 3d at 1254-55. The court threw out the standalone emotional distress claim "under Florida's single action rule": The plaintiff, it reasoned, "ha[d] not shown the existence of any *independent facts, distinct from the subject of his defamation claim*, on which he bases [this] additional claim"; rather, he relied "on the *same* underlying facts and cause of action as [the defamation cause of action] to assert *different* damages from the same injury—a single, online publication." *Id.* at 1257 (emphasis added). Similarly, in *Kamau*, the court dismissed the injurious falsehood claim because the plaintiffs were not entitled to "duplicate claims for libel ['injurious falsehood-trade libel'] and defamation where the basis for that claim is the same publication or event." 2012 WL 5390001, at *8.

The same result follows here. Plaintiff's defamation claim is based on statements in *Finding Freedom* and the Oprah interview (Dkt. 31 ¶¶ 45, 46)—which, she claims, caused her to suffer "injury to her occupation as a mental health counselor" and caused "the sales for her autobiography [to] drastically decrease[]." (*Id.* ¶ 53.) Likewise, her "injurious falsehood" claim is based on supposedly "false and

defamatory statements in the book *Finding Freedom*" (*id.* ¶¶ 56-59), and "further" statements "on the CBS Oprah Winfrey interview" (*id.* ¶ 60). And, as with her defamation claim, Plaintiff alleges she "lost business" as a "mental health counselor" and her "autobiography sales tanked." (*Id.* ¶¶ 63-64.) Because Plaintiff's injurious falsehood claim is based on the same underlying facts and intended to compensate for the same alleged harm, it is barred by the single action rule.

### B. <u>Plaintiff Has Failed To Plead Special Damages.</u>

Redundancy aside, "[t]he amended complaint omits one crucial element of injurious falsehood. To state a claim, a plaintiff must specifically plead special damages."[6] *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999); *see Bothmann*, 458 So.2d at 1168. "The 'special damage rule requires the plaintiff to establish pecuniary loss that has been realized or liquidated, as in the case of specific lost sales.'" *Salit*, 742 So.2d at 388 (quoting PROSSER AND KEATON ON THE LAW OF TORTS, § 128 at 971 (5th ed. 1984)). Of particular relevance here, the special damages pled must have been "foreseeable and normal consequences of the alleged wrongful conduct, and the conduct must be a substantial factor in bringing about the losses." *Bothmann*, 458 So.2d at 1170.

---

[6] Special damages are actual, out of pocket losses which must be proven by specific evidence as to the time, cause and amount; they are distinct from the more customary harms inflicted by a defamatory falsehood, such as impairment of reputation and standing in the community. *Continental Cas. Co. v. Southw. Bell Tel. Co.*, 860 F.2d 970, 976 (10th Cir. 1988).

In federal court, a claim for special damages must also be pleaded with particularity. Federal Rule 9(g) could not be more clear: "If an item of special damage is claimed, it must be specifically stated." *See also Nat'l Numismatic Certification, LLC. v. eBay, Inc.*, 2008 WL 2704404, at *19-20 (M.D. Fla. July 8, 2008).

Here, however, the FAC "does not reveal any 'realized loss,' that characteristic of 'special damage' that is a crucial element of the cause of action." *Salit*, 742 So. 2d at 388. Instead, Plaintiff seeks entirely nebulous damages in the form of "lost business" as a "mental health counselor" (Dkt. 31 ¶ 63) and lost "autobiography sales" (*id.* ¶ 64). That is not enough. *See generally Nat'l Numismatic Certification*, 2008 WL 2704404, at *19–20. Plaintiff has not "identif[ied] … *specific* customers or transactions lost as a result of the [alleged] disparagement." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1269–70 (S.D. Fla. 2004) (internal citation omitted) (emphasis added). Plaintiff has also not "allege[d] facts demonstrating the *difference* in sales prior to the alleged libel and after it, and also explain[ed] *why* [she] could not identify which particular customers withheld business." *KLS Martin, Inc. v. Med. Modeling, Inc.*, 2018 WL 8139133, at *9 (M.D. Fla. Dec. 17, 2018) (emphasis added). Her references to "lost business" and "tanked" sales are no more persuasive than one to "unnamed 'customers.'" *Ibid*.

