IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

CASE NO.: 8:22-cv-00511-CEH-TGW

SAMANTHA M. MARKLE,

       Plaintiff,

v.

MEGHAN MARKLE,

       Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

The Plaintiff, SAMANTHA M. MARKLE, by and through her undersigned counsel, hereby files this, her Response in Opposition to the Motion to Dismiss filed by the Defendant, MEGHAN MARKLE (hereinafter referred to as the "Duchess"), on June 17, 2022, and in support states as follows:

**A.    Meghan Did "Publish" the Statements in *Finding Freedom***

1.    In the Duchess' Motion to Dismiss, she claimed that Mrs. Markle's claim for defamation must fail as the Duchess "did not publish the false statements." Although Mrs. Markle agrees that publication is a crucial element of a claim of defamation, it does not apply in the case at bar.

2.    The Amended Complaint specifically addresses this issue. It states: "[O]n August 11, 2020, a book '*Finding Freedom*' was published, which

was supposedly an 'unauthorized biography' of the Duchess. However, <u>the false information contained in the book came from the Duchess herself, through her agent and communications secretary</u>." Taking the inferences asserted in the Amended Complaint in the light most favorable to the Plaintiff, this Court should draw the only reasonable inference that the Duchess published the false statements about her sister.

3.     The Duchess has a misplaced reliance on *Johnson v. Darnell*, 781 Fed. Appx. 961 (11th Cir. 2019). In *Johnson*, id., the Court held that to be a valid claim for defamation under Florida law, the complaint "would need to allege that the defendants themselves were responsible for publishing the defamatory material." In that case, it was on a Most Wanted list.

4.     In the present Complaint, the allegations of the Duchess' involvement were pled, as she was the one responsible for the authorized unauthorized biography. In fact, the Amended Complaint specifically alleges that the false and defamatory information published within *Finding Freedom* on August 11, 2020, came directly from the Duchess. This is distinct from the case cited by the Duchess, where a Complaint was dismissed under Rule 12(b)(6) when a plaintiff failed to allege that the defendants were responsible for publishing the defamatory material when the actions taken by the defendants *indirectly led* to the publication of the material.

5.     This case is also distinct from that of *Klayman v. City Pages*, 2015 WL 1546173, 16 (M.D. Fla. Apr. 3, 2015), in which a Court granted summary

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

judgment against a plaintiff for a defamation claim, as he failed to argue that there was a link to the defendant's involvement with the false and defamatory material to the district court, thus the trial court correctly failed to consider it.

6. While there is no dispute that the authors of *Finding Freedom* are Omid Scoobie and Carolyn Durand, Mrs. Markle possesses evidence to establish that the Duchess played an integral part in authoring the material contained within Chapter 12 of *Finding Freedom,* and at all times material, she intended that the false information be published and disseminated around the globe. The email from the Duchess to Jason Knauf which is attached hereto and marked as Exhibit "1" is proof of this. However, as this is a Motion to Dismiss, the mere averment, itself, is all which is needed, and evidence is not required.

7. The Duchess had control over what was put in the book and even provided the information she wanted to be included in *Finding Freedom* so "the true position. . . could be communicated to the authors to prevent any further misrepresentation."[1]

8. This notion can be evidenced by and through the Duchess' email to her communications secretary, Jason Knauf, ahead of a meeting with the authors of *Finding Freedom* in December of 2018. In the Duchess' email to Mr. Knauf, she includes a list of questions, topic areas, and "briefing points" that

---

[1] *See* Leah Bitsky, "Meghan Markle admits to giving person information to 'Finding Freedom' authors, *Page Six,* November 18, 2020, https://pagesix.com/2020/11/18/meghan-markle-admits-giving-personal-information-to-finding-freedom-authors/

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

she wanted Mr. Knauf to share with the authors of *Finding Freedom*. [2] Some of the topic areas included personal stories about the Duchess' family, as well as defamatory and untrue statements about her half-sister, Mrs. Markle. For example, that Mrs. Markle "lost custody of all three of her children from different fathers" and began "creating a career from selling stories to the press."

9. Looking at the four corners of the Amended Complaint, Mrs. Markle has sufficiently plead "grounds" for her entitlement to relief. The evidence to prove her case is not at all unimaginable. The Duchess is the one responsible for publishing the defamatory statements against her sister, and this can be proven.

10. In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), our Supreme Court held that even if there are doubts as to evidence, a well-pled complaint should survive a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556, 127 S.Ct. 1955. In this case, a savvy judge would not have a basis to believe that recovery is unlikely.

