# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| Samantha M. Markle,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>Meghan Markle,<br><br>　　　　Defendant. | Case No. 8:22-cv-00511-CEH-TGW |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT AND REQUEST FOR JUDICIAL NOTICE

Defendant Meghan, The Duchess of Sussex ("Meghan"), hereby submits this reply brief in support of her motion to dismiss and request for judicial notice.

### A. Meghan Did Not Publish The Statements In *Finding Freedom*.

Plaintiff concedes that "there is no dispute that the authors of *Finding Freedom* are Omid Scobie and Carolyn Durand," and not Meghan. (Dkt. 41 p. 3 ¶ 6.) That is the death-knell for all claims against Meghan based on statements in the book. Meghan did not make the statements; she cannot be liable for them. It is that simple.

Plaintiff based her original complaint on the supposed link between the book, published in 2020, and statements in a 2018 email (which was private correspondence publicly disclosed in legal documents) made by Meghan herself to the-then Communications Secretary of Kensington Palace. (Dkt. 1 ¶¶ 25-26.) But, as Plaintiff now concedes, claims based on that email are time-barred. (Dkt. 41 p. 6.) In opposition, Plaintiff tries to get through the back door what she cannot get through the front by arguing that Meghan herself somehow "published" the allegedly false statements in the book because those statements purportedly "came from the Duchess herself, through her [alleged] agent and communications secretary." (Dkt. 41 p. 2 ¶ 2, quoting Dkt. 31 ¶ 18.) This theory, however, does not work.

An individual who is a source of information for a third-party speaker is not the publisher of the third party's statements. Plaintiff attempts to distinguish *Johnson v. Darnell*, 781 F. App'x 961 (11th Cir. 2019), by arguing that the defendants' statements there only "*indirectly led* to the publication." (Dkt. 41 p. 2 ¶ 4, emphasis in original.) Same here. Plaintiff alleges that the statements came from a supposed

"agent" of Meghan's (and there are no allegations of what he supposedly said), effectively admitting that Meghan *never even* spoke to the authors. (Dkt. 41 p. 2.) The statements in the 2018 email are not present in the book. (Dkt. 34 pp. 11-12.)

Regardless, courts reach the same conclusion even where the defendant was the *direct* source for a third party's statement. *See, e.g., Klayman v. City Pages*, 2015 WL 1546173 (M.D. Fla. Apr. 3, 2015). Plaintiff attempts to distinguish *Klayman* by claiming that plaintiff there "failed to argue that there was a link to the defendant's involvement with the false and defamatory material to the district court." (Dkt. 41 p. 2 ¶ 5.) This is just plain false. The *Klayman* Court held that the blogger-defendant (Avidor) was not liable for statements made in a "September 28 Article" because "he did not write or publish" the article. 2015 WL 1546173 at *10. This was despite the fact that Avidor had emailed his own blog posting to the author of the September 28 Article and the article itself credited Avidor directly for the tip and *quoted* him directly. *Id.* at *3. It is hard to imagine a more "direct" link than that. Yet it was still non-actionable because Avidor did not himself "publish" the article. *See also id.* at *10 (citing *Pierson v. Orlando Regional Healthcare Systems, Inc.*, 2010 WL 1408391 at *12 n. 16 (M.D. Fla. 2010) for the proposition that even if it is "reasonably foreseeable" that a third party will republish a statement, the original speaker is not liable therefor). Like her entire case, Plaintiff's attempt to distinguish *Klayman* is not based in reality.

