```
 1                    UNITED STATES OF AMERICA
                    UNITED STATES DISTRICT COURT
 2                   MIDDLE DISTRICT OF FLORIDA
                          -    -    -
 3

 4             HONORABLE CHARLENE EDWARDS HONEYWELL
               UNITED STATES DISTRICT JUDGE PRESIDING
 5

 6   SAMANTHA M. MARKLE,                  )
                                          )
 7                  PLAINTIFF,            )
                                          )
 8             VS.                        )8:22-cv-511-CEH-TGW
                                          )
 9   MEGHAN MARKLE,                       )
                                          )
10                                        )
     _____DEFENDANT.     )
11

12

13                       MOTION HEARING
                      (Doc. 34 and Doc. 35)
14             REPORTER'S TRANSCRIPT OF PROCEEDINGS
                      FEBRUARY 15, 2023
15                     TAMPA, FLORIDA

16

17

18

19

20   SHARON A. MILLER, CSR, RPR, CRR, RMR
     IL CSR 084-2617
21   FEDERAL OFFICIAL COURT REPORTER
     801 N. FLORIDA AVENUE, SUITE 13A
22   TAMPA, FLORIDA 33602

23   Proceeding recorded by stenography,
     transcript produced by computer-aided transcription
24

25
```

```
 1    APPEARANCES OF COUNSEL:

 2    ON BEHALF OF PLAINTIFF:

 3            THE TICKTIN LAW GROUP, PA
              BY:   MR. PETER TICKTIN, ESQ.
 4                  MR. JAMES ALAN SASSON, ESQ.
                    MR. TAYLOR YOUNG, ESQ.
 5            270 SW Natura Avenue
              Deerfield Beach, FL   33441-1610
 6            (954)570-6757
              pt@legalbrains.com
 7            jsasson@legalbrains.com
              Serv549legalbrains.com
 8

 9    ON BEHALF OF DEFENDANT:

10
              KINSELLA WEITZMAN ISER KUMP & ALDISERT, LLP
11            BY:   MR. MICHAEL J. KUMP, ESQ.
              808 Wilshire Boulevard, 3rd floor
12            Santa Monica, CA 90401
              (310)566-9800
13            mkump@kwikalaw.com

14

15            BITMAN O'BRIEN & MORAT, PLLC
              BY:   MR. RONNIE J. BITMAN, ESQ.
16            615 Crescent Executive Court, Suite 212
              Lake Mary, FL   32746
17            (407)815-3110
              rbitman@bitman-law.com
18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

1  (Court in session at 1:32 p.m.)

2          THE COURT:  All right.  Good afternoon.

3          MR. KUMP:  Good afternoon, Your Honor.

4          MR. TICKTIN:  Good afternoon.

5          THE COURT:  We are here in the matter of Samantha M.

6  Markle versus Meghan Markle, case 8:22-cv-512.  Counsel for

7  the Plaintiff, please identify yourselves for the Court.

8          MR. TICKTIN:  Good afternoon, Your Honor.  Peter

9  Ticktin here on behalf of Plaintiff.  With me is Jimmy

10  Sasson and Taylor Young.

11          THE COURT:  All right.  Counsel for the Defendant,

12  please identify yourself for the Court.

13          MR. KUMP:  Good afternoon, Your Honor.  My name is

14  Michael Kump, and with me is Ronnie Bitman who's also on

15  camera.

16          THE COURT:  All right.  And we are here on two

17  motions that have been filed in this case, responses to

18  those motions and a reply with regard to the motion to

19  dismiss.

20          The first matter I'm going to hear is the motion

21  requesting that the Court judicially notice some items.  I

22  think I'll take that up, and once that's resolved, we'll

23  then go to the argument on the motion to dismiss.  I'll hear

24  from Defendant's Counsel with regard to the request for

25  judicial notice.

1          MR. KUMP:  Thank you, Your Honor.  Good afternoon.

2          Again, I'm Michael Kump, and I'm appearing on behalf

3    of the Defendant.  With respect to the request for judicial

4    notice, Your Honor, we're asking that the Court take

5    judicial notice of three separate items, if you will.  The

6    first is chapter 12 from the book *Finding Freedom*".  And

7    the reason that we've asked the Court to take judicial

8    notice of that is because it is extensively quoted and cited

9    in the First Amended Complaint.  And under the case of

10   Hoffman in the Eleventh Circuit, publication of a book that

11   is before the Court on a motion such as this is appropriate

12   for judicial notice, so we just wanted to make sure that the

13   Court had the full context of the statements before it.

14         The second category --

15         THE COURT:  Let me stop you, Mr. Kump, and

16   unfortunately you're not in the courtroom so we have to kind

17   of look at each other.  I will try and raise my hand to get

18   your attention when I have a question so that we are not

19   talking over each other because that makes it difficult for

20   the court reporter.

21         With regard to your request to judicially notice at

22   least chapter 12 of the book *Finding Freedom,*" are you

23   asking that I judicially notice the contents of chapter 12

24   or just the fact that there is a chapter 12, the existence

25   of chapter 12 in the book *Finding Freedom*"?

