## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SAMANTHA M. MARKLE,

      Plaintiff,

v.                              Case No: 8:22-cv-511-CEH-TGW

MEGHAN MARKLE,

      Defendant.

_____

## <u>ORDER</u>

This cause is before the Court on Defendant Meghan Markle's Motion to Dismiss the First Amended Complaint (Doc. 34), Plaintiff Samantha M. Markle's Response in Opposition (Doc. 41), and Defendant's Reply (Doc. 48). For the reasons set forth below, the Court will grant the Motion to Dismiss. Plaintiff's defamation claims based on the book *Finding Freedom* will be dismissed with prejudice. Her remaining claims will be dismissed without prejudice.

## I.   <u>FACTUAL BACKGROUND</u>[1]

### A. The Parties

Samantha M. Markle ("Plaintiff") is a citizen of Florida and half-sister to Meghan Markle ("Defendant"). Doc. 31 ¶¶ 3, 6. As alleged in the First Amended

---

[1] The following statement of facts is derived from the First Amended Complaint (Doc. 31), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *See Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992).

Complaint, the two were close during childhood, and Plaintiff regularly drove Defendant to school and helped her with homework. *Id.* ¶ 7. Overall, they had a "wonderful relationship." *Id.* Plaintiff and Defendant stayed close in the years that followed, even as Defendant's acting career took off. *Id.* ¶ 8. However, their relationship soured after Plaintiff met Prince Harry and became engaged to him. *Id.* ¶ 9. From late 2015 to 2018, Plaintiff and Defendant did not communicate, which Plaintiff understood to be a consequence of Defendant's acting career and busy travel schedule. *Id.* ¶ 10.

However, Plaintiff soon realized that the relationship had "unraveled." *Id.* ¶¶ 10–16. Defendant hung up on Plaintiff during a phone call, invited their father to the Royal Wedding before disinviting him due to his health, and ultimately did not invite any family members to the wedding. *Id.* ¶¶ 11–13. Plaintiff was contacted by the media for a story and stated that Defendant should reach out to her ailing father. *Id.* ¶ 14. The press wrote that Plaintiff "bashed" Defendant and used fabricated quotes. *Id.* Defendant responded to Plaintiff through the media. *Id.* ¶ 15. Plaintiff was later interviewed in December 2018 and received negative press coverage. *Id.* ¶ 16.

**B. *Finding Freedom: Harry and Meghan and the Making of a Modern Royal Family***

On August 11, 2020, a book titled *Finding Freedom* was published and marketed as Defendant's "unauthorized" biography. *Id.* ¶ 18. It was written by Omid Scobie and Carolyn Durand and distributed by HarperCollins Publishers. Doc. 35-1 at 1–2. Although the book was supposedly "unauthorized," Plaintiff alleges that Defendant

contributed false information to the book through her agent and communications secretary. Doc. 31 ¶ 18.

Plaintiff further alleges that Chapter 12, titled "A Problem Like Samantha," contains numerous false statements about Plaintiff. *Id.* ¶ 20. Plaintiff lists the following seven statements from the book:

1. Plaintiff and Defendant's "paths had crossed only twice since they grew up." *Id.* ¶¶ 21, 23.

2. "[T]here is only one picture of [Plaintiff] and [Defendant]" together. *Id.* ¶ 24.

3. Plaintiff "reached out to the Sun with her story about how snagging a royal had been [Defendant's] lifelong ambition" and was "handsomely paid" for this. *Id.* ¶ 26.

4. "[Defendant] didn't grow up with [Plaintiff]. She barely saw her." *Id.* ¶ 28.

5. "[T]he half-sisters have never been close." *Id.* ¶ 29.

6. "[Plaintiff] was not invited to [Defendant's] first wedding." *Id.* ¶ 30.

7. Defendant "asked her father to intervene with [Plaintiff], and . . . he had told [Plaintiff] she is hurting [Defendant]." *Id.* ¶ 31.

**C. Defendant's CBS Interview**

On March 7, 2021, Oprah Winfrey interviewed Defendant and Prince Harry on a televised CBS special. *Id.* ¶ 32. Over 50 million people tuned in worldwide. *Id.* Plaintiff alleges that Defendant made three defamatory statements: that she was "an only child," had only met Plaintiff "a handful of times," and that Plaintiff changed her

surname to Markle after Defendant started dating Prince Harry so that she could cash in on her newfound fame. *Id.* ¶ 33.

Plaintiff submitted an undisputed transcript of the pertinent portion of the Oprah Winfrey interview, reproduced below. The allegedly defamatory statements are underlined.[2] Any typographical errors or repeated words appear in the transcript submitted to the Court (Doc. 1-9; Doc. 41-2).

> **Speaker 3 [CBS Reporter]:** But she found out her dad was working with the tabloids.
>
> **Defendant:** There was such an obsession about anything in my world, including tracking down my parents, and I did everything that I could to protect both of them in that media frenzy. But for over a year, the UK tabloids were trying to find my dad offering people so much money to try to find his address. Once they did, I remember being told there was a huge headline like We found him or we've got him saying that about someone's father. And from that point, the tabloids they moved into the apartment next door and across from him descended on the small town, which is giving him gifts. The whole thing brings us to where we are today.
>
> **Oprah Winfrey:** Did it feel like betrayal when you found out your father was working with the tabloids.
>
> **Defendant:** I'm just trying to decide if I'm comfortable even talking about that. If we're going to use the word betrayal. It's because when I asked him when we were told by the comms team, this is a story that was going to be coming out, which by the way, the tabloids had apparently known for a month or so and decided to hold until the Sunday before our wedding because they wanted to create drama, which is also a really key point in all this. They don't report the news, they create the news. We called my dad and I asked him and he said, No, absolutely not. And I said, You know, the the institution has never intervened for anything for us,

---

[2] As the Court will address *infra*, the second statement, that Defendant only met Plaintiff "a handful of times," (Doc. 31 ¶ 33) is not in the transcript. Nor is a portion of the third statement.

but they can try to go in and kill this story. But if they do this once we're not going to be able to use that same leverage to protect our own kids one day.

