# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

### TAMPA DIVISION

| | |
|---|---|
| Samantha M. Markle, | Case No. 8:22-cv-00511-CEH-TGW |
| Plaintiff, | |
| vs. | |
| Meghan Markle, | |
| Defendant. | |

## DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Meghan, The Duchess of Sussex ("Meghan"), sued as "Meghan Markle," respectfully moves to dismiss Plaintiff's Third Amended Complaint (Dkt. 72; "TAC").

## I.      INTRODUCTION

This Third Amended Complaint[1] is just more of the same. Like the original and First Amended Complaints ("FAC"), it challenges a handful of comments regarding Plaintiff (1) by Meghan regarding her upbringing and the lack of a relationship with her half-sister, and (2) by unrelated third parties (first, Omid Scobie and Carolyn Durand, and now third-party social media research analyst Christopher

---

[1] In fact, this is Plaintiff's *second* amended complaint. (*See* Dkt. 1, 31, 72.) To avoid confusion, this motion refers to it as Plaintiff does, i.e., the Third Amended Complaint ("TAC").

Bouzy), none of which are defamatory as a matter of law. The TAC should be dismissed with prejudice.

In its recent Order granting Meghan's motion to dismiss, the Court questioned Plaintiff's ability to state a defamation claim with respect to Meghan's statements in the CBS Oprah Winfrey interview, but gave Plaintiff "one final opportunity" to replead if she so chose (Dkt. 70 at 20), with a warning that "Plaintiff should be mindful of Rule 11" in "deciding whether to replead any of the claims relating to the CBS interview" (*id*. at 20 n.6). Plaintiff's TAC does not and cannot breathe life into the fatally flawed claims based on the CBS interview. And resurrecting her claim for defamation by implication—asserted in her original complaint (Dkt. 1 ¶¶ 38-43) and then abandoned in her FAC—does not save the TAC. Given that the fabricated statements in the Oprah interview alleged in the FAC were not defamatory, then, necessarily, similar statements cannot support a claim for defamation by implication.

Having lost her claims based on the book *Finding Freedom*, and recognizing she will lose her claims based on the CBS interview, Plaintiff—without permission from the Court—has added an entirely new defamation claim based upon the December 2022 Netflix series *Harry & Meghan* (the "Series"). The 14 additional statements from the Series suffer from the same infirmities as the old ones. As explained below, Meghan cannot be liable for statements made by non-party Bouzy. And even if Plaintiff had plausibly alleged that Meghan is responsible for Bouzy's statements, which she is not, they are not defamatory. Most of them do not refer to Plaintiff at all, and the ones that do are substantially true or non-actionable opinion.

MOTION TO DISMISS TAC FOR FAILURE TO STATE A CLAIM

Three times Plaintiff has tried—and failed—to turn a personal grudge into a federal case for reasons unbeknownst to Meghan, relying solely on non-actionable opinions and third-party statements. This action should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

This is Plaintiff's third attempt to state a cognizable defamation claim against Meghan. The original complaint, filed in March 2022, was based primarily on statements in a December 2018 email, along with the 2020 book *Finding Freedom* by Omid Scobie and Carolyn Durand. (Dkt. 1.) After Meghan moved to dismiss the complaint (Dkt. 15), Plaintiff filed the FAC. (Dkt. 31.)

The FAC dropped all claims based on the December 2018 email, acknowledging that they were, as Meghan had argued, time-barred. However, Plaintiff continued to argue that Meghan was "responsible" for a book she did not write or publish. (*Id.* ¶ 18.) The Court ultimately agreed with Meghan's motion to dismiss: even if Meghan could have been a *source* for the book, that does not constitute "publication" under Florida law. (Dkt. 70 at 15.) Recognizing that leave to amend would be futile, the Court dismissed these claims with prejudice. (*Id.* at 16.)

Next, the Court addressed three statements made by Meghan in the CBS Oprah Winfrey interview. It first held that the statement Meghan "grew up as an only child" was, in context, pure opinion and therefore non-actionable. (*Id.* at 17-19.) The Court then held that the two remaining statements—that Meghan had only met Plaintiff "a handful of times" and changed her name so she "could cash in on her newfound fame"—were "explicitly contradicted by the transcript." (*Id.* at 7, 20-23.)

The Court expressed skepticism about Plaintiff's ability to successfully replead the alleged defamatory statements from the CBS interview (*id*. at 19-20), and warned Plaintiff to be mindful about Rule 11 if she chose to try one last time (*id*. at 20 n.6). Plaintiff nevertheless doubled down in the TAC, again alleging defamation and adding defamation by implication based on the very same statements (Dkt. 72 ¶¶ 23-38), and 14 others from a documentary series that aired in December 2022 (*id*. ¶ 39-55), six months *after* the filing of this Action.

## III.   <u>PLAINTIFF'S DEFAMATION CLAIMS, NEW AND OLD, FAIL</u>

A plaintiff in a defamation case must allege and prove that "(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the falsity of the statement caused injury to plaintiff." *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006). Plaintiff acknowledges in her TAC (Dkt. 72 ¶¶ 59, 80) that she must also prove Meghan made the defamatory statements with actual malice, i.e., with "knowledge that [a statement] was false or [ ] reckless disregard of whether it was false or not." *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964); *see Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (listing elements for defamation claim). "Defamation by implication is deemed to occur (i) where there is a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (ii) where a defamatory implication is created by

omitting facts." *Turner*, 879 F.3d at 1269 (affirming grant of Rule 12(b)(6) motion).[2]

Plaintiff fails to state either claim in her TAC.

