IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

CASE NO.: 8:22-cv-00511-CEH-TGW

SAMANTHA M. MARKLE,

        Plaintiff,

v.

MEGHAN MARKLE,

        Defendant.

_____/

**RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

    The Plaintiff, SAMANTHA MARKLE (hereinafter referred to as "Samantha"), by and through her undersigned counsel, hereby files her Response in Opposition to the Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint filed by the Defendant, MEGHAN MARKLE, and in support states as follows:

**Introduction**

    On April 13, 2023, Samantha filed her "Third Amended Complaint" containing two counts against MEGHAN MARKLE (hereinafter referred to as "Meghan") for Defamation and Defamation by Implication.

    Important changes were made from the First Amended Compliant, such as changing the claim of libel based on the Oprah Interview, to a more correct cause of action of Libel by Implication.

    This Court had dismissed the claims based on the book *Finding Freedom*, with prejudice,

so those claims were not re-plead. However, as the undersigned explained in the hearing on the Motion to Dismiss the First Amended Complaint, notwithstanding that she was already being sued for Defamation, Meghan was not able to stop herself, and she persisted in a Netflix series to smear her sister, Samantha, even further.

It is not common that families become divided to the point where one sibling finds it necessary to file suit against another sibling. However, in the instant case, one sister's misguided agenda and inability to have empathy has not only caused a split in her own family, but she fractured her husband's family as well, as she has risen to become an actor on a world stage from which her 'slings of arrows' have caused great harm to her own sister, her father and brother, and the British Royal family. This is especially true where the Netflix series took Meghan's issues to another level.

While, the initial statements were bad enough to seek significant damages, the gravamen of the statements to Oprah Winfrey (hereinafter referred to "Oprah") which implied that Samantha was a villainous opportunist who Meghan did not even know; the Netflix series was used to label Samantha as nothing less than a racist.

The original remarks on Oprah may seem to pale in comparison to the assassination of Samantha's reputation in the Netflix series, but even those false statements were calculated to harm Samantha's reputation, and to cast her to be an unconscionable opportunist. They were bad enough to cause the ramifications of a loss of a career in counseling and to cause her to become an object of hate, resulting in strangers stalking her and threatening her, even rising to her receiving death threats.

To this, Meghan attempts to laugh off her damaging conduct by claiming that she is beyond the reach of the courts for making her statements, as she claims that she is spewing only opinions.

Worse, Meghan was far more than a subject on the Netflix series, but she was a producer with control of the publication. In it, she used her associate and agent, Christopher Bouzy (hereinafter referred to as "Bouzy") to make additional false and disparaging statements about her own flesh and blood. Although Meghan now claims that he was not her agent or employed by her, there is evidence to refute this contention.[1] Nevertheless, the publication was by Meghan. Irrespective of whether she was the actual author of the statements, she was, indeed, the publisher.

At this Motion to Dismiss stage, this court only needs to look at the well-plead allegations of the Third Amended Complaint. Looking at the four corners of the Third Amended Complaint, the Plaintiff has sufficiently pleaded both of her two counts for Defamation and Defamation by Implication. As such, the Motion to Dismiss filed by the Defendant, should be denied.

## The Averments of the Third Amended Complaint

Meghan argues the false statements, one at a time, to justify them, notwithstanding that some of the statements were stated, not as individual claims, but rather to provide the context of the full impact of what Meghan was communicating.

"To determine if a statement is defamatory, it must be considered in the context of the publication." *Parekh v. CBS Corp*. 820 F.App'x 827, 833 (11th Cir. 2020) citing to *Smith v. Cuban Am. Nat'l Found*., 761 So. 2d 702 (Fla. 3d DCA 1999).

---

[1] Please see Exhibit "A" to this Response, which is a copy of Bouzy's own Twitter page with a Tweet in which he wrote of his company, Bot Sentinel. He stated:

> Bot Sentinel also works behind the scenes with prominent figures to help identify organized hate campaigns against them. Bouzy has conducted **paid-for private research for** former presidential candidate Pete Buttigieg, former FBI lawyer Lisa Page, **former actress Markle** and the legal team of Heard, and also charges a nominal fee to companies and universities that wish to use the API for research. . . (Emphasis added.)

The Court in *Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984) citing to *Information Control v. Genesis One Computer Corp.*, 611 F.2d 781 (9th Cir. 19180) held:

> In fact, the court must consider the context in which the statement was published and accord weight to cautionary terms used by the person publishing the statement. All of the circumstances surrounding the publication must be considered, including the medium by which it was disseminated and the audience to which it was published."