## V.   MEGHAN IS ENTITLED TO HER ATTORNEYS' FEES AND COSTS

Meghan is entitled to recover her attorneys' fees and costs under Florida's anti-SLAPP statute. Florida enacted its anti-SLAPP law to spare defendants the "great

MOTION TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

expense, harassment, and interruption of their duties" from lawsuits that seek to suppress the exercise of First Amendment rights. Ch. 00-174, 2000 Fla. Laws 1; *see WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 561 (Fla. 4th DCA 2019) (memorandum) ("The longer such suits linger, the greater the expense and interruption of the lives of the targets, the greater the threat of financial liability, and the greater the chill on the exercise of constitutional rights.").

To that end, the statute prohibits the filing of a lawsuit that (a) is "without merit" and (b) arises out of the defendant's "exercise[ ] [of] the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3). "[F]ree speech in connection with a public issue" is defined broadly to include "any written or oral statement that is protected under applicable law" and "made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." *Id.* § 768.295(2)(a). The prevailing party is entitled to "reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." *Id.* § 768.295(4).[7]

---

[7] Every federal court to consider the issue has held that Florida's anti-SLAPP statute applies in federal court. *See Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1350–51 (S.D. Fla. 2020) (holding, as a matter of first impression, that Florida's anti-SLAPP fee-shifting provision could be applied in federal diversity actions); *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021) (citing *Bongino*); *Mac Isaac v. Twitter, Inc.*, --- F. Supp. 3d ---, 2021 WL 3860654, at *6–7 (S.D. Fla. 2021) (same); *Vibe Ener v. Duckenfield*, 2020 WL 6373419, at *4–5 (S.D. Fla. Sept. 29, 2020). *Accord Gov't Emps. Ins. Co. v. Glassco Inc.*, 2021 WL 4391717, at *5 & n.9 (M.D. Fla. Sept. 24, 2021).

This lawsuit falls squarely within the ambit of Florida's anti-SLAPP statute.

First, because Plaintiff fails to state a claim for the reasons set out above, her lawsuit is, by definition, "without merit." *See, e.g.*, *Parekh v. CBS*, 820 F. App'x 827, 834-36 (11th Cir. 2020) (affirming the complaint's dismissal where the disputed statement, even if false, "[was] not actionable because it [was] not defamatory" and therefore the suit was filed "without merit"); *Bongino*, 477 F. Supp. 3d at 1322 ("Because Plaintiff's suit fails to state a claim for defamation, it was without merit under Florida Statute § 768.295(3).").

Second, Plaintiff does not dispute that both *Finding Freedom* and the Oprah interview relate to "public issue[s]": namely, the subjects of a full chapter in a best-selling book and an interview viewed by approximately 50 million people worldwide. (*See* Dkt. 31 ¶¶ 32, 45.) Nor could she: the statements in the Oprah interview were made in a "television program ... news report, or other similar work." Fla Stat. § 768.295(2)(a); *see Rosenthal v. Council on American-Islamic Relations, Florida, Inc.*, 2017 WL 6390102, at *3 (Fla. Cir. Ct. Nov. 08, 2017) (noting that Florida's anti-SLAPP statute covers "any protected statement made in a news report"). And Plaintiff alleges—completely frivolously—that Meghan "made written false, derogatory, and defamatory allegations in the form of the best-selling book *Finding Freedom*." (*See, e.g.*, Dkt. ¶ 45.) *See* Fla. Stat. § 768.295(2)(a) ("free speech in connection with a public issue" includes "written" statement made "in connection with a ... book").

"Under the anti-SLAPP law, an award of reasonable attorneys' fees and costs is *mandatory* in these circumstances." *Parekh v. CBS Corp.*, 2019 WL 2744552, at *1

(M.D. Fla. July 1, 2019); *Vibe Ener*, 2020 WL 6373419, at \*5 (same); *Mac Isaac*, 2021 WL 3860654, at \*6-7 (same); *Corsi*, 519 F. Supp. 3d at 1127-28 (same).

Meghan is therefore entitled to an award of fees and costs, which, if granted, will be set forth in a subsequent filing.

## VI.   CONCLUSION

Plaintiff's First Amended Complaint does not state a claim for defamation or injurious falsehood, and is directed toward constitutionally protected speech. The pleading should be dismissed and Meghan awarded her attorneys' fees and costs in connection with this Motion.