11. Mrs. Markle has included well-pled facts, which is enough to raise her right to relief above the speculative level, and that is all that is required to survive a motion to dismiss. In Mrs. Markle's Amended

---

[2] Holly Christidolou, Emma James, "Meghan Markle's bombshell emails and texts reveal five alleged 'contradictions' in her claims to court," https://www.the-sun.com/lifestyle/4060005/meghan-markle-texts-emails-contradictions-court/

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

Complaint, she has sufficiently plead that the Duchess did in fact author and provide the material that was published within *Finding Freedom* by and through her agent and communications secretary, and intended that the material be published in the book. Thus, she is liable for the false and defamatory material.

**B.     There is An Overlap Between the December 2018 Email and *Finding Freedom***

12.     The statements made in *Finding Freedom* lead right back to the Duchess. It is not as though the publishing of her false statements were "reasonably foreseeable" that some of the statements would be published in *Finding Freedom*. It was a sure thing.

13.     As stated above, for purposes of a motion to dismiss, a court only looks at the four corners of the pleading to determine whether a plaintiff has sufficiently plead her cause of action. A 12(b)(6) motion is not an appropriate avenue to argue the factual merits of a plaintiff's complaint. Rather, the court should assume that all factual allegations contained within the Amended Complaint are true, and construe them in favor of the plaintiff.

14.     Mrs. Markle stated in her Amended Complaint that "the false information contained within the book came from Meghan herself, through her agent and communications secretary." That is all that is needed to survive a Rule 12(b)(6) motion.

15.     Moreover, Mrs. Markle's Amended Complaint subsequently replaced the original Complaint. It is well established that, "[a]n amended

5

complaint, once filed, normally supersedes the antecedent complaint." *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008).

16. Under the Federal Rules, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case. In essence, the "original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." *Pintando v. Miami-Dade Hous. Agency,* 501 F.3d 1241, 1243 (11th Cir. 2007). Thus, the positions taken only in the superseded pleading are no longer a basis of a cause of action.

17. It should be noted that the Amended Complaint was filed with claims paired down. Where the Duchess was correct as to her argument as to the Statute of Limitations, items were removed from the Complaint. Although they are not a basis of claims, they are still part of the case *sub judice*, as they are evidence to prove the timely claims.

18. In this regard, the December 2018 email from the Duchess to Knauf is evidence that the Duchess fully intended and directed her statements to be published in *Finding freedom* by virtue of her statement to Knauf ahead of his meeting with the authors of *Finding Freedom* wherein she stated "for when you sit down with [the authors] it may be helpful to have some background reminders... please let me know if you want me to fill in any other blanks." *See* Exhibit 1.

19. In fact, many of the false and defamatory statements in the email

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

from the Duchess to Mr. Knauf are found in the book, with some using the same words. In her email to Knauf, the Duchess states that "upon Meghan dating Harry, Samantha changed her last name back to Markle," this statement is also reflected on Page 310 of *Finding Freedom* which reads as follows: "Meghan's romance with Harry had hardly been public for a full 24 hours when her half-sister sensed an opportunity.

20.     The Duchess also claims that "[Samantha] began creating stories to sell to the press" which can be found on Page 311 of *Finding Freedom* which states "if there were more [than one picture], Samantha would have sold them."

21.     In her email to Knauf, the Duchess states that "upon Meghan dating Harry, Samantha changed her last name back to Markle," this statement is also reflected on Page 310 of *Finding Freedom* which reads as follows: "Meghan's romance with Harry had hardly been public for a full 24 hours when her half-sister sensed an opportunity.

22.     As the Duchess has plainly admitted in her Motion to Dismiss, the Duchess also told Knauf in her email that: (1) "Meghan saw [Samantha] a handful of times," "Meghan has never had a relationship with [Samantha]," that "there was minimal interaction," and that "[Samantha had] a non-relationship with Meghan." These statements are reflected in *Finding Freedom* on Page 313 which states "Meg didn't grow up with Samantha. She barely saw her and on Page 414 which states "the half-sisters have never been close." The Duchess also claims in her email that "the family was raised very estranged"

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

and on Page 310 of *Finding Freedom,* it reads "[Samantha] hadn't seen her estranged half-sister."