To the extent that Plaintiff flirts with arguing that Meghan herself directly "wrote" the allegedly false statements in *Finding Freedom*—notwithstanding her

*agreement* that "the authors of *Finding Freedom* are Omid Scobie and Carolyn Durand," not Meghan (Dkt. 41 p. 3 ¶ 6)—the FAC makes no such (extraordinary and absurd) allegation. Rather, the FAC repeatedly alleges that "*the book* states." (Dkt. 31 ¶¶ 18, 20-21, 23, 26, 28-30.)[1]

In conclusion, because Meghan did not publish any of the allegedly defamatory statements in *Finding Freedom*, the motion to dismiss as to alleged defamation and injurious falsehood based on those statements should be granted without leave to amend. The claims further fail because the statements themselves are not defamatory or actionable at all. (Mot., Dkt. 34 pp. 12-14.) That is particularly the case in light of *appropriately* judicially noticeable facts discussed below.

### B. The Statements in the Oprah Interview Are Also Not Actionable.

The claims based on three statements allegedly made by Meghan in the interview with Oprah Winfrey fare no better.

Plaintiff first asserts that she can disprove that Meghan "grew up as an only child." (Dkt. 41 p. 10 ¶ 30.) But this perception is inherently unfalsifiable. It is hard to imagine a more personal and subjective feeling than how one views their own childhood. *Lundin v. Discovery Comm's Inc.*, 352 F. Supp. 3d 949, 963 (D. Ariz. 2018) (producer's statement in behind-the-scenes episode of a reality show that relationship between the host and co-host had reached a "boiling point" was "not a statement

---

[1] *One single* paragraph seemingly about *Finding Freedom* alleges that "[t]he Duchess even *states* …" (Dkt. 31 ¶ 31, emphasis added.) But that paragraph, read in isolation, cannot be construed to allege that Meghan wrote any part *Finding Freedom*; it certainly cannot be so read in the broader context of the FAC's allegations.

capable of being proven true or false"). Moreover, Plaintiff's opposition completely ignores the *context* of the statement, where Ms. Winfrey asked Meghan about her "relationship" with Plaintiff (to whom Ms. Winfrey referred as her "half-sister on her father's side"). (Dkt. 1-9 p. 3.) Meghan's response to that question that she "grew up as an only child" was obviously not meant to be a statement of objective fact that she had no genetic siblings or half-siblings. Rather, it was a textbook example of a subjective statement about how a person feels about her childhood.

Next, Plaintiff appears to argue that the statement in the interview that Meghan last saw Plaintiff "at least 18, 19 years ago and before that, 10 years before that" is not substantially true because "the Duchess and Mrs. Markle had frequented [sic] and consistent contact even after [Plaintiff] moved out of the home she once shared with the Duchess" *when Meghan was 2*. (Dkt. 41 p. 11 ¶ 34.) This is a non sequitur. The statement at issue concerns interactions *as adults.* Even if Plaintiff *did* "visit the Duchess," take her "to school," or "help[ ] [her] with her homework" (*id.*, p. 11-12 ¶ 34)—none of which is true—that would only go to their relationship *when Meghan was a young child*.

Finally, Plaintiff points to evidence outside the four corners of the complaint to argue that she "utilized the last name of Rasmussen only for the certain legal proceedings so to maintain her 'privacy, safety, and identity from the public' …." (Dkt. 41 p. 12 ¶ 37.) Even if her explanation for her name change is credited in this

posture, it just confirms that Meghan's statement was non-actionable opinion.[2] For a case on point, see *Collins v. Cox Enters., Inc.*, 215 Ga.App. 679 (1994). There, a newspaper's endorsement of the plaintiff's political opponent noted that the plaintiff had, in a "deeply cynical and revealing" ploy, changed his name to "fool voters" into supporting him. *Id.* at 679. The court held that this statement was "speculation as to [the plaintiff's] motives based on his behavior," but did "not imply an assertion of objective fact that might be proved false." *Ibid.* The same is true of Plaintiff's supposed motives for *her* name change(s).

In any event, Plaintiff ignores the point that all Meghan said was this: "[Plaintiff] changed her name back to Markle, and I think she's an [sic] early fifties at that time, only when I started dating Harry. And so I think that says enough." (Dkt. 1-9 p. 4.) There is nothing defamatory about that statement—saying that someone changed their name to be associated with another is not *in-and-of-itself* defamatory in any way. And Plaintiff's opposition does not, and cannot, defend the fact that her FAC *falsely* attributed further statements to Meghan in an effort to try to make the statement defamatory. (*See* Mot., Dkt. 34 pp. 16-17.)