```
 1              MR. KUMP:  Just the existence of chapter 12, Your
 2    Honor.
 3              THE COURT:  The existence of chapter 12.  Okay.
 4              All right.  Then you may go on to your next item.
 5              MR. KUMP:  The next item, Your Honor, are two state
 6    court docket items that we have submitted which are Exhibits
 7    2 and 3 to our request for judicial notice.  These are both
 8    from the state courts in New Mexico, and they show that the
 9    Plaintiff was using a different name both in 2003 and then
10    also in 2016.  And under Federal Rule of Evidence 201(b),
11    it's appropriate for the Court to take judicial notice of
12    official records of other courts provided that there's not
13    some sort of indicia that it's, you know, in any way
14    inaccurate or anything of the sort.  And these are records
15    that were taken directly from the court, and I don't believe
16    based on an affidavit that they submitted, I don't believe
17    that there's any opposition to recognizing those.
18              THE COURT:  Okay.  And, again, so that the record is
19    clear, given my review of the objection filed by Plaintiff
20    Markle with regard to your request, you're simply asking the
21    Court to judicially notice the dockets in those two cases.
22    You're not asking that I judicially notice any of the
23    adjudicative facts included in that docket or in those
24    orders; is that right?
25              MR. KUMP:  That is correct, Your Honor.  They're
```

1    introduced solely for the purpose of showing that the party

2    in both of those actions was named Samantha Rasmussen as

3    opposed to Samantha Markle.

4         THE COURT:  All right.  You may proceed to your

5    final request.

6         MR. KUMP:  Then last is a couple of additional facts

7    that we have asked the Court to take judicial notice of.

8    One are numerous reports from well-recognized publications

9    such as the New York Times, The Washington Post, USA Today,

10   Reuters, which indicated in November of 2016 that there was

11   a dating relationship, for lack of a better term, between

12   Prince Harry and Meghan.

13        Again, that is -- we have pointed to that for the

14   purpose of not the truth of that but that the fact it was

15   being reported at the time to the public that there was such

16   a dating relationship, and in addition, the additional fact

17   is that we've also asked the Court to take judicial notice

18   of an interview that was given by the Plaintiff in which she

19   had admitted that she had received compensation for

20   interviews and the facts of that interview.  So those are

21   the two -- that's everything that we've asked the Court to

22   take judicial notice of, Your Honor.

23        THE COURT:  Okay.  Response on behalf of Plaintiff

24   Markle.

25        MR. TICKTIN:  My problem with this, Your Honor, is

1    that we're on -- is the use of this.  Counsel has not gone

2    beyond the line in terms of I think that everything is

3    appropriate if we were in trial or if we had an evidentiary

4    hearing where the Court needs to take judicial notice of

5    certain facts which help prove those facts.

6          What's the purpose of this?  I mean for a motion to

7    dismiss, unless this Court's going to take these extraneous

8    materials and treat this as a motion for summary judgment,

9    which I don't think would be appropriate in this particular

10   case because we're so early in the discovery phase and so

11   on, it really is a case where this motion should be as a

12   typical motion to dismiss where we look at the Complaint and

13   is it sufficient in terms of the pleadings in the Complaint.

14   So where would any of this fit?  Why would we even need

15   this?

16         THE COURT:  Let me just stop you and interject,

17   Mr. Ticktin.  The case law is quite clear that the Court may

18   consider matters of which the Court may take judicial notice

19   and ruling on a motion to dismiss and that's going back to a

20   Supreme Court case from 2007, so I don't have to convert it

21   to a motion for summary judgment, but, rather, in ruling on

22   a motion to dismiss, I can consider, as you all know,

23   matters which may -- which I may take judicial notice of.  I

24   may and must consider the four corners of the Complaint and

25   any attachments to the exhibit -- to the Complaint

1  basically.  And so I don't think -- I think that is where
2  we're going with this.  That is my recollection, my
3  understanding of the Defendant Markle's argument with regard
4  to taking judicial notice of these matters.
5       Obviously I can also take judicial notice of court
6  records.  You know, to the extent -- basically the existence
7  of those court records is they are usually not subject to
8  reasonable dispute.  I am not seeking to take judicial
9  notice of adjudicative facts.  That would be prohibited
10  which is why I asked Mr. Kump those questions with regard to
11  what he was asking the Court to take judicial notice of, so
12  with that as background, you may continue your argument.
13       MR. TICKTIN:  Yes.  Well, in considering -- it's in
14  Your Honor's discretion to take judicial notice of those
15  facts, and that means that it's not an automatic yes any
16  more than it's an automatic no.  It's in Your Honor's
17  discretion to consider these things, so if we take a look at
18  each one of these issues as to how they -- what fact they
19  are and what would need to be considered, the book, for
20  instance, we don't have any objection to chapter 12 coming
21  in, being brought in.  I would think that the contents, not
22  to be treated as the truth of the matter as stated, is that
23  they didn't object because obviously it's a defamation case.
24  We're saying it's not true.  But the fact that those words
25  are said rather than just that the chapter existed, I think

1     that the chapter should come in as evidence in order to be

2     considered.

3            But when we look then at a New Mexico case where --

4     you know, where the -- you know, Samantha Markle used,

5     admits and agrees that she used her married name in her

6     divorce work, you know, in cases or situations where the

7     married name would be the appropriate name to be used, but

8     she used the name Markle in the midst of all this.  And we

9     attached some exhibits to our response to the motion to

10    dismiss that basically proves that, so -- you know, so I

11    don't know that we're going to get into an agreement or

12    disagreement as to certain facts here so much as the legal

13    argument that I think needs to be argued in terms of the

14    motion to dismiss.

15           If we look at the fact that in 2016 the timing, I

16    have no objection to this Court considering the timing.

17           THE COURT:  Okay.  Wait.  Wait just a minute.

18    Excuse me, Mr. Ticktin.  We just lost you.  Can you -- I can

19    hear you but your camera is no longer on, and I like to

20    always be able to look at attorneys when they're arguing

21    even if it's via Zoom or in the courtroom, so I need you to

22    come back on the camera.

23           MR. TICKTIN:  Okay, Your Honor.  I just needed a

24    minute.

25    (Pause in proceedings.)

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

1          MR. TICKTIN:  I don't know exactly what went wrong,

2     Your Honor, I just pushed every wire back together again --

3          THE COURT:  Thank you.

4          MR. TICKTIN:  -- and it worked.

5          THE COURT:  You may resume.

6          MR. TICKTIN:  I don't really object to these things

7     coming in because I don't think that they basically are

8     persuasive for whatever Ying they may have as a Yang.  In

9     other words, yes, it's true that on the divorce case the

10    name Rasmussen was used, but Samantha Markle uses the same

11    Samantha Markle and has all through that period of time and

12    Meghan Markle knew that well too.  So the fact that they

13    found something where she used the name in her divorce case,

14    well, of course she used the name.  I don't think it's

15    conclusive to mean anything.  So I'm not even going to

16    object.  Let it all come in, Your Honor.

17         THE COURT:  What about with regard to the last

18    items, which quite honestly caused me a little bit more

19    concern, and that's the request to judicially notice certain

20    facts as I am not certain that those are facts that are

21    readily known or ascertainable?  So what is your response

22    with regard to those?

23         MR. TICKTIN:  In terms of the fact that in November

24    2016, you know, the only thing that those newspaper articles

25    would be proving because they're not being admitted for the

```
1    truth of the matter asserted in it, but it is -- we agree
2    that that's about the time that Meghan Markle and Prince
3    Harry were becoming well-known to be dating at that point in
4    time.  We don't have an issue there.  It's a fact, so
5    whether that's admitted or not, I'll admit it, that that
6    timing it became in the news.
7              And the interview with Samantha Markle, that one, I
8    mean that one I do have an objection to because that's up to
9    the newspaper article about an interview that she had where
10   she supposedly said something about getting paid.  If there
11   was, you know -- or the father got paid.  It makes very
12   little difference in terms of this matter except that that
13   wouldn't be appropriate for the Court to take judicial
14   notice.
15             THE COURT:  Okay.  Final comments from the moving
16   party.
17             MR. KUMP:  Your Honor, I don't think we have any
18   disagreements except for the last one which is a YouTube
19   interview of the Plaintiff, and I'll withdraw my request
20   that that be judicially noticed.  I don't think it's
21   pertinent any longer given some changes in the pleadings, so
22   I'll just withdraw that last -- the very last one about the
23   YouTube interview.
24             THE COURT:  All right.  And then the previous one,
25   though, was that the Court take notice of reports in
```

1    November 2016 that Defendant Markle was in a relationship

2    with Prince Harry, and so you're asking me to take judicial

3    notice of the fact that this was reported in the papers, not

4    with regard to the truth of the report; is that correct?

5         MR. KUMP:  That is correct.  Believe it or not,

6    sometimes what is reported is not necessarily true, but

7    we're -- we ask you to take judicial notice of it for the

8    fact that it was being reported that they were in a dating

9    relationship which I think Mr. Ticktin has acknowledged, so

10   I think we have an agreement on that.

11        THE COURT:  Okay.  And with regard to the

12   Defendant's request for judicial notice in support of Motion

13   to Dismiss First Amended Complaint at Doc. 35, I will grant

14   the motion to the extent that Defendant requests that the

15   Court judicially notice the existence of chapter 12 from the

16   book *"Finding Freedom,"* that the Court judicially notice the

17   two New Mexico state court dockets involving the Plaintiff

18   Markle basically to the extent that they show the captions

19   are reflected in the court docket, not for any factual

20   findings made on the court docket because that would be

21   inappropriate, and with regard to the fact that it was

22   reported that Defendant Meghan was in a relationship with

23   Prince Harry in or about November 2016 in several

24   newspapers.

25        And you have withdrawn your final request, and that

1    relates to the materials from an interview that was I think

2    reported on YouTube.  That's been withdrawn.  So the motion

3    is granted as previously determined and ruled by the Court.

4            Let's now go on to Docket 34 which is the Motion to

5    Dismiss the First Amended Complaint.  Again, it's Defendant

6    Markle's motion, so I'll hear from Counsel for Defendant

7    Markle.

8            MR. KUMP:  Thank you, Your Honor.  In preparing for

9    today's argument, I was reminded of that old saying "don't

10   make a federal case out of it."  In other words, not every

11   perceived slight ought to be litigated, and that's certainly

12   true here.

13           In this case, the Plaintiff is taking issue with

14   Meghan's own recollections and impressions of her own

15   childhood growing up, but that is really not a proper

16   subject matter for litigation in a court of law.

17           As we demonstrated in our motion to dismiss and in

18   the cases we've cited, the statements at issue here are not

19   defamatory as a matter of law.  Now, the right to voice

20   opinions, to comment on things, to even criticize are all

21   fundamental rights that are guaranteed by the First

22   Amendment, and because of that and recognizing that the

23   courts have consistently held that pretrial dismissal is

24   particularly appropriate and necessary in defamation cases

25   because of the chilling affect that these cases have on