**Oprah Winfrey:** He said no, absolutely not. He hadn't been talking to them.

**Defendant:** Yea.

**Oprah Winfrey:** So he basically lied to you.

**Defendant:** Well, and so when I said we won't be able to protect our own kids one day. And and I said, I just need you to tell me, and if you tell me the truth, we can help. And he wasn't able to do that. And that, for me, has has really resonated, especially now as a mother, you know,

**Oprah Winfrey:** not being able to, not being willing to protect you

**Defendant:** and also me saying, just full stop, if we use this to protect you won't be able to protect our own children one day. Well, I'm talking about your grandchildren. So I can't. I mean, I look at Archie. I think about this child, and I go, I can't. I genuinely can't imagine doing anything to intentionally cause pain to my child. I can't. I can't imagine it. So it's hard for me to reconcile that.

**Oprah Winfrey:** So your father being hunted down? It seemed like you were saying in some ways that they did this to him. So I want you to be able to clarify this, that that that the tabloids, the media did this to him. They hunted him. But he has a responsibility in it to

**Defendant:** everyone, has accountability. Look, they've hunted my mom down.

**Oprah Winfrey:** Right. And she never speaks to the tabloids.

**Defendant:** I never heard her say a word and remained in silent dignity for four years watching me go through this.

**Oprah Winfrey:** And Samantha Markle, your half-sister on your father's side, has written a, a supposedly tell all book about you. What is what is your relationship with her?

**Defendant:** I think it be very hard to tell all when you don't know me. And I, it's this is a very different situation than my dad, right? When you talk about betrayal, betrayal comes from someone that you have a relationship with. Right? I don't feel comfortable talking about people that I really don't know. But I grew up as an only child, which everyone who grew up around me knows, and I wished I had siblings. I would have loved to have had siblings, so I'm excited to be pregnant that Archie has someone. It was really interesting to me. The last time I saw her must have been at least 18, 19 years ago and before that, 10 years before that.

**Oprah Winfrey:** So you all weren't close. You didn't grow up together.

**Defendant:** No.

**Oprah Winfrey:** She doesn't really know you.

**Defendant:** No. She changed her last name back to Markle, and I think she's an early fifties at that time only when I started dating Harry. And so I think that's says enough.

**Speaker 3 [CBS Reporter]:** That name change does say a lot. Oprah is still with us, Oprah. The other thing that leapt out to me was the way Meghan described how her mother had been bearing up under all this scrutiny with, quote, silent dignity. And then you contrast that with her father. Is she open at this point to having a relationship with her father? I know he's never met Archie or Harry.

**Oprah Winfrey:** I know or Harry. I think, I think I haven't really. I didn't pursue that conversation with them. From what I gather, her relationship with her father is similar to what's happening with Prince Harry and Prince William now that there is distance there. And maybe with time, things will get better.

### D. Damages

Plaintiff lives in Lakeland, Florida, a small city where she is well known. *Id.* ¶ 35. She alleges that as a result of the false statements, Defendant's "fan base," including a significant part of Lakeland's population, became angry with Plaintiff. *Id.*

Suddenly, Plaintiff was seen as an opportunist trying to cash in on her sister's success and fame, despite having no relationship with her. *Id.* ¶ 36. The defamatory statements caused irreparable prejudice, injury, and harm to Plaintiff's reputation, as well as anxiety and emotional distress. *Id.* ¶ 39. She has received hate mail, ongoing negative press, and was stalked by one of Defendant's fans. *Id.* ¶¶ 40–41. Moreover, Plaintiff has been unable to work as a mental health counselor because of the damage to her reputation. *Id.* ¶ 40.

### E. Judicial Notice

The Court granted Defendant's request for Judicial Notice in Support of the Motion to Dismiss (Doc. 35) at a hearing on February 15, 2023. Doc. 65. Thus, the Court takes judicial notice of (a) the existence of Chapter 12 of *Finding Freedom*, written by Omid Scobie and Carolyn Durand; (b) two New Mexico state court dockets involving Plaintiff; and (c) the fact that Prince Harry announced he was dating Defendant in November 2016. *See* Docs. 35; 35-1; 35-2; 35-3; Doc. 65. The Parties agreed that the Court could consider the transcript of Defendant's CBS interview, which Plaintiff attached to her initial Complaint (Doc. 1-9) and her Response to the instant Motion (Doc. 41-2). Doc. 64 at 2; Doc. 67 at 35–36.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed.

R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* at 678. Overall, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

In ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint." *Austin v. Modern Woodman of Am.,* 275 F. App'x 925, 926 (11th Cir. 2008) (quoting *Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)). However, it may also consider attachments or exhibits provided with the complaint. *See Gill as Next Friend of K.C.R. v. Judd,* 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss."). A district court can also take judicial notice of an adjudicative fact that is "not subject to reasonable dispute" and either (1) "generally known within the trial court's territorial jurisdiction" or (2) capable of being "accurately and readily determined from sources whose accuracy cannot reasonably

be questioned." *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.,* 869 F.3d 1204, 1224–25 (11th Cir. 2017) (quoting Fed. R. Evid. 201(b)).