### A.   The Oprah Interview Was and Remains Non-Actionable

It is well established that in order to determine if a statement is defamatory,

it must be read in full and "*in context.*" *Parekh v. CBS Corp.*, 820 F. App'x 827, 833

(11th Cir. 2020) (affirming the Rule 12(b)(6) dismissal of a defamation action filed in

the Middle District of Florida) (emphasis added).

### 1.   The statements in the Oprah interview are not defamatory.

The first four statements at issue in the TAC will be familiar to the Court, as

will the reasons they are not defamatory. (*See* Appendix of statements at pp. 23-25.)

The TAC adds **Statement #1** which was not previously alleged to be

defamatory: "I think it [sic] be very hard to tell all when *you don't know me* … When

you talk about betrayal, *betrayal comes from someone that you have a relationship with*.

Right? I don't feel comfortable talking about people that I *really don't know.*" (Dkt. 72

¶ 26 (emphasis added).) But the Court has already found that "an opinion about

[Meghan's] childhood and her relationship with her half-siblings … *is not objectively*

*verifiable or subject to empirical proof.*" (Dkt. 70 at 19 (citing *Turner v. Wells*, 198 F.

Supp. 3d 1355, 1370 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018)). There is

no meaningful difference between the characterization of Meghan's "relationship

---

[2] This Court recently held that defamation by implication claims "should be analyzed under the same actual malice/negligence framework as traditional defamation claims." *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1312 (M.D. Fla. 2021), *aff'd*, 2021 WL 5858569 (11th Cir. Dec. 10, 2021).

with her half-siblings" and whether the same half-sibling "know[s]" or "ha[s]

a relationship" with her. Both are "not 'capable of being proved false,'" and therefore

"'protected from a defamation action.'" (*Id.* (quoting *Fla. Med. Ctr., Inc. v. New York

Post Co.*, 568 So. 2d 454, 458 (Fla. 4th DCA 1990)).

The concept of "betrayal," meanwhile, is even more clearly an opinion, with a

Middle District court finding that "it is certainly Defendant's '*opinion*' that [plaintiff]

had engaged in 'spin,' lying, and '*betrayal*' of the heirs." *Johnson v. Clark*, 484 F. Supp.

2d 1242, 1251 (M.D. Fla. 2007), *aff'd*, 294 F. App'x 502 (11th Cir. 2008) (emphasis

added); *see Quinlan v. Sugar-Gold*, 219 So. 3d 1173, 1185 (La. Ct. App. 2d Cir. 2017)

(holding statements by daughter alleging that family members "betray[ed] [ ] an elder

man's trust" was a pure statement of opinion and thus not defamatory).

**Statement #2** is: "I grew up as an only child" and "wished I had siblings."

(Dkt. 72 ¶ 28.) Recognizing that the Court already held that "Plaintiff cannot

plausibly disprove Defendant's opinion of her own childhood" (Dkt. 70 at 19),

Plaintiff argues that "in context of the *other* statements about Samantha, this

statement was a denial that Samantha played a part in her life and her upbringing."

(Dkt. 72 ¶ 28 (emphasis added).) It was no such thing, but regardless, this inference is

not defamatory, because whether Samantha "played a part in her life and her

upbringing"—which she did not—is equally unfalsifiable.

**Statement #3** is: "The last time I saw her must have been at least 18, 19 years

ago, and before that, ten (10) years before that," which Plaintiff alleges was a false

statement because it "ignored the multitude of *phone conversations* Meghan and Samantha had enjoyed throughout the years." (Dkt. 72 ¶ 30 (emphasis added)). But having phone calls, if indeed they even occurred, is not meeting in person, so the statement cannot be false. Plaintiff tries to save statement # 3 by alleging it "implied that Samantha was a liar and fame-seeker" (Dkt. 72 ¶ 30), but this is just another example of Plaintiff improperly mischaracterizing the actual words in the transcript.

In any case, "[t]he law of defamation is concerned with whether a publisher reports a story truthfully, not generously." *Turner*, 198 F. Supp. 3d at 1371. In short, Meghan was under no duty in the CBS interview to mention any alleged phone calls with Plaintiff. *See Janklow v. Newsweek, Inc.*, 759 F.2d 644, 648 (8th Cir. 1985) (concluding that magazine was not liable for omission of additional facts where the omission did not make what was published untrue).

Finally, **Statement #4** is: "Samantha changed her surname back to 'Markle' when Meghan started dating Prince Harry." (Dkt. 72 ¶ 32.) Once again, this is the same statement that the Court has already warned Plaintiff was substantially true. (*See* Dkt. 70 at 25 n.10 ["Although this claim will be dismissed without prejudice, the Court has reviewed Defendant's argument and taken judicial notice of the court dockets related to the truth of this statement [i.e., that Plaintiff changed her surname] (Doc. 34 at 17–18; Doc. 35-2; Doc. 35-3)."].)