**Oprah Interview on CBS**

The four (4) Oprah statements were published on one of the major TV networks, on a television special, watched by millions of viewers worldwide. It was brought by one of America's most watched celebrities, Oprah Winfrey. Those statements were far beyond the pale to have been mentioned in such a highly important forum, where Samantha was made to look like an unwelcome opportunist who was weaseling her way into her half-sister's life, while her half-sister did not even know who she was. The statements were that; (1) Meghan was falsely saying that Samantha did not know her. (2) She was an only child, (3) hadn't seen her in 18 years, and most importantly, another untruthful and damaging statement, that (4) Samantha "changed her surname back to 'Markle' when [I] started dating Price Harry. . . and so I think that says enough."

Considering the medium on which Meghan made her harmful statements, the libel by implication is blatant.

Yes, the first 2 statements on their own may be opinions and the 3rd is incorrect only as to the amount of time that lapsed between visits. However, the statements do not stand alone anywhere other than in the Motion to Dismiss. In real life, they were combined with the 4th and most damaging statement, that Samantha started to use the name 'Markle' to cash in on Meghan's

fame. The implication is obvious.

Meghan now attempts to suggest that Samantha's intermittent use of her maiden name with her married name is proof that Meghan was telling the truth. This is as absurd as the argument which was made in court by Meghan's counsel, that it was a compliment to be called an "opportunist." Mothers of children often use their married name when dealing with school or other matters concerning their children, while they use their maiden name on a more regular basis, such as the way that Samantha used the name Markle on the degree she obtained from college. In any event, the Third Amended Complaint avers with no uncertainty that Samantha did not change her name at the time that Meghan started to date Prince Harry, which Meghan falsely stated as a fact happened, to millions of viewers worldwide.

This statement was 1) false, 2) about Samantha, 3) to millions of viewers, 4) caused harm, and 5) was either known to Meghan to be false or Meghan had a reckless disregard to whether it was true or false.

It was "defamatory" as it "prejudices" the plaintiff in the eyes of a "substantial and respectable minority of the community." *Jews For Jesus, Inc., v. Rapp,* 997 So. 2d 1098, 1100 (Fla. 2008).

Samantha was prejudiced by Meghan's statements in the Oprah Interview. As a result of Meghan's statements, Samantha has suffered from online harassment and intimidation and even death threats, all because she is the sister of Meghan, and Meghan told a story about Samantha which was untrue by fact and by implication.

The statements by Meghan about Samantha are false. They are objectively verifiable, and capable of proving their falsity. They are not, as Meghan would have this Court believe, susceptible to the Substantial Truth doctrine as adopted by the Florida Courts.

5

The Substantial Truth doctrine is inapplicable when applied to the statements at issue. "A 'statement is substantially true if its substance or gist conveys essentially the same meaning that the truth would have conveyed (internal citation omitted), or if the 'gist' or the 'sting' of the statement is true (internal citation omitted). *Kieffer v. Atheists of Fla., Inc.,* 269 So. D 656, 661 (Fla. 2d DCA 2019).

Substantial Truth is not applicable here because the statements independently are defamatory and go beyond the "gist or sting" of the truth.

The case *sub judice* is distinguishable from *Turner v. Wells,* 879 F.3d 1254 (11th Cir. 2018), where a football coach was denied his claim for defamation against a media company because a report stated he participated in the taunting that led to the quitting of a member of the team. In that case the Court focused on the nuance between "participating in" and "merely condoning the subject mistreatment" was not substantial enough to give rise to a claim for defamation. Furthermore, where there were allegations of taunting, the underlying truth prevailed (it did not matter the *reason* he gave a male blow-up doll to the player, the fact was that he gave the doll and it effected the player accordingly).

Unlike the case at hand, the statements made by Meghan are not so nuanced and they are not substantially true so that when the "gist or sting" of the truth are removed the result remains the same, instead they are patently false statements.

Meghan's statements have no basis in the truth, and, taken as true, made Samantha out to be a liar and a villainous opportunist, a person simply trying to "cash-in" on her sister's rise to world-wide fame. The statements are objectively verifiably false.

It is objectively verifiable that Samantha played a role in her sister's younger life. Whether or not Meghan remembers her big sister's role is an opinion, but the fact that Samantha did play a

6

role and was involved in her life are not opinion. At most, this is mixed opinion, not a pure opinion.