## VII.   APPENDIX—SUMMARY OF STATEMENTS

|    | Statement (source) | FAC | Defect | Discussion |
|----|--------------------|-----|--------|------------|
| 1. | "Meghan had crossed paths with her half-sister only twice since growing up." (RJN Ex. 1 p. 173.) | ¶¶ 21, 23 | Meghan did not make statement. Opinion. Not injurious to reputation. | § III.C-III.E (pp. 7-14) |
| 2. | "A trusted confidant shared … 'If there were more [photographs of Plaintiff and Meghan together], [Plaintiff] would have sold them.'" (RJN Ex. 1 p. 174.) | ¶ 24 | Meghan did not make statement. Not traceable to supposed "information" provided by Meghan. | § III.C-III.D (pp. 7-12) |
| 3. | Plaintiff "reached out to The Sun" and was paid "handsomely" for it. (RJN Ex. 1 p. 174.) | ¶ 26 | Meghan did not make statement. Not traceable to supposed "information" provided by Meghan. | § III.C-III.D (pp. 7-12) |
| 4. | "A confidant explained, … 'Meg didn't grow up with [Plaintiff]. She barely saw her.'" (RJN Ex. 1 p. 175.) | ¶ 28 | Meghan did not make statement. Opinion. Not injurious to reputation. | § III.C-III.E (pp. 7-14) |

| | Statement (source) | FAC | Defect | Discussion |
|---|---|---|---|---|
| 5. | "With an almost twenty-year-age difference between them, the half sisters had simply never been close." (RJN Ex. 1 p. 175.) | ¶ 29 | Meghan did not make statement. Opinion. Not injurious to reputation. | § III.C-III.E (pp. 7-14) |
| 6. | "As one confidant pointed out, [ ] [Plaintiff] … [did not] care[ ] when [she] hadn't been invited to Meghan's first wedding …." (RJN Ex. 1 p. 176.) | ¶ 30 | Meghan did not make statement. Not traceable to supposed "information" provided by Meghan. | § III.C-III.D (pp. 7-12) |
| 7. | "More than once Meghan asked her father to intervene with [Plaintiff] …." (RJN Ex. 1 p. 177.) | ¶ 31 | Meghan did not make statement. Not traceable to supposed "information" provided by Meghan. | § III.C-III.D (pp. 7-12) |
| 8. | "But I grew up as an only child …." (Dkt 1-9 p. 3.) | ¶ 33 | Opinion. Not injurious to reputation. | § III.F (pp. 14-17) |
| 9. | Defendant only met Plaintiff "a handful of times." (Not present in transcript of interview at Dkt 1-9.) | ¶ 33 | Opinion. Substantially true. Not injurious to reputation. No context for statement if it was even made. | § III.F (pp. 14-17) |
| 10. | Plaintiff "only changed her surname to Markle after the Duchess started dating Prince Harry <u>so that Mrs. Markle could cash in on her newfound fame.</u>" (Dkt. 1-9 p. 4.) | ¶ 33 | Underlined portion of "statement" is not present in transcript of interview and Meghan did not say it. Remainder of statement is substantially true. | § III.F (pp. 14-17) |

## VIII.  <u>LOCAL RULE 3.01(G) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g)(2), Meghan, The Duchess of Sussex hereby certifies that her counsel and Plaintiff's counsel met and conferred by telephone on June 14, 2022, but could not agree to resolve any part of this motion.

RESPECTFULLY SUBMITTED this 17th day of June, 2022

KINSELLA WEITZMAN ISER KUMP
HOLLEY LLP

_____

**Michael J. Kump** (Cal. Bar No. 100983)*
mkump@kwikhlaw.com
**Jonathan Steinsapir** (Cal. Bar No. 226281)*
jsteinsapir@kwikhlaw.com
**Nicholas C. Soltman** (Cal. Bar No. 277418)*
nsoltman@kwikhlaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
* *Pro hac vice*

BITMAN O'BRIEN & MORAT PLLC
**Ronnie Bitman** (Fla. Bar No. 744891)
rbitman@bitman-law.com
255 Primera Blvd., Ste 128
Lake Mary, FL 32746-2168
Telephone: 407.815.3115

Attorneys for Defendant Meghan, The
Duchess of Sussex (sued as "Meghan Markle")

MOTION TO DISMISS FAC FOR FAILURE TO STATE A CLAIM

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing has been furnished to all parties registered to receive service via CM/ECF this 17th day of June, 2022.

BITMAN O'BRIEN & MORAT PLLC

<u>/s/ Ronnie Bitman, Esq.</u>
**Ronnie Bitman** (Fla. Bar No. 744891)
rbitman@bitman-law.com
255 Primera Blvd., Ste 128
Lake Mary, FL 32746-2168
Telephone: 407.815.3115

Attorneys for Defendant Meghan, The
Duchess of Sussex (sued as "Meghan Markle")

784045

MOTION TO DISMISS FAC FOR FAILURE TO STATE A CLAIM