## C.    Various Statements in Finding Freedom Are Not Opinion, Substantially True, and are Defamatory

23.    A fact is a statement that can be verified and can be proven as true or false with objective evidence, while an opinion, is one that expresses a feeling, attitude, belief, or value judgement.   The determination of whether a statement is fact or opinion is a question of law for resolution by the court. *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52 (Fla. 1st DCA 1981).   Where the speaker or writer presents the facts at the same time he or she offers independent commentary, a finding of pure opinion will usually result. *Lampkin-Asam v. Miami Daily News, Inc.*, 408 So.2d 666 (Fla. 3d DCA 1981).   Conversely, where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise.   *Madsen v. Buie*, 454 So.2d 727 (Fla. 1st DCA 1984).

24.    Here, the Duchess made statements of fact, rather than statements of opinion.   For example, the statement made on Page 311 of *Finding Freedom* which states that the Duchess and Mrs. Markle have only "crossed paths with her half-sister only twice since they grew up." This statement can be verified with objective evidence, and the Duchess neglected to provide an adequate foundation for the statement.   In reality, Mrs. Markle

8

drove the Duchess to school growing up, helped her with her homework, the two lived together at one point, and the Duchess attended Mrs. Markle's college graduation in New Mexico. This statement is one of fact, and not opinion.

25. Moreover, Mrs. Markle does allege this statement is false. Specifically in Paragraph 22 of her Amended Complaint she stated:

> This was false as the Duchess and Mrs. Markle at one point lived together and have been in frequent contact. This allegation is aimed to discredit the relationship between the Duchess and Mrs. Markle, and to make Mrs. Markle appear to be an opportunist.

26. The allegation of falsity is simple, concise, and direct, Mrs. Markle is not required to plead specific facts as to *when* the two have been in contact for purposes of her Complaint, as all that is required is a short and plain statement showing that she is entitled to relief. Fed. R. Civ. P. 8(A). The statement made by the Duchess is false, and Mrs. Markle will produce evidence to show that the statement is false.

27. The Duchess next argued in her Motion to Dismiss that the statement is not defamatory in nature. As Mrs. Markle has plead in her Amended Complaint, the statement is defamatory as it discredits the relationship between the Duchess and Mrs. Markle, makes it appear as though Mrs. Markle was an "opportunist" and liar, and subjected her to negative press, negative media portrayals, hateful emails, damaged her reputation, and harmed the sales of her autobiography.

28. The Duchess relies on *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*,

9

811 So. 2d 841, 845 (Fla. 4th DCA 2002), in which the Florida Fourth District Court of Appeal held that a communication is defamatory if it tends to harm the reputation of another. This is exactly what transpired, in the present case.

## D. The Claims Based on the Interview with Oprah Winfrey Do Not Fail

29. Mrs. Markle includes three defamatory and false statements the Duchess made during her CBS Interview with Oprah Winfrey in her Amended Complaint. Including that: (1) the Duchess was "an only child," (2) who only met Mrs. Markle "a handful of times," and that (3) Mrs. Markle only changed her surname to "Markle" after the Duchess started dating Prince Harry so that Mrs. Markle could cash in on her newfound fame.

30. First, the statement that the Duchess that she "grew up as an only child" is one of fact not opinion. The Duchess claimed in her interview with Oprah that she "grew up as an only child." With evidence, Mrs. Markle can prove this statement is false, as the Duchess did grow up with two half-siblings who were involved in the Duchess' life as she was growing up. By stating that she "didn't know her half-sister" and that she grew up as an "only child" the Duchess made it clear that Mrs. Markle was a prevaricator who was attempting to cash in on the fact that her barely known half-sister married into the royal family. By publishing these false facts, she was making it apparent that her older sister was an opportunist of the worst kind.

31. The Duchess has locked horns with her older half-sister, and for some reason, she feels the need to proclaim harmful lies which have caused far

10

worse than emotional distress.

32.     By falsely stating that Mrs. Markle was *not present* in her life at all and does not know the Duchess, the Duchess' fans became the enemies to Mrs. Markle.  By stimulating her fan base by stating emphatically that she "grew up as an only child" and "wished she has siblings."  Her vendetta caused people who watched Oprah and who adore the Duchess to have and display hatred toward Mrs. Markle.  This was not done with opinion evidence, but rather facts which were statements of false observations, of fact and not of opinion.