### C. Judicial Notice Of All Requested Materials Is Appropriate Here.

Plaintiff's opposition to the request for judicial notice is largely based on her

---

[2] The explanation is nonsensical on its face. Plaintiff filed the 2016 action as "Samantha Rasmussen" on September 20, 2016. (Dkt. 35-3 [RJN Ex. 3].) That was only *six weeks* before public reporting of Meghan's relationship with Prince Harry (Dkt. 35 at 4 & n.2) and five *years* before she first received "hateful emails." (Dkt. 41 p. 14 ¶ 43.) In other words, it is not even clear why Plaintiff needed "privacy" and "safety" from "the public."

supposed confusion as to whether the documents and statements therein, for which judicial notice is being requested, are being offered for their truth *or* just for the *existence* of the statements. To resolve any possible doubt, it is the latter. Plaintiff's opposition is otherwise meritless.

Chapter 12 of *Finding Freedom* is a paradigm example of what is judicially noticeable on a motion to dismiss in a defamation case. Plaintiff simply ignores Eleventh Circuit authority *directly* on point cited in Meghan's request. *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002) (where a book is the allegedly defamatory publication, it is properly before the court on 12(b)(6) motion). The state court dockets are before the Court only to show that Plaintiff still used the name "Rasmussen" (instead of Markle) just before it became public that Meghan and Prince Harry were dating. Similarly, newspaper reports to that effect are not offered to prove that they *were* dating, only that it had been reported. *See Osheroff v. Humana, Inc.*, 776 F.3d 805, 815 n.4 (11th Cir. 2015) (courts may take judicial notice of "state court" documents and "newspaper articles" for purpose of showing statements were made but not for truth); Fed. R. Evid. 902(6) (newspapers are self-authenticating). And the video of Plaintiff herself admitting to being paid for interviews in the past is also subject to judicial notice and, again, Plaintiff does and cannot distinguish the cases cited by Meghan on this point in her request. (RJN, Dkt. 35 p. 5.)

In sum, Meghan's motion to dismiss should be granted, as should her request for attorneys' fees, costs and other relief under Fla. Stat. § 768.295.

RESPECTFULLY SUBMITTED this 25th day of July, 2022

        KINSELLA WEITZMAN ISER KUMP HOLLEY LLP

        */s/ Michael J. Kump*
        _____
        **Michael J. Kump** (Cal. Bar No. 100983)*
        mkump@kwikhlaw.com
        **Jonathan Steinsapir** (Cal. Bar No. 226281)*
        jsteinsapir@kwikhlaw.com
        **Nicholas C. Soltman** (Cal. Bar No. 277418)*
        nsoltman@kwikhlaw.com
        808 Wilshire Boulevard, 3rd Floor
        Santa Monica, California 90401
        Telephone: 310.566.9800
        * *Pro hac vice*

        BITMAN O'BRIEN & MORAT PLLC
        **Ronnie Bitman** (Fla. Bar No. 744891)
        rbitman@bitman-law.com
        255 Primera Blvd., Ste 128
        Lake Mary, FL 32746-2168
        Telephone: 407.815.3115

        Attorneys for Defendant Meghan, The Duchess of Sussex (sued as "Meghan Markle")

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been furnished to all parties registered to receive service via CM/ECF this 25th day of July, 2022.

BITMAN O'BRIEN & MORAT PLLC

/s/ Ronnie Bitman, Esq.
**Ronnie Bitman** (Fla. Bar No. 744891)
rbitman@bitman-law.com
255 Primera Blvd., Ste 128
Lake Mary, FL 32746-2168
Telephone: 407.815.3115

Attorneys for Defendant Meghan, The Duchess of Sussex (sued as "Meghan Markle")

788288