```
1    First Amendment rights.
2           As explained by the Eleventh Circuit in a case that
3    we cited, Your Honor, Michel versus NYP Holdings, the
4    circuit said, quote, "there's the powerful interest in
5    ensuring that free speech is not unduly burdened by the
6    necessity of defending against expensive and groundless
7    litigation," unquote.
8           Now, Plaintiff's First Amended Complaint which is
9    the pleading at issue here, which is Document 31, identifies
10   ten statements which they claim are defamatory but, in fact,
11   none of them are.
12          But before I get into the substance of any of those
13   particular statements, I think it would be helpful and
14   appropriate to address the first seven statements
15   collectively, and at the end of our -- I should say at the
16   very end of our motion to dismiss, we have assembled an
17   appendix that sets out the ten statements numbered one
18   through ten and that's what I'm referring to.
19          THE COURT:  I reviewed them.
20          MR. KUMP:  Now, the first sentence -- excuse me,
21   Your Honor?
22          THE COURT:  I just said I've reviewed them.
23          MR. KUMP:  Thank you.  Those seven statements, those
24   first seven statements all come from the book published in
25   2020 "Finding Freedom."
```

1          Now, the parties agree that Meghan did not write

2     this book.  It was written by two independent authors, Omid

3     Scobie and Carolyn Durand.  The parties also agree that

4     Meghan did not edit the book.  That was done by

5     HarperCollins, and instead what the First Amended Complaint

6     alleges is that the source for these seven statements was

7     the Communications Secretary at the time and that his

8     background came from Meghan.

9          But the law in the Eleventh Circuit in Florida is

10    clear, and we've cited to it, Your Honor.  The publication

11    rule in defamation cases requires that the Defendant and no

12    one else made or published the alleged false statement.  Our

13    motion to dismiss cites numerous cases where state and

14    federal courts in Florida have dismissed defamation claims

15    because, like here, the Plaintiff alleged that someone other

16    than the Defendant made or published the alleged defamatory

17    statement.

18         For example, in one of the cases we cite which is

19    Johnson v. Darnell which is an Eleventh Circuit case from

20    2019, the circuit affirmed the district court's dismissal of

21    a defamation claim under Rule 12(b)(6) because the

22    Plaintiff, quote, "needed to allege that the Defendants

23    themselves were responsible for publishing the defamatory

24    material, not that something they did indirectly led to the

25    publication of that material," end quote.  That's at 964 of

1    Johnson v. Darnell.

2         And Plaintiff here has not cited a single case that

3    permits the indirect defamation theory on which she depends.

4         Now, there's nothing unfair about requiring the

5    Plaintiff to sue the actual authors of the book if she

6    believes any statements in the book are defamatory, because

7    the law is clear on this publication requirement and,

8    accordingly, Meghan cannot as a matter of law be sued for

9    those seven statements.

10        So what are we left with then in the First Amended

11   Complaint?  We're left with three statements from Meghan's

12   interview with Oprah Winfrey which was in March of 2021.

13        Now, it's well-established that in order to

14   determine if a statement is defamatory, it must be read in

15   full and it must be read in the context in which it was

16   made.  For example, in the case of Parekh versus CBS, and

17   for the court reporter, that's P-A-R-E-K-H, which is a case

18   we cite, your Honor, the Eleventh Circuit in 2020 affirmed

19   the Rule 12(b)(6) dismissal of a defamation action that was

20   filed here in the Middle District holding that, quote, "we

21   agree with the district court that read in context, this

22   statement is not defamatory."  That's at page 833.

23        Now, here, the First Amended Complaint actually

24   misquotes the three statements from the Oprah interview, and

25   as the Eleventh Circuit held, it is important to read the

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

1    actual words spoken in full and in the context of which

2    these statements were made.

3         Now, when that is done, it is clear as a matter of

4    law that none of these three statements supports a claim for

5    defamation.

6         So let's start with the first one which is statement

7    No. 8.  This is alleged in Paragraph 33 of the First Amended

8    Complaint where it is alleged that Meghan stated she was,

9    quote, "an only child," unquote.  But that's not accurate.

10        If you look at the version of the transcript which

11   Plaintiff submitted attached to her original complaint which

12   was Document No. 1-9, the transcript shows that during the

13   interview, Oprah identified Plaintiff as, quote, "your half

14   sister on your father's side," unquote.  And the transcript

15   also shows that Meghan did not respond to that by saying,

16   Oprah, what are you talking about, I don't have a half

17   sister on my father's side.  That was not how this interview

18   went.

19        Oprah asked her, "what is your relationship with

20   her," unquote, again referring to Meghan's half sister.

21        THE COURT:  Mr. Kump, you are freezing up, so we

22   cannot hear you.

23        MR. KUMP:  Oh, my goodness.  I'm sorry.  Can you

24   hear me now?

25        THE COURT:  Yes.

1        MR. KUMP:  I didn't do it on purpose.  I apologize.

2   I guess Mr. Ticktin and I are both having technological

3   issues today.

4        If somebody can hold up their finger if I cut out at

5   any particular point.  So I'm not sure where I cut out.

6        But in the interview, according to the transcript,

7   Oprah asked, "what is your relationship with her," unquote.

8   And again referring to Meghan's half sister.  And Meghan

9   responded, quote, "I don't feel comfortable talking about

10  people that I really don't know, but I grew up as an only

11  child."  And then Oprah asks, "so you all weren't close?"

12  And Meghan responded, "no."

13       Now, read in context, it is obvious that Meghan's

14  statement, quote, "I don't feel comfortable talking about

15  people that I really don't know but I grew up as an only

16  child," which she offered in response to the question, you

17  know, "what is your relationship with your half sister on

18  your father's side" was not a statement of an objective fact

19  involving genetics or DNA or biology.  Rather, it was a

20  statement, an expression of her own personal and subjective

21  feelings and beliefs about how she experienced growing up

22  and how she feels today about her childhood.

23       There are no objective standards to measure those

24  types of personal statements or feelings.  There's no way to

25  determine if it's true or false.  Meghan never denied that

1    she has biological siblings.  She never declared, quote, I

2    am -- did I freeze up, Your Honor?

3             THE COURT:  No.

4             MR. KUMP:  I'm sorry, excuse me.  She never

5    responded and said, quote, "I am an only child with no

6    siblings," unquote.  All she did was describe her own

7    experiences growing up.  And our own subjective feelings and

8    beliefs are not true or false.  They're personal to each of

9    us.  They are opinions.  Such statements are not readily

10   capable of being proven true or false, and this is something

11   that the Eleventh Circuit dealt with directly in the case of

12   Turner v. Wells which is at 879 F.3d 1254 which is an

13   Eleventh Circuit case in 2018.

14            That was a case where the district court had

15   dismissed the defamation claim on a 12(b)(6) motion just

16   like here, and the Circuit Court affirmed that ruling in

17   every respect.

18            And particularly, I want to direct the Court's

19   attention, there was a statement in that case and that

20   involved the coach who had made statements about various

21   players on a sports team.  There was a statement that the

22   coach had participated in the taunting of a teammate, and

23   the Eleventh Circuit said that was just pure opinion.  And

24   specifically on page 1264 is the following quote.  Quote,

25   "this statement" -- this is from the Eleventh Circuit.

1      "This statement is the Defendant's subjective assessment of
2      Plaintiff's conduct and is not readily capable of being
3      proven true or false."
4             That's what we have here.  Nothing could be more
5      subjective and, therefore, more of an opinion than
6      characterizing how you experience growing up in your
7      relationships with others, and it's common to hear people
8      describe their relationships with each other in vastly
9      different terms, but we surely don't make a federal case out
10     of that.
11            And we have cited the law, and it is red letter law
12     that opinions are not and cannot be defamatory.  Indeed, the
13     right to voice opinions is fully protected by the First
14     Amendment.
15            Now, Plaintiff concedes in her opposition that
16     quote, "the determination of whether a statement is fact or
17     opinion is a question of law for resolution by the court,"
18     unquote.  That's in document 41 at page eight.
19            As we have shown, Meghan's stated opinion when asked
20     about her relationship with her half sister, mainly that
21     she, quote, "grew up as an only child," unquote, is not a
22     false statement of the type required to state a defamation
23     claim.
24            Next I want to look at the next statement, statement
25     No. 9.  Again, it's alleged in paragraph 33 of the First

1    Amended Complaint that Meghan said they, quote, "only met a

2    handful of times," unquote.  But you won't find, quote,

3    "handful of times," unquote in the Oprah interview

4    transcript because Meghan never said that.

5         Now, Plaintiff in her opposition says that the

6    allegation, quote, "only met a handful of times" is just

7    really just paraphrasing and instead points to a statement

8    that Meghan made during the interview where Meghan estimated

9    that, quote, "the last time I saw her must have been 18, 19

10   years ago and before that ten years before that," unquote.

11        Now, Plaintiff acknowledges that the last time the

12   two of them met as adults was in 2006 at Plaintiff's

13   graduation, but then she takes that fact and argues, ah-ha,

14   I've got you, because Meghan's statement is false because

15   she says it was 18 or 19 years ago but it was really only 15

16   years ago.

17        Now, Plaintiff cites no case for the proposition

18   that misremembering the exact moment in time you last

19   encountered a person could somehow be defamatory.  No such

20   cases held that.

21        Even assuming it was, the cases we cite establish

22   that it doesn't matter whether the meeting was 13 years ago

23   or 15 years ago or 18 years ago.  Either way, it was a long

24   time ago, and that's why there's something called the

25   Substantial Truth Doctrine in defamation cases.  The purpose

1    of that doctrine is to weed out cases where, like here, the

2    Defendant's statement was close enough.

3          The last statement that Plaintiff identifies is