## III.   DISCUSSION

### A. Defamation

The substantive law of Florida applies to Plaintiff's defamation claim. *Turner v. Wells,* 879 F.3d 1254, 1262 (11th Cir. 2018).[3] Florida law separates defamation into two causes of action: libel and slander. Libel is defamation expressed in print. *Cooper v. Miami Herald Pub. Co.,* 31 So.2d 382, 384 (Fla. 1947). Slander, on the other hand, "is a spoken or oral defamation of another which is published to others and which tends to damage that person's reputation, ability to conduct that person's business or profession, and which holds that person up to disgrace and humiliation." *Scott v. Busch,* 907 So.2d 662, 666 (Fla. 5th DCA 2005).

Either form of defamation requires the same elements: (1) publication; (2) falsity; (3) that the actor acted with knowledge or reckless disregard as to the falsity of the publication on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) that the statement was defamatory. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105–06 (Fla. 2008); *Turner*, 879 F.3d at 1262 (citations omitted). A statement is defamatory if it "tends to harm

---

[3] *Turner* outlined the proper analysis in evaluating defamation claims under Florida Law. "Where the . . . [Florida Supreme Court] . . . has not spoken . . . [the Eleventh Circuit] must predict how the highest court would decide the case." 879 F.3d 1254, 1262 (11th Cir. 2018). "Decisions of the . . . Florida District Courts of Appeal" provide guidance and generally must be followed. *Id.*

the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, [is] one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Rapp,* 997 So. 2d at 1108–1109. True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment. *Turner*, 879 F.3d at 1262 (citing *Keller v. Miami Herald Publ'g Co.,* 778 F.2d 711, 714-15, 717 (11th Cir. 1985) (applying Florida law).

Whether a statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court. *Keller,* 778 F.2d at 715 (citing *From v. Tallahassee Democrat, Inc.,* 400 So. 2d 52, 56–57 (Fla. 1st DCA 1981); *Fortson v. Colangelo,* 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006). In answering these two questions, a court must construe statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement. *Keller,* 778 F.2d at 717.

### *Finding Freedom*

Defendant argues that the claims based on *Finding Freedom* must fail because she did not publish the book. Doc. 34 at 7–10. The Court agrees.

In the Amended Complaint, Plaintiff alleges that "the false information contained in the book came from the Duchess herself, through her agent and communications secretary." Doc. 31 ¶ 18. According to Plaintiff, this allegation satisfies the publication requirement. Doc. 41 ¶¶ 3–11. Plaintiff also argues that Defendant's cases on the issue of publication are distinguishable. *Id*. Finally, at the

Court's hearing on this motion, Plaintiff argued that a claim for defamation under a theory of reasonably foreseeable third-party republication is allowed under Florida law. Doc. 67 at 27–36.[4]

As discussed below, the Court finds that Plaintiff's claims related to *Finding Freedom* are due to be dismissed because (i) a defendant must publish a defamatory statement for it to be actionable and (ii) it is undisputed that Defendant did not publish *Finding Freedom*.

The Court has taken judicial notice of the existence of Chapter 12 of *Finding Freedom*. Doc. 65. Defendant submitted a scanned version of that chapter, as well as the title page and copyright page of the book. Doc. 35-1 at 1–2. The authors of the book are listed as Omid Scobie and Carolyn Durand. *Id.* Plaintiff concedes that they wrote the book. Doc. 41 ¶ 6.

Publication is an element of defamation. *Rapp*, 997 So. 2d at 1106.  As the Florida Supreme Court has explained, "[b]ecause the publication of a statement is a necessary element in a defamation action, only one who publishes can be subject to this form of tort liability." *Doe v. Am. Online, Inc.,* 783 So. 2d 1010, 1017 (Fla. 2001) (discussing the definition of "publisher" in a negligence action involving "distributor

---

[4] In their submissions, Plaintiff and Defendant also extensively debate the significance of a December 2018 email that was sent by Defendant and attached to the original Complaint. Doc. 34 at 10–12; Doc. 41 ¶¶ 12–22. Because the Court finds that Plaintiff's Amended Complaint fails to plead publication as a matter of law and dismisses the claims, it is unnecessary to address these arguments.

liability," which is "indistinguishable from a garden variety defamation action"); *see also Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1212 (M.D. Fla. 2021).

Defendant relies on *Johnson v. Darnell* for the proposition that "a valid claim for defamation under Florida Law would need to allege that the defendants themselves were responsible for publishing the defamatory material."[5] 781 F. App'x 961, 964 (11th Cir. 2019). Plaintiff attempts to distinguish *Johnson* by arguing that the defendants in that case indirectly led to the material being published, while Defendant here was the direct source of the defamatory information. Doc. 41 ¶¶ 3–4.

In *Johnson*, an individual was pulled over by the police. 781 F. App'x at 963. He drove off during the traffic stop and later abandoned his car. *Id.* Police discovered the car and found Johnson's driver's license inside the vehicle. *Id.* The officers who conducted the initial traffic stop identified Johnson as the driver based on the license and their recollection of the encounter. *Id.* They filled out a warrant application and a warrant was issued for his arrest. *Id.* at 964. Furthermore, his name and picture were posted on the county's "Most Wanted" list. *Id.* The State of Florida ultimately chose not to prosecute Johnson for the offense, and he brought a defamation claim against the officers, arguing that their fabricated warrant application led to his name and photograph being published on the "Most Wanted" list. *Id.* at 963–964.

---

[5] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.,* 487 F.3d 1340, 1345 (11th Cir. 2007).

The trial court dismissed the claim based on Johnson's failure to allege publication. *Id.* at 962–963. The Eleventh Circuit affirmed, holding that because he alleged that the officers indirectly caused his name and picture to be published on the list, not that they published the list itself, he failed to state a claim. *Id.* at 963–964.