Ironically, the new allegations intended to *bolster* Statement #4 actually doom it. In particular, Plaintiff now admits that she "has used her family name Markle *interchangeably* all of [sic] life." (Dkt. 72 ¶ 34 (emphasis added).) Regardless of when

she changed her name *legally*, the Court has already taken notice of the fact that

Plaintiff used the name "Rasmussen" in September 2016 and "Markle" two months

later, right after Meghan's relationship with Prince Harry was first reported. (Dkt. 70

at 25 n.10.) Thus, whatever the *reason* for the switch, it is substantially true that

Plaintiff "changed" her name after Meghan started dating Prince Harry.

Of course, even a flawed assertion of fact is not actionable if "substantial[ly]

tru[e]," because the common law of libel "overlooks minor inaccuracies." *Masson v.*

*New Yorker Mag., Inc.,* 501 U.S. 496, 516 (1991); *see, e.g., Cape Pubs., Inc. v. Reakes*, 840

So. 2d 277, 280 (Fla. 5th DCA 2003) ("Although Reakes did not expressly admit that

she broke the law, she admitted that she had entered a structure without permission,

making Currie's statement substantially true."). For example, the Northern District

of Georgia recently invoked "substantial truth" in dismissing a conservative activist

group's defamation by implication claim against CNN for accurately reporting its

suspension by Twitter but getting the reason *for* that suspension wrong. *Project Veritas*

*v. Cable News Network, Inc.*, 591 F. Supp. 3d 1322, 1332–33 (N.D. Ga. 2022) (applying

New York law). Using last names "interchangeably" is not materially more

damaging to Plaintiff's reputation than changing them for particular reasons.

## 2. The supposed "implication" of these statements also does not cure the defects.

While the TAC does not clearly identify *which* statements are the basis for her

defamation by implication claim, for *any* such claim, whether statements constitute

MOTION TO DISMISS TAC FOR FAILURE TO STATE A CLAIM

defamation by implication is a question of law for the court to determine. *Brown v. Tallahassee Democrat, Inc.*, 440 So.2d 588, 590 (Fla. 1st DCA 1983). It becomes an issue of fact only where the publication is susceptible of two reasonable interpretations, one of which is defamatory. *Hallmark Builders, Inc.*, 733 F.2d 1461, 1464 (11th Cir. 1984). In that regard, however, even if the defendant *does* "juxtapose[ ] a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts," that is *not* actionable where, as here, the implication "qualifies as an opinion." *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008) (internal quotation omitted) (emphasis added).

Here, even the supposed "implication"—"[1] that Samantha had no relationship whatsoever with her sister and [2] that Samantha was creating a lucrative career selling false stories to the tabloids and television programs" (Dkt. 72 ¶ 79 (brackets added))—is *itself* non-actionable opinion as a matter of law.

The first "implication"—the extent of Plaintiff's relationship with Meghan (or lack thereof)—is pure opinion. This is fatal to the claim. For example, in affirming dismissal, the Eleventh Circuit held that a claim for defamation by implication "fail[ed] because the Report's conclusion that [then-Dolphins] Coach Turner engaged in [obscene] taunting is a nonactionable opinion." *Turner*, 879 F.3d at 1270. And in *Collins v. Cox Enters., Inc.*, a newspaper's endorsement of the plaintiff's political opponent noted that the plaintiff had, in a "deeply cynical and revealing" ploy, changed his name to "fool voters" into supporting him. 215 Ga. App. 679 (1994). The court held that this statement was "speculation as to [the plaintiff's]

motives based on his behavior," but did "not imply an assertion of objective fact that might be proved false." *Id.*

By contrast, the second implication—that Samantha is "publicity-hungry"—is not sufficiently damaging to even be "defamatory." *Dworin v. Deutsch*, 2008 WL 508019, at *6 (S.D.N.Y. Feb. 22, 2008) ("portraying plaintiff as publicity-hungry [is] not defamatory"). Regardless, the implication that Plaintiff did anything "for financial gain" is a "statement of pure opinion." *Vibe Ener v. Duckenfield*, 2020 WL 6373419, at *8 (S.D. Fla. Sept. 29, 2020) (statement that a lawsuit was filed "'to spread falsehoods and inflict pain … for financial gain' is a statement of pure opinion with respect to … Plaintiff's motives in bringing the lawsuit").

So too here: even if Meghan's statements implied that Plaintiff was seeking to cash in on Meghan's fame, this would not be defamatory.

\*\*\*\*\*

In sum, none of the statements in the Oprah interview are defamatory.

## B.    Meghan's Statements in the Series Are Just More of the Same

Although the Court did not give Plaintiff leave to add a new claim, Plaintiff takes issue with five statements by Meghan in the Series: **Statements #5-7** and **16-17**. (*See* Dkt. 72 ¶¶ 49.a-c, 49.e-f.)[3] The new allegations clearly fail on the merits.