It is objectively verifiable that the last time Meghan saw Samantha was not as was stated during the interview, but rather, it was far more recent than Meghan said.

Likewise, it is objectively verifiable as to why and when Samantha changed her name. The words used by Meghan were chosen to illicit a certain response from the listener.

It is objectively verifiable to determine with whom Meghan lived during the week when she was younger.

"Mixed expression of opinion occurs when an opinion or comment is made which is based on facts regarding the plaintiff or [her] conduct that have not been stated in the article or assumed to exist by the parties to the communication." *From v. Tallahassee Democrat*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981) citing *Restatement (Second) of Torts, § 566*, pp.

"The distinction between fact and non-actionable opinion is a question of law to be determined by the court and not an issue for the jury." *Id. at 8-9.* However, "[a] statement is not protected as pure opinion if it implies the existence of undisclosed defamatory facts as its basis." And, "[w]here a court finds that the statement in question is a mix of opinion and fact and reasonably capable of defamatory interpretation, then a jury issue is presented. *Bassler v. George Weston Bakeries Distrib.,* 2008 US. Dist. LEXIS 111209 citing to *Johnson v. Clark,* 484 F. Supp. 2d 1242 (M.D. Fla. 2007).

Construing Meghan's statements in their totality, not merely a particular phrase or sentence, but examining all of the words cited in the Third Amended Complaint, and the context in which the statements were made shows the statements were defamatory.

The statements in the Oprah Interview taken as a whole are not pure opinion, but those of mixed opinion. The Defendant stated her opinion based on facts not disclosed.

7

**Netflix Statements Are Defamatory**

The statements in the Netflix Series are equally problematic and not to be taken in isolation but as a whole.

**Statements No. 5 - 7**

First, Meghan attacked the statements by Meghan that her father lived alone, and that Samantha had moved out; Samantha is telling people that she raised her, and that Meghan did not remember seeing Samantha at her father's house.

These are all false statements of fact. Thomas Markle, Meghan and Samantha's father did not live alone, Samantha never suggested, much less told people, that she raised Meghan, and Meghan is not being truthful when she said that she does not remember Samantha at her father's house.

Although it is often difficult to prove what is in one's head or what one's memory may be, there is no question that Samantha lived with her father and no question that Samantha never stated that she raised Meghan.

Issues of memory are provable by common sense of a trier of the facts together with the facts such as previous payments, and other indicia. The trier of the facts will weave together the facts presented along with the other indicia, such as previous payments, photographs or testimony, to uncover the truth of a situation.

**Allegation that Samantha was a Racist**

When Meghan spoke negatively of people who she grouped as the ones who all had the same qualifying factor to belong to the group, she was not speaking of an actual group. There is no club of people who are racists and spewing hate about Meghan. There may be some individuals who did or do so, but it is not as similar to saying that people who display a Confederate flag are

8

racists. To make the leap to racists is not necessarily appropriate. However, if one were to group those who displayed Confederate flags as people who display the flags, it would be axiomatically a true conclusion.

By grouping people as racists and then by suggesting that Samantha is a member of that group, it is the same as saying that Samantha is a racist.

Although calling someone a "racist" is one of the most insulting and despicable names one could use as a label. In this regard, Meghan relied on *Squitieri v. Piedmont Airlines, Inc.*, 2018 LEXIS 25485, 2018 WL 934829 (W.D. N.C. Feb. 16, 2018) that calling one a "racist' with nothing further is a matter of opinion. This case relied on North Carolina law.

However, in *Zimmerman v. Buttigieg*, F.Supp.3d 1082 (M.D. Fla. 2021), this Court held:

> Lastly, Defendants' argument that "the implication that someone has racist or a white supremacist attributes is not defamatory at all, let alone defamatory per se" is without merit. [Doc. 40 at p. 21]. As explained above, the Court cannot determine at this stage of the proceedings whether the statements are pure opinion, and thus not defamatory, because it is not clear whether all the facts on which the statements are based are known to the public. Moreover, "statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (iv) to injure a person in his trade or profession" are defamatory per se, *Adams v. News-Journal Corp.*, 84 So. 2d at 551. Zimmerman alleges the tweets have just that effect.

Likewise, Samantha has been subjected to hatred, distrust, ridicule, and was harmed in her profession, causing the allegations to be defamatory per se.