33.     Secondly, the paraphrased statement that the Duchess only met Mrs. Markle "a handful of times" in her Amended Complaint is evidenced by the statements made by Meghan in the CBS Interview in which she stated, "I saw [Mrs. Markle] must have been at least 18, 19 years ago and before that, 10 years before that."  The Transcript is attached hereto and marked as Exhibit "2."  The statement is false, and Mrs. Markle plead that the statement was false in Paragraph 34 of her Amended Complaint.

34.     Moreover, the statement is not substantially true even with the Duchess' claims that the "Plaintiff moved out of the house when Meghan was 2 years old."  The Duchess and Mrs. Markle had frequented and consistent contact even after Mrs. Markle moved out of the home she once shared with the Duchess.  It is true that Mrs. Markle moved out when the Duchess was young, however, Mrs. Markle lived but a short distance away from her childhood

11

home, came home frequently to visit the Duchess and her father, took the Duchess to school, helped the Duchess with her homework, and spent holidays with the Duchess.

35.     For the reasons set forth above, the statement is defamatory in nature, as it added "fuel to the fire," Mrs. Markle received more negative press, hate emails, and was left unbelieved and untrusted by the public.  As such, Mrs. Markle was viewed as a "liar" looking to capitalize on the fame of her sister, who she "did not know."

36.     Third, Mrs. Markle included in her Amended Complaint a statement set forth by the Duchess in her CBS interview where she defamatorily implied that Mrs. Markle tried to cash in on her newfound fame, by stating that "[Mrs. Markle] changed her name back to Markle, and I think she's an early fifties at the time, <u>only when I started dating Prince Harry.  And so I think that says enough."</u>

37.     The statement is false as can be evidenced by the Affidavit in Support of Plaintiff's Opposition to Defendant's Request for Judicial Notice which is attached hereto as Exhibit "3."  Mrs. Markle utilized her last name of Rasmussen during her marriage with her husband.   Once the two were divorced, Mrs. Markle utilized the last name of Rasmussen only for the *certain* legal proceedings so to maintain her "privacy, safety, and identity from the public" given her half-sister's fame and prestige.  To support these statements Mrs. Markle even included her Bachelor of Arts Degree from 2006, which

12

reflects the name of "Samantha M. *Markle*." That degree was received ten years prior to the date in which Prince Harry and Meghan's relationship was allegedly made public. Thus, the statement is false, and is actionable.

38.    The statement is not one of opinion despite the contention of the Duchess. The Duchess and Mrs. Markle share the same father, therefore, the Duchess has always been aware that the Plaintiff was born a Markle, and has gone by the name of Markle, as it is her maiden name. This is not an evaluation of Mrs. Markle, a prediction, a position on a controversial issue, nor is it one where the Duchess is stating her personal view. Rather, this Court should consider the statement, taken with its context, to be one of fact, as the statement made by the Duchess is untrue, the Duchess knew this statement was untrue, and the falsity of the statement is backed by evidence.

### Plaintiff's Injurious Falsehood Claim is Not Duplicative and is Sufficiently Plead

39.    Mrs. Markle has sufficiently plead all elements required for Count II, Injurious Falsehood, and the Count is not duplicative of Mrs. Markle's Count I, Defamation.

40.    The one element which is required in the defamation count, that there was damage to Mrs. Markle's reputation is not an element in the Injurious Falsehood count, and may be pled, as it was.

41.    The Duchess is correct in that a claim for injurious falsehood requires among other things, a "falsehood" which has been published or communicated to a third party. *Bothmann v. Harrington*, 458 So. 2d 1163,

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

1168 (Fla. 3d DCA 1984).

42.     Mrs. Markle specifically states in her Amended Complaint that the Duchess has made numerous false statements about Mrs. Markle in her (a) CBS interview with Oprah Winfrey, and (b) in the book *Finding Freedom* which are set forth in paragraphs 1 through 34 of the Amended Complaint. Mrs. Markle also states that the Duchess, despite knowing her statements were false, spread that false information to third parties such as news outlets, television programs, and the general public, with the intent they be disseminated around the globe.

43.     Mrs. Markle set forth the specific and unfavorable false nature of the statements disseminated by the Duchess in her Amended Complaint.   For example, the statements made in the CBS interview with Oprah Winfrey that the Duchess was an "only child" who "only met Mrs. Markle a handful of times."  This statement is untrue, Mrs. Markle drove the Duchess to school growing up, helped her with her homework, went on shopping trips, spent holidays together, and the Duchess even attended Mrs. Markle's college graduation in New Mexico.  These statements caused fans of the Duchess, as well as the general public, to view Mrs. Markle to a "greedy opportunist" out to cash-in on her half-sister's fame, and in turn subjected Mrs. Markle to hateful emails, nasty negative press, negative news articles, and caused permanent damage her reputation and career.