4    statement No. 10, and Plaintiff alleges in paragraph 33 that

5    Meghan stated that Plaintiff, quote, "only changed her

6    surname to Markle after the Duchess started dating Prince

7    Harry so that Mrs. Markle could cash on her new found fame,"

8    unquote.

9          But the lie that is alleged in the Complaint so she

10   could cash in on her new found fame is a fabrication.  That

11   was never said in the interview at all.  Now, according to

12   the transcript, again taking the words, all Meghan said was

13   that, quote, "she changed her last name back to Markle and I

14   think she's an early fifties at that time only when I

15   started dating Harry," unquote.  That's how the transcript

16   reads.

17         That statement is substantially true.  Plaintiff

18   acknowledges using the name Rasmussen in September of 2016

19   in the court in New Mexico and establishes two months before

20   it was widely reported that Meghan and Prince Harry were

21   dating.

22         Now, in any event, how Plaintiff's motivation for

23   changing her name might be viewed by others is pure opinion

24   and pure speculation and certainly not actionable.

25         Plaintiff's First Amended Complaint has added a new

1   claim for injurious falsehood which is easily dispensed

2   with.  This claim still requires a falsehood which is

3   published or communicated to a third-party, which we don't

4   have here, and, furthermore, under Florida's Single Action

5   Rule, a single publication can only give rise to a single

6   cause of action.

7          I'm here because Plaintiff's injurious falsehood

8   claim is based on the same facts that are alleged for the

9   defamation claim incurred under that rule, the Single Action

10  Rule.

11         Now, Plaintiff argues that her injurious falsehood

12  claim is different because she's seeking different damages

13  under each claim, but this argument was considered and

14  rejected in cases we cite in a reply brief.  For example, in

15  one of them, Plaintiff filed both claims for defamation and

16  for emotional distress, and the Court nevertheless dismissed

17  the emotional distress claim because even though it sought

18  different damages, it still relied on the same publication

19  as the defamation claim which is exactly what we have here.

20         Both of Plaintiff's claims for defamation and

21  injurious falsehood have separate requests for damages and

22  both of them are based on the same alleged defamatory

23  statements, and so under this Single Action Rule the

24  injurious falsehood claim must be dismissed.

25         Your Honor, in conclusion, we respectfully submit

1    that the motion to dismiss should be granted in its entirety

2    without leave to amend.  Granting leave to amend here would

3    be futile which is the standard in the Eleventh Circuit.

4         Now, our first motion to dismiss the original

5    complaint demonstrated why Plaintiff's defamation claims

6    failed.  Plaintiff did not oppose that motion but instead

7    chose to respond by filing this First Amended Complaint

8    which dropped several of the alleged defamatory statements,

9    but as we have shown in this current motion to dismiss, Your

10   Honor, the First Amended Complaint bears no better because

11   it failed to fix the fatal defects that plagued the original

12   complaint.

13        So when Plaintiff filed this First Amended

14   Complaint, she was taking her best shot at stating a

15   defamation action understanding and recognizing all of the

16   problems that we cited in our moving papers for the very

17   first motion, but nevertheless she was not able to fix any

18   of those, and in light of that it would be futile to give

19   her leave to amend.

20        Thank you, Your Honor.  We appreciate it very much.

21        THE COURT:  Thank you.

22        Mr. Ticktin, you may respond, but before you do,

23   along with your response with the motion to dismiss, you

24   filed an affidavit from Plaintiff Markle.  You should know

25   that I will not consider the affidavit for purposes of an

1    order on the motion to dismiss.  That would basically be

2    inappropriate.  I am limited to the four corners of the

3    Complaint, matters which I may judicially notice, or things

4    referenced in the Complaint about which there is no dispute,

5    and so you don't need to spend any time addressing that

6    affidavit.  I know that you filed one with regard to the

7    objections as well, but filing the affidavit and asking the

8    Court to consider the affidavit puts this in line with

9    motions for summary judgment under Rule 56 which we are not

10   here on today.  So I just wanted you to know that before you

11   begin your argument.

12        I am particularly interested in your argument with

13   regard to why you believe that publication by Defendant

14   Markle is not required for your defamation claim.  I tend to

15   agree with Mr. Kump that I believe the law is fairly clear

16   on this issue, but you make an argument with regard to some

17   indirect role that Defendant Markle had with regard to the

18   publications in the book that's at issue here.

19        So I just wanted to make you aware of it so that you

20   can address those matters in your argument.  You may

21   respond.

22        MR. TICKTIN:  Thank you, Your Honor.  Counsel raised

23   a lot of points, some good, some not so good, but let me

24   just address what I need to here.

25        In the case of American Airlines, Inc., versus

26

1    Geddes, 960 So.2d 830, page 833, basically the Court said, I

2    believe it was the Third District Court of Appeals said,

3    words are defamatory when they, quote, "tend to subject one

4    to hatred, distrust, ridicule, contempt or disgrace or tend

5    to injure one in one's business or profession."

6            In this case we've got it all.  In this case,

7    unfortunately when you have someone who has a great deal of

8    popularity, great deal of sway in society, a famous person

9    who then makes remarks and statements about someone who is

10   not a famous person, not a person who is used to dealing

11   with this kind of thing, not a person who can even afford to

12   have the kind of protection that she needs now because of

13   all the death threats and different things that come at her

14   due to the comments of Meghan Markle, so I mean this is not

15   just a case where somebody is trying to make a dig at her

16   sister because of a personal problem.  This is a case where

17   there was definite harm and damage that was done to Samantha

18   Markle due to the fact that her sister was in the position

19   that she was in and made statements that she did.

20           I think that's important to keep in mind when

21   looking at the statements is, like, *what is this about, so*

22   *who cares a woman says -- one woman says I don't even know*

23   *my sister or half sister, I only saw her twice in my life.*

24   *Who cares if that's not the truth?  How is that damaging*

25   *one's reputation?  How is that harming a person?*

1          But when you take all these together and you take

2     the whole situation together, what happens is that these

3     words are basically spelling out that Samantha Markle is

4     supposedly an opportunist who is -- and I'm going to look at

5     the very last tenth comment in regard to that and why that

6     one is so important, because that one is built in.  But

7     that's really what she's saying, that she's saying I didn't

8     even know my sister.  That's basically what she's saying.

9          So now let me get to the point where Your Honor was

10    saying were important to Your Honor.  Meghan Markle relies

11    on Klayman versus Judicial Watch as one of the cases that

12    she raised in her motion, and Klayman is an interesting case

13    because it actually decides the case contrary to what

14    Counsel says.  And I just want to read one part, if I may,

15    to the Court of what is said in this case.

16         First of all, publication.  So I'm not saying, Your

17    Honor -- and it was interesting, Your Honor, as to why I

18    think the publication is not necessary.  Publication is

19    necessary.  Okay?  If I were to say publication are not

20    necessary I think, you know, I've been practicing law a

21    little over fifty years now and I think once I'm saying

22    something like that, it's time to hang up my shingle or go

23    home.

24         But what is publication?  Publication isn't getting

25    the book published necessarily.  Publication is a statement

1    to any third-party, so we have to look at what was said to
2    whom and when.  But I just want to read these words from the
3    Klayman case.

4           The Court said, "It is well-settled that the author
5    or originator of a defamation is liable for republication,
6    for repetition thereof by third persons provided that the
7    natural and probable consequence of his act where he has
8    presumptively or actually authorized or directed its
9    republication.  However, the original author is not
10   responsible if the republication is not the natural and
11   probable consequence of the act but is an independent and
12   unauthorized act of a third-party."

13          Based on the circumstances of this case, the Court
14   said, "a jury may reasonably find Ruffley is liable for the
15   republication on the basis republication would likely occur.
16   A defendant's liability of republication is a factual
17   question to be resolved by the jury."

18          So this is Judge Altonaga's ruling and it's very
19   well stated and that's really where we are today.  So, in
20   other words, we know there's no question about it that the
21   authors that were, you know, taking credit for being the
22   authors of the book, Omid Scobie and Carolyn Durand.
23   There's no question about that.  Those are the people whose
24   names are on the book.

25          But we have a situation here where Meghan Markle

1    cooperated with them and worked with them and helped them
2    with the book, and as Your Honor is saying, we have to look
3    at the four corners of the Complaint.  We cannot look at the
4    affidavit that we submitted.  And when the Court looks at
5    that, paragraph 18 ultimately on August 11th, 2020, the book
6    *"Finding Freedom"* was published which was supposedly an
7    unauthorized biography of the Duchess, however, the false
8    information contained in the book came from the Duchess
9    herself, her agent, the Communications Secretary.

10         So we have -- and if I may, Your Honor, what's
11   really unfortunate is that this is now possibly going to be
12   the second time that Meghan Markle is going to have to
13   apologize to a court for misleading the Court on this very
14   same issue.

15         Ms. Markle misled the court in England in another
16   matter where she -- they were suing a publication and she
17   said in papers that were submitted to the court after her
18   Communications Secretary made it known to the court that he
19   was actually used to convey this information to the authors
20   of *"Finding Freedom,"* she wrote, "in the light of the
21   information of the documents that Mr. Knauf has provided, I
22   accept that Mr. Knauf did provide some information to the
23   authors for the book and that he did so with my knowledge."
24   And then she apologized for misleading the court over what
25   they're now saying the same thing, that she wasn't