Plaintiff attempts to distinguish *Johnson* by arguing that, while Johnson failed to allege that the officers published the defamatory material, she alleges that Defendant "was the one responsible" for the statements in *Finding Freedom*. Doc. 41 ¶¶ 3–4. This is a distinction without a difference. Plaintiff alleges Defendant relayed defamatory information to her agent and communications secretary, who passed it on to the authors of *Finding Freedom*, who ultimately included it in their book. Doc. 31 ¶ 18. But this is not the same as claiming that Defendant published the book. Thus, *Johnson* is persuasive.

Plaintiff also tries to distinguish *Klayman v. City Pages*, No. 5:13-cv-143-ACC-PRL, 2015 WL 1546173, at *10 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir. 2016), another case Defendant cites for the proposition that she cannot be held liable for statements in a book that she did not publish. Doc. 34 at 9. Plaintiff argues that, in *Klayman*, the claim failed because the plaintiff did not allege "a link to the defendant's involvement with the false and defamatory material." Doc. 41 ¶¶ 5–7.

This is inaccurate. The plaintiff in *Klayman* sued a blogger named Ken Avidor (among others) for defamation. 2015 WL 1546173, at *3. His claim against Avidor was based on a news article that Avidor was a source for, but did not write. *Id.* at *7.

Avidor did, however, email one of his blog posts to the author, and he was credited as the source of the allegedly defamatory information in the article itself. *Id.* at *10. The article also quoted him directly. *Id.* Nevertheless, the Court held that Avidor was not liable for any statements in the article because he did not publish it. *Id.*

Here, Plaintiff similarly accuses Defendant of providing defamatory information that was later published by someone else. Doc. 31 ¶ 18. As such, her attempts to distinguish the case are unavailing. Moreover, unlike the article in *Klayman, Finding Freedom* does not quote Defendant or cite her as the source of the allegedly defamatory statements. This makes it even clearer that Plaintiff has not sufficiently alleged publication.

Finally, at the hearing on this Motion, Plaintiff's counsel argued that Florida law recognizes defamation claims based on third-party republication. Doc. 67 at 27–36. Specifically, he claimed that a plaintiff can satisfy the publication requirement by alleging that the defendant passed along defamatory information that she could have reasonably foreseen would be republished. *Id.* at 31. Plaintiff's counsel relied on *Granda-Centeno v. Lara*, 489 So. 2d 142 (Fla. 3d DCA 1986) in support of this proposition. *Id.* at 30–31.

The Court is not persuaded by this argument. Apart from a few outlier cases, Florida law does not recognize defamation claims based on third-party republication. And the *Lara* Court itself only mentioned this concept in passing. 489 So. 2d at 143 n.3.  Specifically, it stated in a footnote that there was evidence in the case suggesting republication of defamatory statements by a third party. *Id.* It asserted that, when there

is such evidence, "the defendant is liable only if the republication was reasonably foreseeable . . . which is generally a fact for the jury." *Id*. However, *Lara* did not rely on any Florida precedent to support this statement, instead citing cases from Iowa, Virginia, and Wisconsin. *Id.*

Since then, at least three courts in this District have explicitly refused to adopt *Lara* on the basis that the footnote was mere dicta. In *Pierson v. Orlando Reg'l Healthcare Sys, Inc.,* the court rejected the republication doctrine, noting that "[t]he only authority cited by Plaintiff on this point is dicta in a footnote in a 1986 Florida appellate court case and citation of that dicta by a federal district court in New Jersey. This Court does not find the *Lara* dicta sufficient to establish the law of Florida on this point." No. 6:08-cv-466-JA-GJK, 2010 WL 1408391, at *12 n.16 (M.D. Fla. Apr. 6, 2010) *aff'd,* 451 F. App'x 862 (11th Cir. 2012); *see also Klayman*, 2015 WL 1546173, at *10 (finding the *Lara* dicta insufficient to permit the plaintiff to proceed on a theory of defamation based on third-party republication). More recently, *Anderson v. Smith* held that reasonably foreseeable third-party republication does not satisfy the publication element. No. 3:19-cv-222-HES-LLL, 2019 WL 12384796, at *4 (M.D. Fla. July 17, 2019).

This Court agrees. Thus, Plaintiff's claims as to the statements in *Finding Freedom* will be dismissed because she fails to allege that Defendant published them.

Rule 15, Fed. R. Civ. P., provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this generally

permissive approach, a district court need not allow amendment where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed"; (2) "allowing amendment would cause undue prejudice to the opposing party"; or (3) the "amendment would be futile." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam). And where a communication could not possibly serve as grounds for a claim, the court is justified in dismissing it with prejudice. *Sloan v. Shatner*, No. 8:17-CV-332-JDW-AAS, 2018 WL 3769968, at *7 (M.D. Fla. June 22, 2018) (holding that dismissal with prejudice is appropriate where "[a]mending would be futile because a viable defamation action does not exist based on the statements Plaintiff" attributes to Defendant).

Here, the defects in Plaintiff's claims regarding *Finding Freedom* cannot be cured through amendment. Defendant did not publish the book and Plaintiff cannot plausibly state a claim for defamation based on it. As such, the Court will dismiss Plaintiff's claims arising from *Finding Freedom,* with prejudice, as amendment would be futile.

The CBS Interview

Plaintiff's remaining three claims are based on statements from Defendant's interview with Oprah Winfrey. Doc. 31 ¶¶ 32–34. The Court will address each one in turn.

*Statement I – CBS Interview*

**Oprah Winfrey:** And Samantha Markle, your half-sister on your father's side, has written a, a supposedly tell all book about you. What is . . . your relationship with her?

> **Defendant:** I think it would be very hard to tell all when you don't know me. And . . . this is a very different situation than my dad, right? When you talk about betrayal, betrayal comes from someone that you have a relationship with. Right? I don't feel comfortable talking about people that I really don't know. <u>But I grew up as an only child,</u> which everyone who grew up around me knows, and I wished I had siblings. I would have loved to have had siblings . . .