---

[3] As an initial matter, the Court would be well within its authority to strike the allegations regarding the Series in their entirety as exceeding the scope of the leave to amend. *See, e.g.*, *Grill v. Walt Disney Park & Resorts US, Inc.*, 2019 WL 13263259, at *6 (M.D. Fla. Mar. 14, 2019) ("'It is mistaken, if not misleading, for Plaintiff[ ] to interpret the Court's ruling as [a] carte blanche' grant of authority to assert new retaliations claims that occurred after the filing of the original Complaint"); *Cincinnati Ins. Co. v. Cochran*, 2006 WL 4495335, at *3

First, Plaintiff disputes that her father "lived alone," i.e., that his "two adult children" (Plaintiff and her brother) "had moved out of his house." (Dkt. 72 ¶ 49.a [**Statement #5**].) Likewise, Plaintiff denies that Meghan could have forgotten "seeing her when [she] was a kid at [her] dad's house, if and when they [Plaintiff and her brother] would come around." (*Id.* ¶ 49.c [**Statement #7**].) But it is nonsensical to claim, as Plaintiff must, that Meghan "doubted her own recollection" of her time (or lack thereof) with Plaintiff. As one court explained, absent "evidence to show that [defendant] doubted her own recollection," a plaintiff "cannot show by clear and convincing evidence" that the defendant "recklessly disregarded the truth." *Madison v. Frazier*, 478 F. Supp. 2d 1056, 1064 (C.D. Ill. 2007), *aff'd*, 539 F.3d 646 (7th Cir. 2008). Simply alleging that "there is no way that [Meghan] could have forgotten" something (Dkt. 72 ¶ 49.c) is not a workaround.

In any case, as noted above, the supposed implication of these two Statements (#5 and #7)—"den[ying] that Samantha played a part in her life and her upbringing" (*id.* ¶ 28)—is no different from the statements in the Oprah interview that the Court already found "merely expresse[d] an opinion about her childhood and her relationship with half-siblings." (Dkt. 70 at 19.)

---

(11th Cir. Dec. 27, 2006) (per curiam) ("The district court was well within its discretion when it struck the malicious prosecution counterclaim on the basis that it exceeded the scope of the original order."). However, striking the new allegations now would only prolong this frivolous action because Plaintiff could just file a new one based on the Series that would end up back in this Court. The new claims fail, so better to address them now.

Next, Plaintiff alleges that Meghan's statement, "You're telling people you raised me," is false. (Dkt. 72 ¶ 49.b [**Statement #6**].) Meghan's statement is not actionable because it was widely reported that Plaintiff made such a statement,[4] and therefore, it is substantially true. But separate and apart from that ground, Statement #6 is also not actionable because the fact it was repeated in numerous prior reports— *including one quoted in the actual Series* (*see* RJN Ex. 2 at 18:05)—precludes actual malice. *See Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 862 (5th Cir. 1978); *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting pre-1981 Fifth Circuit cases). Thus, for example, the Northern District of Alabama recently held that the "multitude of previous reporting" about allegations against failed Senate candidate Roy Moore "defeats any allegation of actual malice." *Moore v. Lowe*, 591 F. Supp. 3d 1087, 1105 (N.D. Ala. 2022) (granting 12(b)(6) motion as to this allegation). The same is true of the oft-reported statement that Plaintiff claimed to have "raised" Meghan—whether or not the *original* reports were accurate—because the reliance on "many independent sources, alone, should defeat any claim of actual malice." *Berisha v. Lawson*, 973 F.3d 1304, 1313 (11th Cir. 2020).

---

[4] See the articles cited in Meghan's concurrently-filed Request for Judicial Notice ("RJN") at 4 n.2. This "multitude of previous reports" is judicially noticeable. *See Turner*, 879 F.3d at 1272 n.5 (noting that the court may take "judicial notice of the existence of … articles written about [plaintiff]" but not for the truth of the matters asserted); *Moore v. Cecil*, 488 F. Supp. 3d 1144, 1150 n.1 (N.D. Ala. 2020) ("The court considers articles cited in Moore's complaint, plus articles that are central to his claim (e.g. proving actual malice) and whose authenticity are not challenged. The court limits its review to … those allegations [that] are central to his claim.") (citation omitted).

Finally, Plaintiff takes issue with back-to-back comments by Prince Harry[5] and Meghan. (FAC ¶¶ 49.e, 49.f [**Statements #16, 17**].) But in context, the antecedent of "You" in these two statements—"when *you* plant a seed that is so hateful, what it can grow into" and "*You're* making people want to kill me .... *You* are making me scared"—was not Plaintiff, but the *media* and a handful of unspecified "secondary" hate accounts. (*See* RJN Ex. 3 at 30:59 ["HEADLINE: Mainstream royal pundits amplify coordinated hate campaign against Meghan Markle"]; RJN Ex. 4 at 31:05-31:43 [blurred out tweets].) Plaintiff cannot just wish away the context of the statement because transcripts and footage "govern when they 'contradict the general and conclusory allegations of the pleading.'" (Dkt. 70 at 22 n.7 (internal citation omitted).) That the statement does not "name[ ]" Plaintiff or "contain[ ] sufficient facts or references" to identify her as the subject defeats her defamation claim. *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021).

## C.     Bouzy's Statements in the Series Are Not Defamatory

Meghan cannot be liable for Bouzy's statements for two reasons: (1) they are not *her* statements; and (2) even if they were, they are opinions or substantially true.

### 1.     Meghan did not "publish" the Series.

Publication is an "element of defamation," and "only one who publishes can be subject to this form of tort liability." (Dkt. 70 at 11 (internal quotation omitted).)

---

[5] In fact, both the transcript and the episode itself indicates that Meghan, not Harry, made **Statement #16**. (*See* RJN Exs. 3, 4 at 31:53.)