Moreover, when the different defamatory statements are put together, it is apparent that Samantha was being accused of having many Twitter accounts for the purpose of attacking Meghan, who is of mixed race, and attacking her because she is a racist who is spreading hatred against Meghan.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

**Not 100% Opinions**

Meghan can say that these are all 100% pure opinions, as this is the way that she remembers her sister as not there, but it is false in fact, and is part of the facts of whether Samantha was in her life, to cause the implication that Samantha is an interloper who she did not know for the purpose of gaining undue and undeserved monies, making her a person who should be hated, distrusted, and ridiculed, which directly caused harm to Samantha, including the termination of her career as a mental health professional.

This is all libelous and the false statements that her sister was not in her life made the implication that Samantha is therefore an evil opportunist, attempting to cash in on her famous sister's fame and celebrity.

**Statements No. 16 - 18**

Next, Meghan looks at the 2 statements that she is "planting a seed that is so hateful, what it can grow into," "you are making people want to kill me. It's not just a tabloid. It's not just some story. You are making me scared." Meghan says, now, that she was not directing those remarks to Samantha. In that case, it is highly questionable as to whom they were directed. If it was not Samantha, it would have been a group to which Samantha was lumped by Meghan.

When put together with the rest of the quotes, Meghan has said and otherwise published that her sister Meghan has been active spewing hatred on her many Twitter accounts to spread hatred against Meghan, due to her being a racist and that Samantha's actions have caused people to want to kill her and are making her frightened.

Another quote was: "Samantha had her account suspended and then we actually sent Twitter a list because she had, like, 11 additional accounts."

Taking this by itself and indicating that it is true, is akin to looking at a masterpiece by

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

Renoir, from 3 inches away and seeing only the brush strokes. None of them are a masterpiece. When one steps back, though, and sees the different strokes and how they interrelate, the picture is to be seen.

The shame, here, is that the Motion to Dismiss is actually doing the same thing to persuade this court that there is nothing wrong with what Meghan has stated. Meghan is claiming she is innocent of saying and publishing anything other than innocuous opinions about Samantha, and all the hate which has now been generated toward Samantha is all a mystery.

It does not take a rocket scientist to see what happens when all of Meghan's statements are combined. Meghan wants us to believe that someone out there is saying terrible things about her, with hate, and making people want to kill her and that Samantha has numerous Twitter accounts for which Meghan had to go directly to Twitter. When the statements are put together, the truth of what Meghan has done is inescapable. This is especially obvious when one includes additional statements such as "Samantha Markle was part of the group that was putting out a lot of this disinformation," and "How can the half-sister of Meghan be part of a hate group?"

Perhaps, isolated, on their own, they are only opinions, but when added to the mosaic, they are indivisibly setting the framework which supports the defamation.

**Statements No. 8 and 15**

It is possible that Statements 8 and 15 were not directed at Samantha, though they are intertwined in the statements made against Samantha. One does not need to repeat Samantha's name, over and over for every statement to give the understanding that Samantha is the object of the dialogue.

Here, Bouzy, in describing the Tweets by Samantha and the others who were exposing Meghan, to show the level of sophistication said: "So this is not your everyday trolling. . . It's

11

insane. And it was done by people who were not the typical quote- unquote trolls. These are middle-aged Caucasian women." (No. 8.) The description certainly fits Samantha.

Also, she said "then [also] there would be derogatory terms where they would use the N-word on Tweets." (No. 15.)

Samantha never used the N-word on any Tweets. It is completely false and, in fact, antithetically foreign to her and her belief system. Samantha is not racist and would never use that word or any other epithet.

"It seemed that it did, but it is possible that it did not." Nevertheless, it is all part of the act being played by Meghan, where she is a victim and even if not actionable as false statements aimed at Samantha, they are stated as a part of the whole presentation.

**Statements 12 through 14**

Meghan published the information stated by Bouzy, who discussed "hate accounts" and their primary motive is to monetize "this stuff," inferring information. He went on to say that it was about race.

Meghan claims that she is not responsible for the statements of Bouzy, but the fact is that she was the producer of the Series, and it was Meghan who had the final authority as to what was included. She is the one who indicated that Samantha had the excess number of accounts for which she needed to go to Twitter. This was mentioned in the same telecast, as Bouzy's comments. Bouzy has publicly stated that he has been paid by Meghan. Later, he also said he was not paid. Meanwhile, it is not likely that his appearance in the Netflix series was without compensation. In any event, it was Meghan's doing which put 2 plus 2 together for the millions of viewers to gather that Samantha is a racist who uses her supposed bots to harm Meghan.