44.     Mrs. Markle has met the pleading requirements for a valid claim of

injurious falsehood and the claim is not duplicative of Mrs. Markle's claim for defamation, as Mrs. Markle has also sufficiently plead special damages which are set forth in the paragraphs below.

**A.  The Single Action Rule does not Bar Plaintiff's Second Cause of Action**

45.  Although a plaintiff may not proceed on multiple counts for the same defamatory publication or event that is "based on analogous underlying facts and causes of action [that] are intended to compensate for the same alleged harm" The purpose of the single action/publication rule is to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Jahr USA Publ'g*, 994 F. Supp. 525, 531 (S.D.N.Y. 1998). Courts have recognized that in application of the single publication/single action rule, there are distinctions between disparagement/slander of title and personal defamation that make application of the rule difficult. *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp,* 831 So. 2d 704 (4d DCA 2002).

46.  Specifically,  the Restatement of (Second) of Torts, Section 623A, recognizes that while action for injurious falsehood is similar to defamation in that both involve "the imposition of liability for injuries sustained through publication to third parties of a false statement affecting the plaintiff," the two torts protect different interests.  The defamation action protects the personal reputation of the injured party, while an action for injurious falsehood protects economic interests of the injured party against pecuniary loss.  Restatement

15

(Second) of Torts § 623A (1977).

47.     Here, the single action/single publication rule does not bar Mrs. Markle's cause of action for Count II, Injurious Falsehood, as she has sufficiently plead different and distinct harm from her Count I, Defamation.  In Count I, Defamation, Mrs. Markle specifically pleads damages for emotional and mental distress, including anxiety and fear due to the threatening and violent emails and messages she receives on a regular basis.  Whereas, in Count II, Injurious Falsehood, Mrs. Markle pleads irreparable injury to her trade, business, reputation, prestige, and goodwill.  Thus, this action may be brought in the same suit for both torts, as the damages in the two counts are not duplicated.

**B.     The Plaintiff has Plead Special Damages**

48.     To state a claim for injurious falsehood, the common law requires that special damages be pled, which means "actual loss."  *Ratcliffe v. Evans,* [1892] 2 Q.B. 524, 528, 531.

49.     For a claim of injurious falsehood, "special damage" may denote the gist of the claim for actual economic loss.  *Ratcliffe,* 2 Q.B. at 528, 531-32. The court held that the degree of specificity with which the actual loss ought to be pled depends on what is reasonable under the circumstances. *Id.*   In this regard, the Federal Rules require a "short and plain statement of the claim showing the pleader is entitled to relief.   Fed. R. Civ. P. 8(a)(2).   Moreover, "special damage" must denote the particular damage beyond the ordinary

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

damage, resulting from invasion of a plaintiff's right and for which ought to give warning in his pleadings in order that there be no surprise at the trial." *Ratcliffe,* 2 Q.B. at 528.

50. If Rule 9(g) were read to require pleading facts with particularity for certain claims, it would provide convenient legal grounds to block tenuous claims before discovery. *Browning v. Clinton,* 292 F.3d 235, 245-46 (D.C.Cir.2002). Thus, to state a claim for injurious falsehood a party need only meet Rule 8's liberal pleading requirements. For example, a Court determined that where a defendant told two doctors that the plaintiff had "tax problems with the IRS," this statement impugned the plaintiff's professional competence and his fitness to perform his profession and the plaintiff has plead the appropriate elements, *inter alia* damage, to state a claim for injurious falsehood. *Leavitt v. Cole,* 291 F. Supp. 2d 1338, 1346 (M.D. Fla 2003).

51. Paragraph 63 of the Amended Complaint states, "as a mental health counselor, Mrs. Markle lost business from these false and defamatory statements..." Paragraph 64 states: "Mrs. Markle's autobiography sales tanked," and Paragraph 71 states: the "Duchess' acts have caused... irreparable injury to Mrs. Markle's trade, business, reputation, prestige, and goodwill."

52. The statements made and disseminated by the Duchess have specifically caused harm to Mrs. Markle's profession as a mental health counselor and have caused a severe and drastic decline in sales of her

17

autobiography, as the public believes it is nothing more than a "book of lies." *See* one example of the negative book reviews as Exhibit "3."