```
 1    responsible, she didn't help with the production of this
 2    book which would have led to its publication.  I mean who --
 3          THE COURT:  Even accepting what you just said and
 4    from whatever document you were reading with regard to
 5    another court case, even accepting that that information was
 6    conveyed by Defendant Markle's Communications Secretary to
 7    the authors of this book, I'm still struggling to understand
 8    how that makes her responsible for publishing the allegedly
 9    defamatory statements contained in the book.  Again, I'm not
10    looking at British law or African law or Greece law.  I'm
11    looking at Florida law with regard to this defamation claim
12    which is, I think, pretty clear --
13          MR. TICKTIN:  That's the answer.
14          THE COURT:  -- particularly provided by the Middle
15    District.
16          MR. TICKTIN:  I have an answer for Your Honor.
17          THE COURT:  Thank you.
18          MR. TICKTIN:  The answer is from -- is from the
19    Klayman case which relied on Granda-Centeno which is, I'm
20    sorry, 489 So.2d at 143, and also relied on Blue Ridge Bank,
21    866 F.2d at 689.  And this is the point.  It is well-settled
22    that the author or originator of a defamation, which Meghan
23    Markle is, she's the one that told this directly or
24    indirectly, got it over to these people that were making
25    the, quote, "unauthorized" biography of Ms. Markle.  And
```

1       she's the one -- I mean who else knew Samantha Markle?  I

2       mean it's not as though these people sitting in England can

3       say, you know, look, I can look up Winston Churchill.  They

4       can look up FDR.  They can look up Abraham Lincoln and they

5       can find all sorts of things about them and write about

6       them, but Samantha is a private citizen.  Those people don't

7       have any sources of information about her.

8              The only source of information that made chapter 12

9       comes, as is alleged in the Complaint, comes from Meghan

10      Markle.  She's the only one that can talk about her

11      relationship with her or anything else.  And she was the one

12      feeding information to these people.

13             So the law is that if it's a natural and probable

14      consequence of feeding information to people, that they're

15      going to republish that information, then you're liable for

16      that publication even though it's not you doing that

17      publication.

18             So this is where Counsel fails in his argument; that

19      she didn't write the book; her name isn't on the book; she

20      didn't put the book out there; she didn't sell it in the

21      stores, she didn't need to.  And so I'd ask Your Honor,

22      please look at those three cases or just read that one case,

23      Klayman versus Judicial Watch and you'll see, you know, we

24      are safe in this case in terms of the law because it's a

25      republication and that's basically what's alleged in the