Doc. 41-2 at 3.

The Amended Complaint alleges that Defendant falsely said she was "an only child." Doc. 31 ¶¶ 33–34, 46. Defendant contends that she in fact said she "grew up as an only child," that this statement is protected opinion, and that how she feels about her own childhood is not falsifiable, and therefore not actionable. Doc. 34 at 15–16. Plaintiff responds that this statement was one of fact, and that it made "it apparent that [she] was an opportunist of the worst kind." Doc. 41 ¶ 30.

"[S]tatements that cannot reasonably be interpreted as stating actual facts about an individual" cannot support a cause of action. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 (1990). Likewise, "[o]pinions cannot be defamatory." *Hoon v. Pate Const. Co.,* 607 So. 2d 423, 429 (Fla. 4th DCA 1992). Although pure opinions are protected, mixed expressions of opinion are not. *Fuente Cigar, Ltd. v. Opus One,* 985 F. Supp. 1448, 1457 (M.D. Fla. 1997). The test for determining whether statements are protected opinions is whether "the statements are capable of being proved false." *Fla. Med. Ctr., Inc. v. New York Post Co.,* 568 So. 2d 454, 458 (Fla. 4th DCA 1990). Opinions with no provably false connotations cannot support a defamation claim. *Hamze v. Cummings,*

652 F. App'x 876, 881 (11th Cir. 2016) (citing *Milkovich*, 497 U.S. at 20); *Keller,* 778 F.2d at 714-15 (applying Florida law).

"In determining the basic question of whether certain language is defamatory . . . the words used are not to be construed or taken in their mildest or most grievous sense, but . . . should be construed as the common mind would understand it." *Loeb v. Geronemus*, 66 So. 2d 241, 245 (Fla 1953) (quotation omitted). After making this determination, the Court can dismiss a claim if it finds that an allegedly defamatory statement is nonactionable. *See Turner v. Wells,* 198 F. Supp. 3d 1355, 1370 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018) (finding a statement that was not "subject to empirical proof" or an "objectively verifiable event" to be a protected opinion); *Wolfson v. Kirk,* 273 So. 2d 774, 778 (Fla. 4th DCA 1973) ("Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in either dismissing the complaint for failure to state a cause of action or in granting a directed verdict at the proof stage.").

Here, a reasonable listener would not think that Defendant was suggesting that she has no half-siblings, that Plaintiff does not actually exist, or that Plaintiff is not related to her. *See Fortson,* 434 F. Supp. 2d at 1379 (holding that "to be actionable, a defamatory publication must convey to a reasonable reader the impression that it describes actual facts about the plaintiff or the activities in which he participated."). Nor does Plaintiff argue that Defendant's statement would be understood in this way. *See* Doc. 41 ¶¶ 29–33.

"In determining whether an allegedly defamatory statement is an expression of fact or an expression of rhetorical hyperbole, context is paramount." *Fortson,* 434 F. Supp. 2d at 1379. "All of the circumstances surrounding the publication must be considered." *Keller,* 778 F.2d at 714. Defendant's statement came in response to a question about her relationship with Plaintiff. Doc. 41-2 at 3. She replied that she did not "really know" Plaintiff and that she "grew up as an only child." *Id.* at 3–4. Further, she says that she "would have loved to have had siblings." *Id.*

As a reasonable listener would understand it, Defendant merely expresses an opinion about her childhood and her relationship with her half-siblings. Thus, the Court finds that Defendant's statement is not objectively verifiable or subject to empirical proof. *See Turner,* 198 F. Supp. 3d at 1370. Plaintiff cannot plausibly disprove Defendant's opinion of her own childhood—that she "grew up as an only child" and wished she had siblings. Doc. 41-2 at 3. Because the statement is not "capable of being proved false, it is protected from a defamation action." *New York Post Co.,* 568 So. 2d at 458. Thus, the court is justified in dismissing the claim. *See Wolfson,* 273 So. 2d at 778.

Considering the permissive language of Rule 15 and because Plaintiff has not had an opportunity to amend after an order of the Court analyzing her claims, this claim will be dismissed, without prejudice.  Although the Court questions Plaintiff's

ability to state a claim for relief based on this statement, Plaintiff will be given one final opportunity to replead it if she so chooses.[6]

*Statement II – CBS Interview*

According to the Amended Complaint, Defendant told Oprah Winfrey (and millions of viewers) that she had only met Plaintiff "a handful of times." Doc. 31 ¶ 33. However, this statement is nowhere to be found in the interview transcript. *See* Doc. 41-2. According to Plaintiff, it is a paraphrased version of the following statement from the interview:

> **Defendant:** . . . The last time I saw her must have been at least 18, 19 years ago and before that, 10 years before that.

Doc. 41-2 at 3–4.

Defendant argues that this claim should be dismissed because (1) the statement is not in the transcript and was not said; (2) the term "handful" is too vague to be subject to objective measurement or falsified; (3) it is substantially true that the two have only met a handful of times; and (4) the statement is not capable of being defamatory. Doc. 34 at 15–16. Plaintiff concedes that the Amended Complaint does not accurately quote the transcript. Doc. 41 ¶ 33. However, she argues that her version of the statement was "evidenced" by what Defendant actually said. *Id.* ¶¶ 33–34.

The Court's analysis will begin and end with Defendant's first argument. As discussed below, Defendant is correct that the allegedly defamatory statement is not

---

[6] In deciding whether to replead any of the claims relating to the CBS interview, Plaintiff should be mindful of Rule 11, Fed. R. Civ. P.

in the transcript. More importantly, however, Plaintiff's altered version of the statement differs in substance from anything Defendant said. This is fatal to Plaintiff's claim because her Amended Complaint thus fails to plausibly allege that Defendant made a false statement, and falsity is an element of her claim.