Given that Bouzy, not Meghan, uttered **statements #8-15** and **18**, this is a fatal problem for Plaintiff. Her "solution" is to allege Bouzy "was retained by Meghan for the Series, and in his employ by Meghan, in the course and scope of his retention, he said and Meghan published." (Dkt. 72 ¶ 49.d.) Plaintiff's allegation that Meghan hired Bouzy for the Series is a false statement which, as Plaintiff's counsel has been told, will be met at the appropriate time with a Rule 11 motion if it is not withdrawn from the TAC.[6]

### 2. Even if Meghan were responsible for *Bouzy's* statements, which she is not, none of them are defamatory.

As noted above, Bouzy is a third party social media research analyst interviewed in episode 5 of the Series, whose company "looked at 114,000 tweets" and "determine[d] that 70%" of the "hateful content came from just 83 accounts" with "a reach of 17 million people." (RJN Ex. 3 at 28:49.) Many of his statements cited in Plaintiff's TAC are not about Plaintiff, and the rest are clearly not defamatory as a matter of law.

### (a) Statements #8 and 11-15 are not directed to Plaintiff.

<u>First</u>, the vast majority of the statements at issue are not about Plaintiff at all. For example, "Perhaps the most troubling part of this is the number of British

---

[6] For example, in a *Newsweek* article published on April 20, 2023 entitled "Samantha Markle's Libel Lawsuit Against Meghan Slammed as 'Unfounded,'" Bouzy is quoted as follows: "To be clear, I would like to categorically state that Bot Sentinel does not have any financial relationship with Harry and Meghan, Duke and Duchess of Sussex. Neither the couple themselves nor any individual or entity affiliated with them has ever retained our services or engaged in any form of professional collaboration."

*journalists* interacting with and amplifying the hate and the lies" (Dkt. 72 ¶ 49.d.iv [**Statement #11**] (emphasis added))—a statement actually made by Prince Harry (*see* RJN Ex. 3 at 30:39)—is plainly about British journalists.

Similarly, Plaintiff was not among the "housewives" referenced by Bouzy in **Statement #8**: "this is not your everyday trolling. … It's insane. And it was done by people who were just not the typical quote-unquote trolls. These are *housewives*. These are middle-aged Caucasian women creating just constant attacks …." (Dkt. 72 ¶ 49.d.i [**Statement #8**]) (emphasis added).) This much is clear from the surrounding footage of YouTube personalities, none of whom are Plaintiff, attacking Meghan. (*See* RJN Ex. 4 at 29:34-29:42.) Likewise, Bouzy does not accuse *Plaintiff* of using "the N-word." (Dkt. 72 ¶ 49.d.viii [**Statement #15**].) And the racist tweet that *is* featured is not identifiable as coming from Plaintiff's suspended account—unlike other tweets by Plaintiff, which are. (*Compare, e.g.*, RJN Ex. 3 at 30:16 [tweet by @MarkleSammy64 directing followers to "follow me @TheMarkleSammy"], *with* RJN Ex. 4 at 31:43 [blurred Twitter handle].)

Nor, finally, is Plaintiff identified as one of the "main" or even "secondary" hate accounts. (Dkt. 72 ¶¶ 49.d.v-vii [**Statements #12-14**].) Indeed, the immediately preceding footage, which refers to "83 accounts" (RJN Ex. 3 at 28:49-28:58), precludes a defamation claim as a matter of law. "[I]n order for a group defamation to be actionable by a member of that group when there is no specific reference to a member … the group must be *small enough for the defamation to be reasonably understood*

*to refer to that member.*" *Adams v. WFTV, Inc.*, 691 So. 2d 557, 557–58 (Fla. 5th DCA 1997) (emphasis added). But where, as here, "a group is large, *that is, composed of twenty-five or more members*, courts consistently hold that plaintiffs cannot show the statements were 'of and concerning' them." *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 805 (Fla. 5th DCA 1997) (emphasis added).

### (b)   Statements #8-10 and 12-14 are not defamatory.

Second, the remainder of Bouzy's statements are not defamatory as a matter of law, such as **Statement # 8**: "So this is not your everyday trolling. … It's insane" (Dkt. 72 ¶49.d.i). Florida appellate courts have held that references to a defendant as a "crook" and a criminal, or a "raving manic" and "raving idiot," are non-actionable expressions of opinion. *Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293, 294–95 (Fla. 2d DCA 1984); *Demoya v. Walsh*, 441 So. 2d 1120, 1120–21 (Fla. 3d DCA 1983). And in one of, if not *the* only case about the actionability of the term "troll" (not a "copyright" or "patent troll"), an appellate court held that while the statement "was unflattering, it did not defame Nichols's business or his product." *Nichols v. Kanaley*, 2017 WL 1057373, at *2 (Idaho Ct. App. Mar. 21, 2017).

The three statements ascribing motivations to the "hate accounts" (Dkt. 72 ¶¶ 49.d.v-vii [**Statements #12-14**])—i.e., that they are avaricious or racist—are also not defamatory. As noted above, plaintiff's supposed greed is pure opinion. *See Vibe Ener*, 2020 WL 6373419, at *8. Meanwhile, a Middle District court held that the statement "that the Confederate Flag 'is a racist symbol and that those who display it

are racists[,]' is a pure opinion that cannot support an action for defamation." *Tillett v. BJ's Wholesale Club, Inc.*, 2010 WL 11507322, at *6 (M.D. Fla. July 30, 2010) (internal citation omitted). Similarly, statements that a person "is racist are clearly expressions of opinion that cannot be proven verifiably true or false." *Suitieri v. Piedmont Airlines, Inc.*, 2018 WL 934829, at *4 (W.D. N.C. Feb. 16, 2018).