**Statements No. 9 and 10**

In Statements No. 9 and 10, Bouzy stated: "Samantha Markle was part of the group which was putting out. . . disinformation." Again, the point here, is not that Meghan is liable for publishing the allegation that Samantha is putting out disinformation. That is the least of the importance of this statement. This is a statement which ties all the allegations of racism, spreading hateful information which is making people want to kill her sister, Meghan, and the big lie that Samantha is an evil opportunist. This is more than an allegation. It is the string which is tying the package together.

**Statement No. 11**

Statement No. 11 is not defamatory in its own right. It is simply implying that Samantha's bullhorn is greater than it would seem, in that the British journalists are amplifying the hate which they are falsely accusing Samantha of spewing.

As to malice, Meghan acted with malice when she chose the words and made the statements about her sister, the Plaintiff.

In *Klayman v. City* Pages, 650 Fed.Appx. 744, 749 (11th Cir. 2016) the Court stated that "the First Amendment requires that a plaintiff who is a public person (as stipulated by the parties here) prove that the defendant acted with actual malice—knowledge or reckless disregard as to the falsity of the statement. (internal citation omitted). This constitutional requirement is examined under a subjective standard, and a plaintiff must produce evidence that the defendants "actually entertained serious doubts as to the veracity of the published account, or [were] highly aware that the account was probably false." Citing to *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 703 (11th Cir. 2016).

In *Klayman,* the Court affirmed the dismissal of the plaintiff's claims for defamation

13

because the plaintiff failed to establish actual malice because the articles gave "sufficient information to weigh for themselves the likelihood of an article's veracity." *Id at* 751. Here, however, Meghan offers no evidence. She stated false facts that purposefully and intentionally defamed Samantha.

The Defendant knew that the facts within the statements were false, and even knowing the falsity of the statements, she still went ahead and stated them, nonetheless. The statements are all defamatory and were stated with actual malice.

"Words are defamatory when they 'tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession.'" *Seropian v. Forman,* 652 So. 2d 142, 143 (Fla. 3d DCA 1995).

"To determine if a statement is defamatory, it must be considered in the context of the publication." *Parekh at 833* citing to *Smith v. Cuban Am. Nat'l Found.,* 761 So. 2d 702 (Fla. 3d DCA 1999).

In *Bassler,* the court found statements by the Defendant's Manager actionable where "managers made false statements likely to degrade and injure [the plaintiff] in his good name and reputation." *Id at 11*. 171-172

Here, Samantha was virtually unknown prior to her sister's engagement and subsequent marriage to Harry, the former Prince of Wales. She was living in a small community in central Florida where she was well-known, well-liked, and living a quiet life.

Unfortunately, as a result of Meghan's engagement and subsequent comments about her, Samantha was thrust into the spotlight and brought into the rocky stream of discourse around her sister and her sister's upbringing. This thrust into the spotlight has negatively impacted the Plaintiff, her status in her community and even her safety.

In an attempt to gain footing in the rapids and provide a mooring for the truth, the Plaintiff wrote a book about her own experiences. Unfortunately, the fact that Samantha's dared to write her own book was not within Meghan's control, and, in reaction, she set out to defame and discredit Samantha, to protect herself from the actual truth about her family and upbringing.

When taken as a whole, the statements made by Meghan are attempts to distance herself from Samantha as well as to discredit Samantha. The statements when viewed in that light are defamatory.

### **Defamation by Implication**

To state a cause of action for defamation by implication in Florida, the Plaintiff must show either "(1) a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (2) the creation of a defamatory implication by omitting facts." *Sloan v. Shatner,* No. 8:17-cv-332-T-27AAS, 2017 U.S. Dist. LEXIS 122652 (M.D. Fla. Aug. 3, 2017) citing to *Klayman*.

"[W]hile defamation law shields publishers from liability for minor factual inaccuracies, it also works in reverse, to impose liability upon the defendant who has the details right but the 'gist' wrong." *Readon v. WPLG, LLC,* 317 So. 3d 1229, 1237 (3d DCA 2021) citing to *Jews for Jesus, Inc. v. Rapp,* (Fla. 2008).