53.     Mrs. Markle has sufficiently plead special damages for her claim of injurious falsehood and the damages have been specifically stated under Federal Rule 8(a)(2).  The damages plead by Mrs. Markle gives adequate notice to the Duchess, through her pleadings, so that there is no surprise at trial.

### The Duchess is Not Entitled to Her Attorneys' Fees and Costs

54.     The Anti-SLAPP statute, Florida Statute § 768.295 provides that "a person may not file any lawsuit against another party <u>without merit</u> because such person has exercised the constitutional right of free speech in connection with a public issue."   The Anti-SLAPP statute was designed to prevent "unnecessary litigation."  *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 310 (Fla. 2d DCA 2019).

55.     A motion to dismiss based on the Anti-SLAPP statute explicitly states that a defendant "may move the court for an order dismissing the action," but "the statute is silent to any heightened burden on the plaintiff that differs from the motion to dismiss standard."  *Lam v. Univision Communs., Inc.*, 329 So. 3d 190 (Fla. 3d DCA 2021).   Therefore, under Rule 1.140(b) all allegations of the complaint must be taken as true, and all reasonable inferences drawn therefrom shall be construed in favor of the non-moving party.

56.     A lawsuit must be "without merit for the statute to apply."  *Grippa*

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

*v. Rubin,* No. 4:20-cv-457, 2021 U.S. Dist. LEXIS 211827, 2021 WL 5033817, 5 (N.D. Fla. Feb. 22, 2021).  An Anti-SLAPP challenge will fail when "a lawsuit has merit and is not based on the defendants exercising their First Amendment rights on a public issue." *Gov't Emples. Ins. Co. v. Glassco, Inc.,* 2020 U.S. Dist. LEXIS 261191, 2020 WL 13358054 (M.D. Fla., Apr. 16, 2020).  Thus, the Court will deny an Anti-SLAPP statute when a lawsuit is meritorious.  *Pierre-Paul v. ESPN Inc.*, No. 16-cv-21156, 2016 U.S. Dist. LEXIS 119597, 2016 WL 4530884, at *2 (S.D. Fla. Aug. 29, 2016)

57.    Under Florida Statute § 768.295, the Duchess has not met her burden to demonstrate that her conduct is a protected activity under the Anti-SLAPP statute, nor that the Duchess' claims for Defamation and Injurious Falsehood are "without merit."

58.    As set forth in the paragraphs above, Mrs. Markle's claims have merit and the statements made by the Duchess are false and defamatory. Under the motion to dismiss standard, Mrs. Markle's allegations should be taken as true, and the Court should take all reasonable inferences in favor of the Plaintiff.  Fla. R. Civ. P. 1.140.

59.    Thus, Mrs. Markle has plead a viable cause of action for Defamation and Injurious Falsehood, and as such, the Anti-SLAPP statute does not apply.  Therefore, the Duchess is not entitled to an award of attorneys' fees and costs under the statute.

19

## **Conclusion**

60.    In short, Mrs. Markle's Amended Complaint fully complies with the pleading requirements of Federal Rule of Civil Procedure 8(a), and Mrs. Markle has sufficiently plead a cause of action for Defamation and Injurious Falsehood.  Mrs. Markle has not yet had the opportunity to conduct discovery surrounding her claims and expects that such discovery will add additional supporting factual material and evidence to her counts.  As such, the Duchess' 12(b)(6) Motion to Dismiss should be denied.

---

**DESIGNATION OF EMAIL ADDRESSES FOR SERVICE**
(Pursuant to Rule 2.516 Fla. R. Jud. Admin.)
The undersigned attorneys of The Ticktin Law Group hereby designate the following Email Addresses for service in the above styled matter. Service shall be complete upon emailing to the following email addresses in this Designation, provided that the provisions of Rule 2.516 are followed.
**Serv549@LegalBrains.com; Serv513@LegalBrains.com; Serv512@LegalBrains.com**
**SERVICE IS TO BE MADE TO EACH AND EVERY EMAIL ADDRESS LISTED IN THIS DESIGNATION AND TO NO OTHERS.**

---

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing

has been furnished to all parties registered to receive service via CM/ECF

this **8th day of July 2022**.

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (954) 570-6757


_/s/ *Jamie Alan Sasson*_____
PETER TICKTIN, ESQUIRE
Florida Bar No. 887935
JAMIE ALAN SASSON, ESQUIRE
Florida Bar No. 10802
TAYLOR E. YOUNG, ESQUIRE
Florida Bar No. 1031760