```
 1    Complaint.
 2            So they can't just get a dismissal especially when
 3    the things that are said in the Complaint are to be deemed
 4    as true.  The book was used by the Duchess to affirm the
 5    false narrative that she portrayed to the Royal Family, that
 6    she supposedly lived in this rags-to-riches thing.  You
 7    know, she got caught.  She was lying about her education,
 8    that she was getting all these scholarships and everything
 9    else.  Her father paid for her education for goodness sakes
10    and she got caught with this lie.  Why else is she putting
11    her sister down?  Why else is she putting her father down?
12    Why else is she denying her family who has been nothing but
13    good to her in her whole life?
14            She never had a problem with them at all and she's
15    denying them in order to cover up for the fact that she's
16    made up this narrative of going from rags-to-riches, which
17    is nonsense, and in the process probably not even realizing
18    the harm that she would do to her sister, probably never
19    realizing that this is going to put an innocent person in
20    to -- in to the fray of where all of a sudden she's going to
21    have public reaction where she has, what, hundreds of
22    threats on her life on the Internet coming at her, a stalker
23    that she had to deal with and prosecute and she -- there she
24    also used the name Rasmussen, but it wasn't because -- it
25    was because she wanted to basically have anonymity because
```

1    she always uses the name Markle.

2            MR. KUMP:  Your Honor, can I respond to that?

3            THE COURT:  Well, I don't think Mr. Ticktin has

4    finished, so I'm going to allow him to finish his argument

5    with regard to the defamation count.  I'll allow you to

6    respond when he finishes his argument as to the defamation

7    count.

8            MR. TICKTIN:  Your Honor, it has been before the

9    Court and it was part of the first Complaint and Counsel

10   raises it as well as some kind of a submission but, you

11   know, that we did something wrong by not making part.  We

12   agree that the statements that were made in the December

13   2018, I think, December 10th, 2018 email were before the

14   statute of limitations, those particular statements, but

15   they're evidence of what has occurred.

16           Counsel is stating that the things that were said in

17   that prove that it wasn't said by Ms. Markle, but if I could

18   just read to you, to the Court from that email that he

19   refers to in his motion.  Ms. Markle says, "thanks very much

20   for the info."  This is what she's writing to Jason Knauf,

21   the one who gave the information directly to the authors.

22   So she's basically communicating to the author.  She's

23   saying to Jason, "thank you very much for the information

24   below - for when you sit down with them it may be helpful to

25   have some background, reminders, so I've included them below

```
 1    just in case.  I know you are better versed in this than

 2    most but assisting where I can.  I appreciate your support.

 3    Please let me know if you need me to fill in the blanks."

 4             By the way, Your Honor, I'm reading slowly.  I want

 5    Your Honor to know that I'm using a magnifying glass to read

 6    this email.  I'm sorry that that's the way it presented to

 7    the Court in the attachment, but in any event, upon

 8    Meghan dating -- some of the things that are said down here

 9    right in this email said "upon Meghan dating Harry, Samantha

10    changed her last name back to Markle."  So it's right back

11    to this time.  It's consistent with what she is telling --

12    she is telling her secretary basically to tell the people

13    that are writing the book that upon Meghan dating Harry

14    Samantha changed her last name back to Markle and began a

15    career creating stories to tell to the press.  She had lost

16    custody of all three of her children from different fathers.