A plaintiff is not required to allege a defamatory statement verbatim. *Clarke v. Phelan,* No. 16-25217-Civ-Scola, 2017 WL 4326522, at *9 (S.D. Fla. Sept. 28, 2017) ("Nor must a claim for oral defamation set out the defamatory statements with particularity.") (citing *Scott*, 907 So. 2d at 667). Nevertheless, "[w]hen bringing a defamation action premised on oral statements, a plaintiff must set out the substance of the spoken words with sufficient particularity to enable the court to determine whether the publication was defamatory." *AFI Holdings of Ill., LLC v. Waterman Broad.,* No. 2:17-cv-491-JES-CM, 2018 WL 3093452, at *3 (M.D. Fla. June 22, 2018) (citation and internal quotation marks omitted); *see Razner v. Wellington Reg'l Med. Ctr., Inc.,* 837 So. 2d 437, 442 (Fla. 4th DCA 2002). Additionally, "Plaintiff must *specify* what false statement or statements caused [her] injuries." *Hill Nissan, Inc. v. Jenkins Nissan, Inc.,* No. 8:11-cv-2757-MSS-EAJ, 2012 WL 13106337, at *2 (M.D. Fla. Aug. 7, 2012) (emphasis added). And the element of falsity is only met "if the publication is substantially and materially false . . ." *Smith v. Cuban Am. Nat'l Found.,* 731 So.2d 702, 707 (Fla. 3d DCA 1999).

According to Plaintiff, Defendant said they had only met "a handful of times." Doc. 31 ¶ 33. In fact, according to the transcript, Defendant merely stated the

approximate dates of Plaintiff and Defendant's last two meetings.[7] Doc. 41-2 at 3–4 ("The last time I saw her must have been at least 18, 19 years ago and before that, 10 years before that.").

Plaintiff does more than paraphrase Defendant's words—she substantively changes the meaning of what was said. She alleges that it is false that she and Defendant have only met a "handful of times." Doc. 31 ¶¶ 33–34. In other words, she claims that they have met *more* than a handful of times. However, this claim and Defendant's actual statement (that the Parties last saw each other approximately 19 years ago and another 10 years before that) could easily both be true.[8]

Having compared the allegations in the Amended Complaint to the transcript of the interview, the Court finds that Plaintiff has failed to plausibly allege that Defendant made a "substantially and materially false" statement, as she must do to state a claim. *Smith*, 731 So.2d at 707. Defendant's allegations are implausible because they are expressly contradicted by the record. Thus, her claim does not allow "the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

Plaintiff's claim is due to be dismissed. However, for the reasons expressed, *supra,* the claim will be denied without prejudice and with leave to amend.

---

[7] The transcript, an exhibit, governs as exhibits govern when they "contradict the general and conclusory allegations of the pleading." *See Gill*, 941 F.3d at 514.

[8] For example, the Parties could have interacted daily when Defendant was a child (more than a "handful of times"), but may have last seen each other "18, 19 years ago and before that, 10 years before that."

*Statement III – CBS Interview*

Finally, the Amended Complaint alleges that Defendant said:

> . . . [Plaintiff] only changed her surname to "Markle" after [Defendant] started dating Prince Harry so that [Plaintiff] could cash in on her newfound fame.

Doc. 31 ¶ 33.

Defendant argues that the second half of the quote—"so that [Plaintiff] could cash in on her newfound fame"—is fabricated. Doc. 34 at 17. She asserts that the remainder of the statement is substantially true and submits state court dockets showing Plaintiff using different surnames as late as September 2016. Doc. 34 at 17; Docs. 35-2; 35-3. Plaintiff responds that the second half of the statement was "defamatorily implied." Doc. 41 ¶ 36.

Plaintiff does not specify what about Defendant's statement was false, which alone is sufficient grounds for dismissal. *Borislow v. Canaccord Genuity Grp. Inc.,* No. 14-80134-CIV, 2014 WL 12580259, at *4 (S.D. Fla. June 27, 2014) (holding that "[t]he Complaint fails to specify what about [the allegedly defamatory statement] is inaccurate or misleading, however, and therefore fails to state a claim for defamation as to this part of the Report."). The Amended Complaint merely presents the alleged statement and asserts that it was not true. Doc. 31 ¶¶ 33–34.

Separately, like the previous statement, this claim is due to be dismissed because it is explicitly contradicted by the transcript. Here, the Amended Complaint did not enclose the entire statement in quotation marks. *Id.* ¶ 33. However, as Plaintiff's counsel conceded, it "paraphrased" the statement by adding the words "so that Mrs.

Markle could cash in on her newfound fame." Doc. 67 at 37–38. In fact, the interview transcript shows that Defendant said the following:

> **Oprah Winfrey:** So you all weren't close. You didn't grow up together?
>
> **Defendant:** No.
>
> **Oprah Winfrey:** She doesn't really know you.
>
> **Defendant:** No. <u>She changed her last name back to Markle, and I think she's in her early fifties at that time, only when I started dating Harry. And so I think that says enough.</u>

Doc. 41-2 at 4.

A plaintiff's attempt to plead a viable cause of action may be defeated by her own evidence. *See Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations."); *see also Associated Builders, Inc. v. Ala. Power Co.,* 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R. Civ. P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.").