In fact, the only two statements that are clearly about Plaintiff—"Samantha Markle was part of the group that was putting out a lot of this disinformation" and "How can the half-sister of Meghan be part of a hate group?" (FAC ¶¶ 49.d.ii-iii [**Statements #9-10**])—are unfalsifiable. In a thorough published opinion, the Middle District of Alabama, in granting a Rule 12(b)(6) motion, held that "the meaning of the term 'hate group' is so 'debatable, loose and varying,' that labeling [plaintiff] as one is 'insusceptible to proof of truth or falsity.'" *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1277 (M.D. Ala. 2019) (analogizing "hate group" to the non-actionable terms "fascism," "radical right," and "political Marxist"), *aff'd*, 6 F.4th 1247 (11th Cir. 2021), *cert. denied*, 142 S.Ct. 2453 (2022). So too is the now-popular term "disinformation." As one federal court recently held, "the statement that the Video Report … constitutes 'disinformation' is capable of many interpretations and thus cannot be proven true or false." *Project Veritas v. Leland Stanford Junior Univ.*, 2022 WL 1555047, at *7 (W.D. Wash. May 17, 2022). Indeed, "[e]ven the less figurative assertion" (not made by Bouzy) that Plaintiff was "'blatantly misleading the public' … is subjective and imprecise, and therefore not

capable of verification or refutation by means of objective proof." *Phantom Touring, Inc. v. Affiliated Pubs.*, 953 F.2d 724, 728 n.7 (1st Cir. 1992).

(c)     **Statement #18 is substantially true and lacks malice.**

<u>Third</u>, Bouzy's statement that Plaintiff's Twitter account was "suspended" and that she "had, like, eleven (11) additional accounts" (Dkt. 72 ¶ 49.g [**Statement #18**]) is substantially true by her own admission. That is, Plaintiff does not dispute *that* she was suspended, only *why* she was suspended. (*See id.* ¶ 51 [alleging that she was suspended for her statements about Ivermectin].) But, as noted above, the precise *reason* for a Twitter suspension is protected by the substantial truth doctrine. In *Project Veritas*, the Northern District of Georgia relied on this doctrine to dismiss a claim arising out of CNN's statement that Twitter suspended plaintiff's account for promoting "misinformation"—notwithstanding plaintiff's claim that it was *actually* suspended for sharing *private* information. *Project Veritas*, 591 F. Supp. 3d at 1332–32.

Even more incredibly, Plaintiff *fails to mention that her proffered explanation* for the dozen Twitter accounts *was included, **prominently**, in the Series*. (RJN Ex. 3 at 30:33.) It is little wonder why she omitted mention of it: this is fatal to a claim of actual malice. *See Jacoby*, 537 F. Supp. 3d at 1312 (in granting motion to dismiss, reasoning that comments attributed to "representatives" for plaintiff in the articles at issue were "contrary to the general conclusions reached in the articles," thereby "undermin[ing] Plaintiff's claims of malice") (citing *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016); *Turner*, 879 F.3d at 1274).

**D.     Plaintiff Has Not Adequately Pled Actual Malice in Connection with Bouzy's Statements in the Series**

As explained above, Plaintiff must plead and prove Meghan acted with actual malice, i.e., "knowledge that [a statement] was false or [ ] reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 280. That is, she must plead enough facts to allow the Court to draw the reasonable inference that Meghan "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel*, 816 F.3d at 702–03 (affirming grant of Rule 12(b)(6) motion as to actual malice).

The last point is key. Because the focus is on malice toward *the truth* and not *the plaintiff*, the Supreme Court has explained that "actual malice" is something of a misnomer; it "should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." *Masson*, 501 U.S at 510. In fact, "ill-will, improper motive, or personal animosity plays *no role* in determining whether a defendant acted with actual malice." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 (11th Cir. 1999) (emphasis added). Thus, "it is not enough to show that a defendant is the type of person who would lie about the plaintiff or that he has *motive* to lie about the plaintiff. The question is whether the defendant *actually* lied about the plaintiff or acted with a reckless disregard for the truth." *Moore*, 488 F. Supp. 3d at 1162–64 (granting Rule 12(b)(6) motion as to actual malice) (emphasis added). Here, even if Meghan were responsible for Bouzy's statements—which as shown above she

is not—there is no allegation, nor could there be under Rule 11, that she knew or strongly suspected Bouzy to be lying, as required under governing case law.

### 1.   Plaintiff conflates constitutional "malice" and "ill-will."

As the Eleventh Circuit has held, "for starters, [the Court] can disregard the portions of the complaint where [Plaintiff] alleged in a purely conclusory manner that [Meghan] acted 'with actual malice'[7] …. Allegations such as these amount to threadbare recitals of the elements of a cause of action, which are insufficient to state a claim." *Coral Ridge Ministries Media, Inc.*, 6 F.4th at 1252.