Meghan argues that defamation by implication fails because the implication itself is pure opinion. As already established, the statements are not pure opinion, but of mixed opinion or not an opinion, at all. For instance the issue about Samantha changing her name when Meghan started to date Harry was not an opinion, at all. It was a false statement of fact. Therefore, the statements by Meghan are actionable. Meghan cannot hide behind "opinion" when she fails to bolster the defense with actual facts. Here, Samantha has established that the statements are based upon

15

omitted facts. There was in fact a relationship between Samantha and Meghan. In fact, Samantha knew the Defendant well enough to write a book about her. By denying that she knew Samantha, that Samantha changed her name, only after Meghan started dating Prince Harry, that Samantha is a racist who is attacking Meghan on the internet with numerous Twitter accounts, causing people to hate Meghan and to want to kill her, Meghan severely injured Samantha and subjected her to harassment and prejudice and threats against her well-being. This was not just her pecuniary gain that was injured. Her reputation was injured in her community and world-wide as person who "changed her name and wrote a book of lies" about the Defendant. That is the implication from the statements.

In the Netflix series Meghan changed tactics and used a series of statements to create the implication that Samantha was a caustic, toxic individual that ruins relationships, was suspended from Twitter, uses eleven different accounts, causes hate to be directed to Meghan, and that Samantha is racist.

These statements when collectively edited into the narrative about Samantha create defamation by implication.

Meghan claims that because these are based on reports they are therefore truthful, but the veracity of the reports has not been proven.

Meghan claims that she did not hire individuals to appear in her series, but that has not been verified. Instead, Meghan relies on a self-serving interview from a magazine already shown to favor her and her story to deny claims of payment. Meghan completely ignores the fact that the very same person admitted to receiving payment in their own words on their own "Twitter" feed.

Samantha has established the facts sufficient enough to overcome Meghan's Motion to Dismiss.

Meghan has plead facts to state a cause of action for defamation and defamation by implication and her Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) should be denied.

**SLAPP**

Meghan's SLAPP claim should be denied as the case at bar is meritorious. In this regard, even if the Motion to Dismiss should be granted, the lack of merit would be the equivalent to the pre-1999 version of Florida Statute 57.105(1), where it meant a lack of any justiciable issue. In this regard, this Court should not dismiss the action, in any event, hence, there should be no question as to whether or not the case has merit.

However, in the event that this Court should dismiss the Third Amended Complaint, the Plaintiff asks for an opportunity to present a proper response and argue the issue of whether the case has merit.

**Unauthorized Adding of New Facts And Claims**

As the First Amended Complaint was dismissed without prejudice, and this Court granted leave to amend, there were no limitations as to the leave which was given.

In fact, the undersigned specifically advised the Court that in the event that he was given leave to amend that he would add the claims which had come about due to the Netflix series.

As such, the Plaintiff was not required to ask for leave to amend the complaint.

Additionally, as the Netflix series arose after the original complaint was filed and the matter dismissed without prejudice, the adding of the Netflix series was supplemental, and not an amendment requiring leave.

To conclude, the Third Amended Complaint properly states claims for defamation and defamation by implication, and the Motion to Dismiss should be denied, and the Defendant required to file an Answer to the Third Amended Complaint.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

WHEREFORE, the Plaintiff, SAMANTHA MARKLE, ask this Honorable Court to deny the Defendant, MEGHAN MARKLE's Motion to Dismiss and grant such further and other relief as this honorable Court may deem just and proper.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

> **DESIGNATION OF EMAIL ADDRESSES FOR SERVICE**
> (Pursuant to Rule 2.516 Fla. R. Jud. Admin.)
>
> The undersigned attorneys of The Ticktin Law Group hereby designate the following Email Address(es) for service in the above styled matter. Service shall be complete upon emailing to the following email address(es) in this Designation, provided that the provisions of Rule 2.516 are followed.
>
> Serv549@LegalBrains.com; Serv513@LegalBrains.com; Serv512@LegalBrains.com
>
> **SERVICE IS TO BE MADE TO EACH AND EVERY EMAIL ADDRESS LISTED IN THIS DESIGNATION AND TO NO OTHERS.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to all parties registered to receive service via CM/ECF this **18th day of April 2023**.

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (954) 570-6757


_/s/ *Peter Ticktin*___
PETER TICKTIN
Florida Bar No. 887935
JAMIE ALAN SASSON, ESQUIRE
Florida Bar No. 10802
RYAN FOJO, ESQUIRE
Florida Bar No. 1035588