17    You know, here is a woman who's in a wheelchair that had to

18    deal with bringing up three young children that made a

19    sacrifice, and this is how she's treated here by her sister

20    is amazing.

21             But in any event --

22             THE COURT:  Let me --

23             MR. TICKTIN:  -- the point is, this is said here in

24    the email.

25             THE COURT:  Mr. Ticktin, that email is not a part of
```

1    your Amended Complaint; correct?

2         MR. TICKTIN:  It's not part of the Amended Client,

3    but in his motion to dismiss, Counsel made it a big point

4    about the fact that these things were not said in the email.

5         THE COURT:  Right.  Well, I'll let you know, I'm not

6    considering anything that's not in the Amended Complaint.  I

7    understand that the Amended Complaint supercedes the

8    original Complaint, so I don't need to know if it's in the

9    original Complaint or its attachments.  I am more concerned

10   with what's in the Amended Complaint and then, of course,

11   any other matters, again, I've judicially noticed.

12        The one thing that I do ask if there's any objection

13   to, though, however I should correct that, is the transcript

14   from the Oprah Winfrey interview, because I don't think you

15   attached that to your Amended Complaint either.

16        MR. TICKTIN:  No.  But Counsel did falsely indicate

17   what it said, and I'd like to make the record complete as to

18   what really was said.  I mean, I understand.  He's not --

19   I'm not saying he's a dishonest man.  I don't mean to put it

20   like that but, you know, the fact of the matter is I think

21   the Court should see what the full statement is considering

22   Counsel read a part of it.

23        THE COURT:  Well, is there any objection from either

24   party to the Court considering the transcript from the Oprah

25   Winfrey interview which would be integral to the cause of

1    action as set forth in the Amended Complaint because it

2    refers to statements made?  It's just not attached to the

3    Amended Complaint.

4            MR. TICKTIN:  I have no objection, Your Honor.

5            MR. KUMP:  I have no objection, Your Honor.

6            THE COURT:  Okay.  I will consider the transcript

7    from the Oprah Winfrey interview.

8            Mr. Ticktin, you may finish your argument with

9    regard to the defamation claim.

10           MR. TICKTIN:  So what was said, and this is probably

11   the most important of all the different statements that were

12   said, but if you take them all together, it's what they

13   mean.

14           And there's no question that this was published.

15   That's why Counsel listed the first seven because they were

16   part of the book and then the last three because they were

17   part of an interview that was on national television, and

18   this is what Meghan Markle said.

19           THE COURT:  But are your statements in your Amended

20   Complaint, are they consistent with the statements in the

21   transcript of that interview?

22           MR. TICKTIN:  Yes.  Where Counsel says we misquoted

23   or she didn't really say that, those remarks were not in

24   quotation marks, and so, you know, Counsel is just

25   embellishing a little bit by saying we said it in the

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

1   Complaint and it's not really what she said.  It's true we
2   said it in the Complaint but we didn't say these were the
3   words that were said.
4          THE COURT:  Isn't it important when the Court is
5   considering a defamation claim to have an accurate statement
6   of what was actually said?
7          MR. TICKTIN:  Yes.
8          THE COURT:  So, in other words, I am looking to see
9   what was said at the Oprah Winfrey interview, not what
10  Counsel may have paraphrased it to be.  Because I have to
11  make a determination regarding defamation, I need to know
12  what was said, period.
13         MR. TICKTIN:  That's correct.
14         THE COURT:  Okay.
15         MR. TICKTIN:  Okay.  So, Your Honor, this is what
16  was said.  Oprah said, "she doesn't really know you."  And
17  Meghan said, "no.  She changed her last name back to Markle
18  and I think that -- I think she's an early fifties at that
19  time, only when I started dating Harry.  And so I think that
20  says enough."
21         In other words, she's an opportunist.  She changed
22  her name back to Markle at the time I started dating Harry
23  because she wanted -- she wanted to take a ride on that.
24  She wanted to use that opportunity.  She's an opportunist.
25  And this is basically the entire scenario of what Meghan

1    Markle is portraying, so this is why it was important to get

2    the rest, and that statement "and that says enough."  In

3    other words, that's telling you who this person is.  This is

4    a person who changed her name to Markle when I was dating

5    Harry and that says it all, in other words, because now you

6    know who Samantha Markle is.  She's this disgusting

7    opportunist.

8         I think Your Honor really needs to look at the

9    Complaint more than anything in order to be able to

10   determine the fact that we really do have a case here, and I

11   think that and the law does bring in the book because we do

12   have Meghan Markle alleged in the Complaint.  It's averred

13   that Meghan Markle was the one responsible for passing that

14   information to those authors knowing that that false

15   information, that the first publication of it was going to

16   then be repeated in a further publication which makes her

17   liable for it.

18        And that's why the Court held in the Klayman case --

19   let me find it.  The Court said, "in light of the

20   information and documents that Mr. Knauf has provided, I

21   accept that Mr. Knauf did provide some information" -- I'm

22   sorry.  That's another part.  I'm sorry.  That's not the

23   court speaking.

24        But the court basically found in favor of

25   Mr. Klayman and denied the motion for -- I believe that was

1    a motion for summary judgment saying it's not appropriate

2    for summary judgment because this has to be determined by

3    the jury.  I would also say -- okay.

4         So in terms of the defamation case, Your Honor,

5    these allegations are sufficient to withstand a motion to

6    dismiss, and I agree it's not the strongest case in the

7    world.  We are going to have -- but, you know, with

8    discovery, if we can get discovery, but.  And I say that

9    because so far we've not been successful getting one

10   document, one answer to the request for interrogatories or

11   one admission.  Everything has been basically stonewalled in

12   discovery, but assuming that we will get discovery, we're

13   going to be able to make it much stronger because it's not

14   as though great harm has not been done to this person by the

15   words of Meghan Markle.

16        THE COURT:  Okay.  Thank you.  Response.

17        MR. KUMP:  Thank you, Your Honor.  I'm not going to

18   respond to about 90 percent of what Counsel talked about

19   because I think it was inappropriate.  I think it was

20   outside the record.  I think it was quite frankly offensive

21   to my client, but I'm not going to address that because

22   that's not why we're here today.

23        I want to address the critical point, though, that

24   Your Honor did which is what is Florida law on the

25   publication requirement, and we cited the case law to Your

1    Honor that under Florida law for defamation, quote,

2    "defamation, published a false statement."  That's the very

3    first requirement and that's cited in the cases that we

4    cite.

5            Now, Florida law is clear that you cannot sue the

6    source of a statement for defamation which is what they're

7    trying to do here.  What they're alleging -- what they've

8    alleged in the Complaint is that Meghan said something to

9    the Communications Secretary who then said something to the

10   authors, and they think that that is enough to do it.  And

11   the only case that they're citing now is this Klayman case

12   which is a case from 2014 from the Southern District.  It is

13   an outlier case, and let me explain to you.

14           We've cited two cases from the Middle District, the

15   Pierson case in 2010, and the subsequent Klayman case which

16   was in 2015 from Judge Conway, both of which specifically

17   found that Florida law requires that the Defendant -- excuse

18   me -- that the Plaintiff -- excuse me -- that the Defendant

19   be the party who made the statement, otherwise you can't sue

20   them.

21           And the Klayman case that Mr. Ticktin is referring

22   to is a 2014 case from the Southern District where if you

23   look at it, which I'm sure the Court will, you'll see that

24   the judge decided to go off and follow Fourth Circuit law

25   because you couldn't find anything under Florida law.  It's

1    not based on Florida law.

2          The Pierson case in 2010 specifically discusses the

3    case that Mr. Ticktin cited, the Granda-Centeno case.  It's

4    Granda-Centeno versus Lara.  It's a 1986 Court of Appeals

5    case in which there is dicta in a footnote which suggests

6    that you can look at reasonable foreseeability.  The Pierson

7    case in the Middle District in 2010 rejected it.  The

8    Klayman case in the Middle District in 2015 rejected it, and

9    as we cited in 2019, the Eleventh Circuit in Johnson

10   v. Darnell is stating the exact same standard.

11         The statement is in order to sue a Defendant for

12   defamation, that Defendant has to have made the statement.

13   It's not enough to be indirect.  It's not enough to say it

14   came through an agent.  It's not enough to say it came from

15   somebody else.

16         So if the Plaintiff doesn't like any of those seven

17   statements that are identified in her Complaint, her

18   recourse is to sue the authors of the book.  It is not to

19   sue the Communications Secretary or Meghan or anyone else,

20   and I think the law is just very, very clear on that.

21         They haven't cited any -- excuse me.  I almost said

22   California.  I apologize, Your Honor.  They haven't cited

23   any Florida law other than this 1986 Court of Appeals' case

24   that had a footnote in dicta, and that's -- by the way,

25   that's the way the Pierson case and the 2015 Klayman's case

1    dismissed that 1986 Court of Appeals case.  They said we've

2    looked at it.  It's just simply dicta.  We're not going to

3    follow it.

4         And it's important to recognize that Judge Conway in

5    2015 in the Klayman case had this case now that Mr. Ticktin

6    is referring to, the Klayman versus Judicial Watch from the

7    Southern District, the one that goes off on the Fourth

8    Circuit law.  And Judge Conway a year later looked at that

9    and said that's not Florida law.  I'm not going to follow

10   that.  That's not Florida law.  And that's exactly what the

11   Eleventh Circuit held four years later in 2019, so I think

12   the law is precisely clear.  Under Florida law, Meghan as a

13   matter of law cannot be sued for any of those seven

14   statements.

15        Now, I think it is important to recognize, although

16   Mr. Ticktin acknowledged it, they have conceded that all

17   seven of those statements are barred by the two-year statute

18   of limitations under Florida law.  In other words, they

19   could not sue Meghan or anybody else -- excuse me.  They

20   couldn't sue Meghan for those statements and that's why they

21   dropped them from their First Amended Complaint.  They

22   shouldn't be allowed to get through, you know, the back door

23   what they couldn't get through the front door, so it would

24   just be wholly inappropriate.  And then to say that there's

25   evidence of some wrong-doing, well, no, they're not, because

1    they're barred by the statute of limitations.

2           With respect to the -- Mr. Ticktin mentioned that in

3    response to a question from Your Honor about whether or not

4    the statements in Paragraph 33 of the First Amended

5    Complaint were alleged to be quotes from the interview.  If

6    you look at Paragraph 33, they've quoted, quote, an only --

7    you know, she said she was, quote, "an only child," unquote,

8    and as we've said that's not the full statement.

9           They've said that they only met, quote, "a handful

10   of times," end quote.  That's also not the full statement.

11          The point is simply I agree, the Court does need to

12   look at the full transcript.  This is approximately one

13   minute of a two-hour interview on TV, and I want to

14   specifically address the statement that Mr. Ticktin pointed

15   to.  So Your Honor will see when you look at the transcript,

16   there's only three or four questions.  It's a relatively

17   short passage where Oprah brings up the issue.  She starts

18   out by saying, quote, "and Samantha Markle, your half sister

19   on your father's side, has written a supposedly tell-all

20   book about you.  What is your relationship with her?"

21   That's how it starts off.

22          I've already read to you what Meghan's relatively

23   brief response is.  Oprah then goes, "so you all weren't

24   close?"  And Meghan answers, "no."  Oprah, "she doesn't

25   really know you?"  Answer, "no."  And then she says -- and

1    then Meghan says, "she changed her last name back to Markle.

2    I think she's an early fifties at that time, only when I

3    started dating Harry, and so I think that says enough," end

4    quote.

5          The fair reading of that is that Meghan is saying to

6    the interviewer, we've talked enough in this very short

7    period about Samantha Markle and so I think that says

8    enough.

9          Mr. Ticktin is saying, oh, she's saying she's an

10   opportunist or something of the sort.  There's nothing in

11   here that says that, you know, she calls her half sister an

12   opportunist.  And by the way, I would say calling someone an

13   opportunist is not defamatory.  I'm not suggesting she did,

14   but some of the most successful businessmen and

15   entrepreneurs in the world are opportunists.  All sorts of

16   people are opportunists.

17         I mean, again, I think it's important that we

18   recognize that particularly in a case like this involving

19   defamation the Court plays a special role.  It's a different

20   role.  And the Plaintiff has consistently misstated the

21   12(b)(6) standard in the defamation context.

22         It's not simply just enough for them to make an

23   allegation and then say to the Court and now you have to

24   accept that as true.  The Court obviously is required and

25   will look at the governing law.

1          So, for example, for them to say, well, we've

2     alleged that the information in the book came from Meghan,

3     that's the end of it because it's -- you know, you have to

4     accept our pleadings as true.  Again, that ignores the

5     publication rule which trumps everything.  The Court

6     obviously has to look at the law.

7          And, you know, I think that -- go back to a case I

8     just cited earlier to Your Honor.  It's the Turner v. Wells

9     case which is 879 F.3d 1254 at 1262.  This is the Eleventh

10    Circuit again affirming a dismissal of a defamation action,

11    and the circuit there framed the Court's, you know, role in

12    a case like this.  It says, quote, "whether the statement is

13    one of fact or opinion, whether a statement of fact is

14    susceptible to defamatory interpretation are questions of

15    law for the court," end quote.

16         So I think here, Your Honor, first, I just want to

17    wrap this up.  I believe that this law in Florida is clear

18    that there has to be publications by the Defendant, and we

19    don't have that here, so I think as a matter of law,

20    statements one through seven are out of the case.

21         With respect to the three statements from the Oprah

22    interview, I'm not going to repeat what I said during my

23    opening statement.  Those statements are not defamatory as a

24    matter of law.  It can be decided on motion to dismiss

25    because it's clear that those are matters that are either

1    substantially true and/or matters of opinion which are

2    clearly protected under the First Amendment.  So that's all

3    I have at this point, Your Honor.  Thank you.

4         THE COURT:  Thank you.  All right.  Mr. Ticktin, you

5    may respond with regard to Count Two, your injurious

6    falsehood claim.

7         MR. TICKTIN:  So, you know, Your Honor heard some

8    things from me today that are different than what we put in

9    our response to the motion because time has passed, and

10   we've been learning a lot more, not through discovery, but

11   through other research, and I think you know my point in

12   terms of this is this:  It's just common sense.

13        So, you know, because you have different fact

14   situations.  You have one fact situation in Klayman.  You

15   have other fact situations in other cases which may or may

16   not agree with Klayman, but where if you're just giving

17   information, just talking, you're just making some kind of a

18   statement, that's one thing.  That's why the Court said

19   that, you know, it's not just a question of having an

20   expectation.  It's not just a question of that, but if the

21   republication by third parties, which is what we're talking

22   about, provided it is a natural and probable consequence of

23   this act, so, in other words, Meghan Markle put this ball

24   into play with the purpose of getting it in her book.

25        She -- I think the word is collaborate, so if Meghan

1    Markle collaborated, and I can state this more clearly in
2    that way in an amendment to the Complaint if I am given
3    leave to amend, I cannot not only bring that forward, but
4    Meghan Markle even though she's in the midst of this lawsuit
5    went on and continued on Netflix on a show to make more
6    statements, more defamatory statements about her sister
7    which would be a supplemental complaint, and rather than --
8    you know, if this just gets dismissed, then obviously we can
9    always file another lawsuit on the more recent things, but I
10   think it's probably more prudent to put it all together here
11   and deal with it in one suit.
12        But we would like to not only be able to amend but
13   supplement, because now we have this whole deal on Netflix
14   where Meghan Markle again defames her sister, but, you know,
15   if -- but going back to the original sin here, the "Finding
16   Freedom" book, chapter 12, a whole chapter about Samantha
17   Markle that starts with -- the words that start that
18   chapter, "The problem all starts with Samantha Markle," and
19   she goes on in that chapter about her, and I believe we're
20   going to be able to show that there was collaboration with
21   the authors which is a lot more than just making a statement
22   in an email prior to the statute of limitations passing.
23        I never intended to suggest that the only thing we
24   have is the email because that is prior to the statute of
25   limitations, and Counsel would be correct, that that sin was

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