The Amended Complaint accuses Defendant of saying Plaintiff changed her surname "so that [she] could cash in on her newfound fame." Doc. 31 ¶ 33. Again,

Plaintiff's claim is explicitly contradicted by the transcript. Doc. 41-2; Doc. 64.[9] Thus, the Court cannot "draw a reasonable inference that the defendant is liable" for this statement. *Iqbal*, 556 U.S. at 677–78 (2009). Plaintiff's claim is dismissed without prejudice. For the reasons expressed, *supra*, she will be allowed one final opportunity to state a claim upon which relief can be granted.[10]

## B. Injurious Falsehood

In the second count, Plaintiff brings a claim for injurious falsehood. Doc. 31 ¶¶ 55–72. Plaintiff alleges that the same defamatory statements detailed in Count I harmed her trade, business, reputation, prestige, and goodwill. *Id.* Specifically, she claims that her mental health counseling business has suffered, and her autobiography sales have "tanked." *Id.* ¶¶ 63–64.

Defendant argues that Florida's single action rule bars Plaintiff from bringing multiple causes of action based on the same publication as a failed defamation claim.

---

[9] Plaintiff's repeated "paraphrasing" of the record suggests that she may be trying to bring a claim for defamation by implication, which differs from defamation in that it occurs "(i) where there is a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (ii) where a defamatory implication is created by omitting facts." *Turner,* 879 F.3d at 1269 (quoting *Rapp,* 997 So. 2d at 1108; *Klayman v. City Pages*, 650 F. App'x 744, 749 (11th Cir. 2016)). The Amended Complaint does not allege defamation by implication.

[10] Although this claim will be dismissed without prejudice, the Court has reviewed Defendant's argument and taken judicial notice of the court dockets related to the truth of this statement (Doc. 34 at 17–18; Doc. 35-2; Doc. 35-3). The Court notes that a statement that is substantially true is generally not actionable. *See Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 516, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (explaining that even a flawed assertion of fact is not actionable as long as it is "substantial[ly] tru[e]," because the common law of libel "overlooks minor inaccuracies"); *see also Smith v. Cuban Am. Nat'l Found.,* 731 So.2d 702, 707 (Fla. 3d DCA 1999) (holding that "falsity only exists if the publication is substantially and materially false, not just if it is technically false.").

Doc. 34 at 18–20. Separately, Defendant claims that Plaintiff has not pled special damages. *Id.* at 20–21. Plaintiff responds that the single action rule does not apply because this claim alleges damages distinct from her defamation claim. Doc. 41 ¶ 47. She argues that her damages in Count I are for emotional distress, whereas the damages in this count are tied to her businesses. *Id.* Plaintiff also claims that she has sufficiently pled special damages as related to her counseling business and book sales. *Id.* ¶¶ 48–53.

The tort of injurious falsehood protects the economic interests of an injured party against pecuniary loss, in contrast to defamation, which protects the personal reputation of the injured party. *Callaway Land & Cattle Co., Inc., v. Banyon Lakes C. Corp.*, 831 So.2d 204, 209 (Fla. 4th DCA 2002). [11] The gist of injurious falsehood is "intentional interference with another's economic relations." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So. 2d 381, 386 (Fla. 4th DCA 1999) (quoting *Procacci v. Zacco*, 402 So. 2d 425, 426 (Fla. 4th DCA 1981)).

The elements of an injurious falsehood claim are: "(1) [a] falsehood (2) that has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are

---

[11] Injurious falsehood is also sometimes referred to as "slander of title, disparagement of property, slandered goods, [or] trade libel." *Sys. W. Performance, LLC v. Johnson,* No. 8:20-CV-989-MSS-SPF, 2020 WL 10501468, at *5 (M.D. Fla. Nov. 30, 2020) (citing *Collier Cty. Pub. Co. v. Chapman*, 318 So. 2d 492, 494 (Fla. 2d DCA 1975)).

proximately caused as a result of the published falsehood." *Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984).

> i. *Single Action Rule*

Under the single action rule, "[w]hen claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event." *Klayman v. Judicial Watch, Inc.,* 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014).

Here, Plaintiff's claim for injurious falsehood is based on the same statements as her defamation claims. Doc. 31 ¶¶ 56–72. Thus, under the single action rule, her injurious falsehood claim must be dismissed.[12] As with the defamation claims based on the CBS interview, the Court will allow Plaintiff one final opportunity to amend her injurious falsehood claim.

Florida courts have disagreed as to whether the single action rule applies only when the non-defamation torts are associated with a *failed* defamation claim.[13] The

---

[12] Additionally, an injurious falsehood claim requires (1) a falsehood (2) that has been published. Thus, Plaintiff's injurious falsehood claim is subject to dismissal because of the absence of a falsehood and/or because Defendant did not publish the statements in *Finding Freedom*.

[13] ". . . some Florida decisions contain language suggesting that the single action rule bars non-defamation torts only when they are associated with a failed defamation claim. *See, e.g., Callaway,* 831 So.2d at 208 ('The single publication/single action rule ... does not permit multiple actions when they arise from the same publication upon which a failed defamation claim is based.'); *Ovadia v. Bloom,* 756 So.2d 137, 141 (Fla. 3d DCA 2000) ('the single publication/single action rule does not permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based.') However, other decisions applying Florida law have rejected non-defamations [sic] torts by applying the single action rule even when related defamation claims were allowed to proceed. *See, e.g.,*

Court need not reach this issue, however, because Plaintiff's defamation claims have all been dismissed at this point.

### C. Florida's Anti-SLAPP Statute

Defendant moves for fees and costs under Florida's anti-SLAPP statute. Doc. 34 at 21. She argues that Plaintiff's lawsuit is meritless and was brought because Defendant exercised her right to free speech in connection with a public issue. *Id.* at 22–24. Plaintiff responds that the statute does not cover Defendant's statements and that her lawsuit has merit. Doc. 41 ¶¶ 57–59.