Moreover, none of the myriad unfounded allegations of Meghan's supposed ill-will toward Plaintiff come close to suggesting that she entertained "serious doubts" about the accuracy of Bouzy's statements (**Statements #8-15** and **18**). For example, Plaintiff alleges that: (1) Meghan and Plaintiff "became estranged" (Dkt. 72 ¶ 9); (2) Meghan once "hung up the phone immediately upon hearing Samantha's voice" (*id.* ¶ 10); (3) Meghan "terminate[s] friendships, rather than save them" (*id.* ¶ 11); (4) "Meghan harbored resentment due to what she perceived to have been Samantha's intentional statement, and the follow-up by the press" (*id.* ¶ 19); (5) Meghan was trying to "bolster her own false 'rags-to-riches'" story (*id.* ¶ 47); and (6) "where Meghan could have set the record straight, she did not" (*id.* ¶ 55).

---

[7] *See, e.g.*, Dkt. 72 ¶ 80 ("Meghan engaged in such defamatory by implication conduct knowingly, intentionally and with actual malice ….")

The foregoing allegations are *precisely* the sort of supposed "ill-will, improper motive, or personal animosity" that "plays no role in determining whether a defendant acted with actual malice." *Dunn*, 193 F.3d at 1198. As the Middle District of Alabama recently found, even accepting that the defendants' "singular mission was to ruin Moore's political campaign—and that they were willing to ruin Moore's personal life in the process"—this would "not answer the only question that matters: Did [the defendant] entertain serious doubts that [the third parties] were telling the truth?" *Moore*, 488 F. Supp. 3d at 1162–64 (granting Rule 12(b)(6) motion).

### 2.    Plaintiff cannot establish actual malice as to statements supported by a multitude of previous reports.

Separate and apart from the above defect, as a matter of law, Plaintiff cannot establish Meghan's actual malice as to the Bouzy statements (FAC ¶¶ 49.d.ii-iii [**Statements #9-10**], 49.g [**Statement #18**]) that were "supported by a multitude of previous reports." *Rosanova*, 580 F.2d at 862. For purposes of *Rosanova* and its progeny, whether Plaintiff *actually* participated in harassing Meghan is immaterial; all that matters is that by the time of the Series (in December 2022), Plaintiff's involvement had been widely reported.[8] As the court held in *Moore*, "multiple reports detailed [the third-party] allegations. Moore pleads no facts that would prove that [defendant] had serious doubts about either woman's allegation. So all counts related to the press release are due to be dismissed for failing to state a claim that could

---

[8] See articles cited in Meghan's RJN at 4-5 n.3; note 4, *supra*.

entitle Moore to relief." *Moore*, 488 F. Supp. 3d at 1164 (citing *Rosanova*, 580 F.2d at 862). Thus, even if Meghan were responsible for Bouzy's statements—which as shown above she is not—her "good faith reliance on previously published reports in reputable sources precludes a finding of actual malice *as a matter of law*." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988) (citing *Rosanova*, 580 F.2d at 862) (emphasis added).

## IV.    UPON DISMISSAL, THE COURT SHOULD GRANT MEGHAN'S ANTI-SLAPP MOTION

The Court's prior Order noted that in view of Plaintiff's leave to amend, any determination under Fla. Stat. § 768.295 that Plaintiff's "lawsuit was filed 'without merit'" would be "premature … at *this* phase of the litigation." (Dkt. 70 at 30 (emphasis added).) If, as requested herein, Plaintiff's action is dismissed with prejudice, Meghan will file a separate anti-SLAPP motion incorporating by reference the arguments made in the instant motion as to the lack of merit.

## V.    CONCLUSION

Like the two complaints preceding it, Plaintiff's Third Amended Complaint does not state a claim for defamation or defamation by implication. The action should be dismissed with prejudice.

## VI.    APPENDIX—SUMMARY OF STATEMENTS

| | Statement (source) | TAC | Defect | Discussion |
|---|---|---|---|---|
| 1. | "you don't know me … betrayal comes from someone that you have a relationship with." (Dkt. 1-9 at 03:36) | ¶ 26 (p. 6) | Opinion. | III.A (p. 5) |
| 2. | "I grew up as an only child … and I wished I had siblings." (Dkt. 1-9 at 03:36) | ¶ 28 (p. 6) | Opinion. | III.A (p. 5) |
| 3. | "the last time I saw her must have been at least 18, 19 years ago, and before that, 10 years before that. … So you all weren't close. You didn't grow up together. .. No." (Dkt. 1-9 at 04:19-22) | ¶¶ 30, 31 (p. 7) | Substantially true. No duty to include additional facts where disclosed facts are true. | III.A (p. 5) |
| 4. | "Samantha changed her surname back to 'Markle' when Meghan started dating Prince Harry … 'And so, I think that says enough'" (Dkt. 1-9 at 5:00) | ¶¶ 32, 33 (pp. 7-8) | Substantially true. Not injurious to reputation. Opinion. | III.A (p. 5) |
| 5. | "I was with my mom during the week and with my dad on the weekends. And my dad lived alone, he had two adult children who had moved out of his house." (RJN Ex. 1 at 27:42) | ¶ 49.a (pp. 10-11) | Opinion. No actual malice. | III.B (p. 10) |
| 6. | "You're telling [these] people [that] you raised me." (RJN Ex. 2 at 18:03) | ¶ 49.b (p. 11) | Substantially true. No actual malice. | III.B (p. 10) |
| 7. | "I don't remember seeing her when I was a kid at my dad's house, if and when they would come around" (RJN Ex. 2 at 18:21) | ¶ 49.c (p. 11) | Opinion. No actual malice. | III.B (p. 10) |
| 8. | "So this is not your everyday trolling … It's insane. And it was done by people who were just not the typical quote- | ¶ 49.d.i (pp. 11-12) | Not made by Meghan. Not about Plaintiff. No actual malice. Opinion. | III.C.1, III.C.2(a), III.C.2(b), III.D.2 (pp. |

| | Statement (source) | TAC | Defect | Discussion |
|---|---|---|---|---|
| | unquote trolls. These are housewives. These are middle-aged Caucasian women" (RJN Ex. 3 at 29:41) | | | 13-18, 21) |
| 9. | "Samantha Markle was part of the group that was putting out … disinformation." (RJN Ex. 3 at 30:05) | ¶ 49.d.ii (p. 12) | Not made by Meghan. No actual malice. Unfalsifiable. | III.C.1, III.C.2(b), III.D.2 (pp. 13, 16, 21) |
| 10. | "How can the sister of Meghan be part of a hate group" (RJN Ex. 3 at 30:20) | ¶ 49.d.iii (p. 12) | Not made by Meghan. No actual malice. Unfalsifiable. | III.C.1, III.C.2(b), III.D.2 (pp. 13, 16, 21) |
| 11. | "the most troubling part of this is the number of British journalists interacting with and amplifying the hate and the like" (RJN Ex. 3 at 30:39) | ¶ 49.d.iv (p. 12) | Not made by Meghan. Not about Plaintiff. | III.C.1, III.C.2(a) (pp. 13-14) |
| 12. | "For the main hate accounts, their primary motive is monetizing this stuff" (RJN Ex. 3 at 31:02) | ¶ 49.d.v (p. 12) | Not made by Meghan. Not about Plaintiff. Opinion. | III.C.1, III.C.2(a), III.C.2(b) (pp. 13-16) |
| 13. | "But the secondary accounts, it's all about hatred" (RJN Ex. 3 at 31:02) | ¶ 49.d.vi (p. 12) | Not made by Meghan. Not about Plaintiff. Opinion. | III.C.1, III.C.2(a), III.C.2(b) (pp. 13-16) |
| 14. | "It's about … race" (RJN Ex. 3 at 31:02) | ¶ 49.d.vii (p. 12) | Not made by Meghan. Not about Plaintiff. Opinion. | III.C.1, III.C.2(a), III.C.2(b) (pp. 13-16) |
| 15. | "then [also] there would be derogatory terms where they would use the N-word on tweets" (RJN Ex. 3 at 31:25) | ¶ 49.d.viii (p. 12) | Not made by Meghan. Not about Plaintiff. | III.C.1, III.C.2(a) (pp. 13-14) |
| 16. | "when you plant a seed that is so hateful, what it can grow into" (RJN Ex. 3 at 31:53) | ¶ 49.e (p. 12) | Not about Plaintiff. | III.C.2(a) (p. 14) |
| 17. | "you are making people want to kill me. It's not just a tabloid. It's not just some story. You are making me scared" (RJN Ex. 3 at 32:26) | ¶ 49.f (p. 12) | Not about Plaintiff. | III.C.2(a) (p. 14) |

MOTION TO DISMISS TAC FOR FAILURE TO STATE A CLAIM

| | Statement (source) | TAC | Defect | Discussion |
|---|---|---|---|---|
| 18. | "Samantha had her account suspended and then we actually sent Twitter a list because she had, like, 11 additional accounts" (RJN Ex. 3 at 30:05) | ¶ 49.g (p. 13) | Not made by Meghan. Substantially true. No actual malice. | III.C.1, III.C.2(c) (pp. 13, 18) |

## VII.  LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g)(2), Meghan, The Duchess of Sussex hereby certifies that the undersigned counsel met and conferred by telephone with opposing counsel but could not agree to resolve any part of the instant motion.

RESPECTFULLY SUBMITTED this 27th day of April, 2023

KINSELLA WEITZMAN ISER KUMP
HOLLEY LLP

**Michael J. Kump** (Cal. Bar No. 100983)*
mkump@kwikhlaw.com
**Jonathan Steinsapir** (Cal. Bar No. 226281)*
jsteinsapir@kwikhlaw.com
**Nicholas C. Soltman** (Cal. Bar No. 277418)*
nsoltman@kwikhlaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
* *Pro hac vice*

BITMAN O'BRIEN & MORAT PLLC
**Ronnie Bitman** (Fla. Bar No. 744891)
rbitman@bitman-law.com
255 Primera Blvd., Ste 128
Lake Mary, FL 32746-2168
Telephone: 407.815.3115

Attorneys for Defendant Meghan, The
Duchess of Sussex (sued as "Meghan Markle")

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing has been furnished to all parties registered to receive service via CM/ECF this 27th day of April, 2023.

BITMAN O'BRIEN & MORAT PLLC

<u>/s/ Ronnie Bitman, Esq.</u>
**Ronnie Bitman** (Fla. Bar No. 744891)
rbitman@bitman-law.com
255 Primera Blvd., Ste 128
Lake Mary, FL 32746-2168
Telephone: 407.815.3115

Attorneys for Defendant Meghan, The
Duchess of Sussex (sued as "Meghan Markle")

823795

MOTION TO DISMISS TAC FOR FAILURE TO STATE A CLAIM