```
 1       before the statute of limitations.  And even if it caused
 2       the republication, that would certainly raise the argument
 3       as to whether the statute of limitations still arises.  I'm
 4       not sure of the answer, but that's not all we have.  We have
 5       a continuing collaboration with the writers of the book.
 6            So that's where the issue is, and, you know, we have
 7       more evidence now.  We have the evidence of what occurred in
 8       court where she apologized for misleading the court by
 9       saying that she didn't have anything to do with the writing
10       of the book.  Very same point.  Yes, Your Honor.
11            THE COURT:  All right.  Mr. Ticktin, as much as I'm
12       enjoying this time with you all this afternoon, I do have
13       other matters that I need to address, so if you would turn
14       your attention to the argument on Count Two of the Amended
15       Complaint, and that's your injurious falsehood claim.
16            I've heard all of the argument that I need to hear
17       with regard to the defamation count, but you may make
18       argument in response to the Defendant's argument on the
19       injurious falsehood claim.
20            MR. TICKTIN:  Damage to reputation is one thing, but
21       here you have distinct damage to, you know, Samantha Markle
22       in terms of other losses that she's had.  It killed her
23       career.  I mean, she was a counselor but could no longer
24       counsel.  She's got special damages in terms of the fact
25       that she's alleged these in that count, so damage to
```

1    reputation is one thing, and -- well, let's put it this way.

2    If the defamation claim were to continue and go forward,

3    some of these losses could be losses for the fact that

4    there's a loss of reputation, but what do you do and how do

5    you deal with the different things that occurred, different

6    kinds of damages that aren't just a reputation but are

7    having now to deal with all these factors that are coming

8    about dealing with the people who are now threatening her

9    life, things like that that are going on, so we've got a

10   complete divergence in terms of those things.

11           Also, it could be that at some point we may need to

12   choose if the damages really are basically the same, we

13   might need to elect, but the law is election is required

14   before final judgment, not at this point in time because,

15   you know, that would be great for the Defendant if this

16   Court would at this time strike the injurious falsehood

17   claim which has nothing to do with reputation.  We don't

18   need to prove reputation.

19           In fact, many of Counsel's arguments about it not

20   being defamation is saying, oh, this doesn't go to

21   reputation, this doesn't go to reputation, but if they don't

22   go to reputation, then that's where I need the injurious

23   falsehood in order to be able to have the alternative count,

24   so that should not be dismissed at this point in time.

25           Perhaps at a later date, you know, in other words,

1    it should be denied without prejudice, but it should not be

2    denied at this time.

3              THE COURT:  So are you --

4              MR. TICKTIN:  It should not be granted at this time.

5              THE COURT:  So are you agreeing that it is a

6    duplicative count but that you have pled it in the

7    alternative?  Because it's not clear from the Amended

8    Complaint that it is an alternative claim for relief.

9              MR. TICKTIN:  No.  It actually -- I think that

10   there's a clear line between the two in terms of the damages

11   from one being completely separate from the damages of

12   another, but there is an argument that could be made that

13   there's a gray area in between, so you've got some facts

14   that are just for reputation, you've got some facts that are

15   reputation and both lead to some of the other damages, and

16   then you've got those that are just specifically on

17   injurious falsehood.  So they are not identical.  They're

18   not the same count.  They're not the same.  Because

19   reputation just doesn't come into injurious falsehood.

20             THE COURT:  Okay.  And do you believe that you have

21   sufficiently included in your second count the special

22   damages that need to be adequately alleged?

23             MR. TICKTIN:  It could be done better, Your Honor,

24   but it is adequate the way it is.  You know, we spoke of the

25   different things.  You don't need to plead special damages

1    with particularity.  You need to plead special damages

2    sufficiently, that the other side is on notice of what those

3    damages are.  You know, you don't have to -- it's not like

4    the enhanced standard for fraud.

5             THE COURT:  Okay.  All right.  Thank you.  Response

6    from the moving party, Mr. Kump.

7             MR. KUMP:  To be very brief on the second one.  Your

8    Honor, under the Florida -- again, what is Florida law?

9    That's what governs us here.  Florida has the single action

10   rule which says that publication gives rise to a single

11   cause of action so I don't believe that Plaintiff can even

12   allege this alternatively; in other words, say there's

13   defamation and here is injurious falsehood when all of the

14   same underlying facts -- when all of the underlying facts

15   are the same which they are here.

16            There's nothing alleged in the injurious falsehood

17   claim other than the defamation statements that are

18   allegedly made, same statements that support the defamation

19   claim.  Under Rule 9(g), there's a specific requirement that

20   special damages be specifically pled.  That's the law on it.

21   But I think, again, the law again in Florida is clear that

22   under the single action rule this injurious falsehood claim

23   cannot stand.

24            Thank you, Your Honor.

25            THE COURT:  Okay.  All right.  Counsel, is there

1    anything further with regard to the case?  I am -- I've

2    ruled on the judicial notice motion at Doc. 33.  Actually

3    it's Doc. 35, excuse me.  I am going to issue a written

4    opinion with regard to the motion to dismiss the First

5    Amended Complaint which you should rely upon.

6         I will let you know, however, that I am really

7    struggling with trying to find under Florida law that

8    Defendant Markle published the allegedly defamatory

9    statements.  I'm just -- and I've looked at a few of the

10   cases.  I'll look at the remaining cases in the interim and

11   make sure I've addressed and reviewed the cases that you

12   have emphasized at this oral argument and we'll issue a

13   written opinion with regard to the motion to dismiss.

14        Is there anything further?

15        MR. KUMP:  No, Your Honor, not for Defendant.

16        MR. TICKTIN:  Only that I would ask Your Honor to

17   deny the motion that was included in the response.  I

18   mean -- well, it's part of the motion under the SLAPP Act.

19        THE COURT:  Okay.  For attorney's fees.

20        MR. TICKTIN:  Yes.  Yes.  Your Honor, the SLAPP Act

21   is for expressing matters that the public has an interest in

22   because they arise -- the public doesn't have an automatic

23   interest in Samantha Markle.  Maybe they have an interest in

24   Meghan's relationship with Harry, but they don't have -- you

25   know, it's not fair game to start speaking about a private

1    citizen, and I think that that would be included in the

2    SLAPP Act.

3              THE COURT:  Mr. Kump.

4              MR. KUMP:  Well, Your Honor, the Florida statute is

5    clear.  It's been applied in every federal -- Florida

6    federal court that has considered it.  The purpose is to

7    deal with actions that are filed that are without merit,

8    which respectfully we contend this one is, and that also

9    deal with issues arising or involving free speech on public

10   issues.

11             Particularly, the statute specifically refers to,

12   you know, statements that are made on television and things

13   of the sort which that's what they've alleged, so I think

14   it's clear that it comes within the statute, and if and when

15   the Court grants the motion that attorney's fees would be

16   recoverable under the Florida statute.  Thank you, Your

17   Honor.

18             THE COURT:  All right.  There being nothing further,

19   then that concludes this proceeding.  We are adjourned.  You

20   all are free to leave the meeting.  Have a good day.

21   (Court adjourned at 2:51 p.m.)

22

23

24

25

```
 1

 2    UNITED STATES DISTRICT COURT   )

 3                                   )

 4    MIDDLE DISTRICT OF FLORIDA     )

 5

 6            I, SHARON A. MILLER, Official Court Reporter for the

 7      United States District Court, Middle District of Florida, do

 8      hereby certify that pursuant to Section 753, Title 28,

 9      United States Code that the foregoing is a true and correct

10      transcript of the stenographic notes taken by computer-aided

11      transcription taken in the above-entitled cause by the

12      undersigned and that the transcript format is in conformance

13      with the regulations of the Judicial conference of the

14      United States.

15    /S/Sharon A. Miller, CSR, RPR, CRR, RMR

16    Official Court Reporter

17

18

19

20

21

22

23

24

25
```