The statute prohibits a person from filing a cause of action "against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue[.]" Fla. Stat. § 768.295(3); *see also* Fla. Stat. § 768.295(2)(a) (defining "[f]ree speech in connection with public issues" as "any written or oral statement that is protected under applicable law and . . . is made in or in connection with a . . . play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work."). The statute provides that "[t]he court shall award

---

*Klayman,* 22 F. Supp. 3d at 1257 (determining that claims of tortious interference with contract and intentional infliction of emotional distress were barred under single action rule even though defamation count survived summary judgment); *Trujillo v. Banco Cent. Del Ecuador,* 17 F. Supp. 2d 1334, 1339–40 (S.D. Fla. 1998) (dismissing false light invasion of privacy claim based on single action rule even though defamation claims survived dismissal and summary judgment)." *Kinsman v. Winston,* No. 6:15-cv-696-PGB-GJK, 2015 WL 12839267, at *5 (M.D. Fla. Sept. 15, 2015); *see also Tobinick v. Novella,* No. 9:14-CV-80781, 2015 WL 328236, at *11 (S.D. Fla. Jan. 23, 2015).

the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." Fla. Stat. § 768.295(4).

As a threshold matter, neither party argues that the statute does not apply in federal court. For that reason, the Court will follow the numerous decisions from this District that have applied the statute. *See Gov't Emps. Ins. Co. v. Glassco Inc.,* No. 8:19-cv-1950-KKM-JSS, 2021 WL 4391717, at *5 (M.D. Fla. Sept. 24, 2021); *see also Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021) (reaching the same conclusion); *Bongino v. Daily Beast Co., LLC,* 477 F. Supp. 3d 1310, 1322–23 (S.D. Fla. 2020) (same); *Gov't Emps. Ins. Co. v. Right Spinal Clinic, Inc.,* No. 8:20-CV-0802-KKM-AAS, 2022 WL 2466039 (M.D. Fla. July 6, 2022), *reconsideration denied,* 2022 WL 3357578 (Aug. 15, 2022).

Defendant seeks to utilize the statute's fee-shifting provision, which entitles a prevailing defendant to an award of attorney fees and costs. Fla. Stat. § 768.295(4). To claim these entitlements, a moving defendant must make two showings: that the action is "without merit" and that it was filed "primarily" because the defendant exercised a protected right. Fla. Stat. § 768.295(3). The statute only provides for "attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section"—in other words, fees and costs incurred in connection with the anti-SLAPP motion itself, not the entire action. *Berisha v. Lawson,* 378 F. Supp. 3d 1145, 1157 n.8 (S.D. Fla. 2018); Fla. Stat. § 768.295(4). It further appears that fees and costs can only be awarded after a hearing. *See* Fla. Stat. § 768.295(4)*.*

29

Here, Defendant argues that her allegedly defamatory statements qualified as speech on a public issue because they were made in connection with a book and a television program, respectively. Doc. 34 at 23. She argues that Plaintiff's suit is without merit for the reasons discussed in her Motion to Dismiss. *Id.*

Florida's First District Court of Appeal has underscored the difficulty of ruling on an anti-SLAPP motion in the early stages of a case: "[W]e see that proving an action is "without merit" and filed "primarily" because the defendant exercised a protected right will naturally be difficult in a motion to dismiss looking only to the face of the complaint." *Bosshardt v. Drotos,* 351 So. 3d 257, 258 (Fla. 1st DCA 2022).

Because Plaintiff may be able to state a claim for defamation after amending her complaint, the Court cannot determine that the lawsuit was filed "without merit." *See WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 561 (Fla. 4th DCA 2019); *Pierre-Paul v. ESPN Inc.,* No. 16-21156, 2016 WL 4530884, at *2 (S.D. Fla. Aug. 29, 2016) (denying Defendant's request for attorney's fees under Florida's anti-SLAPP statute because "two of its original three counts remain.").

Thus, it would be premature to grant Defendant's request at this phase of the litigation. *Barbuto v. Miami Herald Media Co.,* No. 21-cv-20608, 2021 U.S. Dist. LEXIS 177120, at *10 (S.D. Fla. Sep. 17, 2021) ("Nevertheless, upon review, the Court does not agree that Defendant is entitled to an award of fees and costs at this juncture because the Court has not addressed the merits of Plaintiff's claims, nor has the Court made the finding that Plaintiff's lawsuit as a whole is without merit."); *Cf. Parekh v. CBS Corp.,* 820 F. App'x 827, 836 (11th Cir. 2020) (affirming award of fees and costs

under Florida anti-SLAPP statute, where court determined that the suit was without merit and arose out of protected First Amendment activity).

The Court will deny, without prejudice, Defendant's request for fees under the statute, as it lacks sufficient information to rule on whether the suit is entirely "without merit" or was filed "primarily" or "solely" to suppress Defendant's exercise of free speech in connection with a public issue. Defendant may renew her request for fees under the statute at the conclusion of the litigation.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss. Plaintiff's claims based on *Finding Freedom* will be dismissed with prejudice, as Plaintiff cannot plausibly allege that Defendant published the book, and amendment of these claims would be futile. Plaintiff will be allowed one final opportunity to replead her claims related to Defendant's CBS interview and her claim for injurious falsehood.

Accordingly, it is **ORDERED**:

1. Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 34) is **GRANTED.**

2. Plaintiff's defamation claims based on the contents of the book *Finding Freedom* are **DISMISSED WITH PREJUDICE**.

3. Plaintiff's defamation claims based on Defendant's CBS interview and her claim for injurious falsehood are **DISMISSED WITHOUT PREJUDICE**, for

the foregoing reasons. Plaintiff may file an amended complaint within **FOURTEEN (14) DAYS** of this order.

4. Defendant's request for Attorneys' fees and costs under the anti-SLAPP statute are denied, without prejudice, as premature.

    **DONE** and **ORDERED** in Tampa, Florida on March 30, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties