# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

# TAMPA DIVISION

Samantha M. Markle,

       Plaintiff,

   vs.

Meghan Markle,

       Defendant.

Case No. 8:22-cv-00511-CEH-TGW

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendant Meghan, The Duchess of Sussex ("Meghan"), submits this reply in support of her Motion to Dismiss the Third Amended Complaint. (Dkt. 72; "TAC".)

**A. Comments in the Oprah interview are not actionable (Statements #1-4).**

Plaintiff *admits* that "the first 2 statements [*i.e.,* that Plaintiff did not "know" her and that Meghan was an "only child"] on their own may be opinions and the 3rd is incorrect only as to the amount of time that lapsed between visits." (Dkt. 79 at 4.) In fact, the difference between 13 years and 18 years is the epitome of a statement protected by the substantial truth doctrine. *See, e.g.*, *Jeter v. McKeithen*, 2014 WL 4996247 at *3 (N.D. Fla. Oct. 7, 2014) ("regardless of whether K.J. was alleged by the police to have bullied 'dozens' of victims or 'at least one' victim, the statement communicates the same 'gist' to the audience").

Plaintiff tries to salvage **Statements #1-3** by arguing they were context for the "4th and most damaging statement, that Samantha started to use the name 'Markle' to cash in on Meghan's fame [**Statement # 4**]." (Dkt. 79 at 4-5.) But because Plaintiff *did* change her name when Meghan started dating Prince Harry, none of the four statements are actionable. First, Plaintiff argues that "the Third Amended Complaint avers with no uncertainty that Samantha did not change her name at the time that Meghan started to date Prince Harry." (Dkt. 79 at 5.) But the Court is not limited to the TAC. It has already taken notice of Plaintiff using the name "Rasmussen" two months before the relationship became public. (Dkt. 70 at 25 n. 10.)

Second, Plaintiff argues that the substantial truth doctrine does not apply because Meghan's statement was less "nuanced" than those at issue in *Turner v.*

*Wells*, 879 F.3d 1254 (11th Cir. 2018). (*Id.* at 6.) Not so. In *Turner*, one of the defamation by implication claims was that the report on the bullying of a Dolphins player omitted mention of the "environment in other teams' locker rooms." *Id.* at 1270. The Eleventh Circuit nevertheless affirmed the district court's dismissal: "[t]he law of defamation is concerned with whether a publisher reports a story truthfully, not generously." *Id.* (internal quotation omitted). Here, as in *Turner*, while Meghan's comment did not include every fact, as she would have no knowledge of those, what she did say was true and thus not actionable.

Third, Plaintiff attempts to no avail to invoke the "mixed opinion" doctrine, whereby opinions may be defamatory if "based on facts regarding the plaintiff or [her] conduct that have not been stated in the article or assumed to exist by the parties to the communication." *From v. Tallahassee Democrat*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981). But the "key factor, which is absent here, [is] that the [defamatory] statements included the implication that the *speakers had personal knowledge of undisclosed facts to support their opinions*." *Sullivan v. Barrett*, 510 So. 2d 982, 984 (Fla. 4th DCA 1987) (emphasis added). Here, the sole "fact" that matters—*i.e.*, the timing of the name change—is on the face of Meghan's statement. Thus, there is no claim.

**B. Meghan's comments in the Series are not actionable (Statements #5-7).**

Plaintiff's arguments about the Netflix Series are just more of the same. Plaintiff asserts that whether her father "lived alone" (**Statement #5**) and whether Meghan remembers "seeing her when [she] was a kid at [her] dad's house" (**Statement #7**) are "provable by a common sense of a trier of the facts." (Dkt. 79 at

8.) But neither innocuous statement is *defamatory.* Nor does Plaintiff explain how "deny[ing] that Samantha played a part in her life and her upbringing" (Dkt. 72 ¶ 28) differs from the Oprah statements that the Court already found "merely expresse[d] an opinion about her childhood and her relationship with half-siblings." (Dkt. 70 at 19.) There can be no explanation because they are the same.

Plaintiff also denies "telling people that she raised" Meghan (**Statement #6**) (Dkt. 79 at 8), but ignores the host of articles quoting Plaintiff saying exactly that (Dkt. 75 at 4 & n.2), *and* cases holding that a "multitude of previous reports" precludes a finding of actual malice. *See Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 862 (5th Cir. 1978). *Rosanova* and its progeny do *not* require these reports be "truthful" or their "veracity" be "proven" to negate actual malice. (Dkt. 79 at 16.)

## C. Bouzy[1] did not defame Plaintiff in the Series (Statements #8-15, 18).

Plaintiff's last-ditch effort to salvage her case rests on a few comments by third-party social media research analyst Christopher Bouzy. (*See* Dkt. 75-3 at 21-26 of 34). The admission of the Series' transcripts is unopposed. (*See* Dkt. 75 at 1). When read in full, his comments clearly do not defame. Plaintiff admits **Statement**

---

[1] Plaintiff's exhibits (Dkt. 79-1) are not subject to judicial notice. As "evidence" that Meghan employed Bouzy (Dkt. 79 at 3), Plaintiff cites "a copy of Bouzy's own Twitter page with a Tweet in which he wrote of his company" that "Bouzy has conducted **paid-for private research for** … **former actress Markle** …." (*Id.* at 3 n.1 (emphasis in original).) But this statement is not a "Tweet" that Bouzy "wrote." Rather, it is an article in *The Information*, to which Bouzy allegedly *linked*. (Dkt. 79-1 at 1-2.) Even worse, *the article was corrected* to omit any mention of payment by Meghan. (*Id.* at 9-11 of 14.) Thus, Plaintiff's allegation that Meghan hired Bouzy for the Series remains a false allegation that has not been withdrawn from the TAC.

**# 11** "is not defamatory in its own right." (Dkt. 79 at 13.) Plaintiff suggests this comment implied the "British journalists" were "amplifying" *Plaintiff*, but Bouzy said nothing of the sort. That his **Statement #11** does not "name" Plaintiff or "contain sufficient facts or references" to identify her as the subject defeats her defamation claim. *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021).

Similarly, **Statement #8** by Bouzy refers to "housewives" and "middle-aged Caucasian women"—descriptions that apply to millions of women. He refers to these "housewives" as "trolls" (Dkt. 72 ¶ 49.d.i.), but again, the cases are clear that such name-calling by Bouzy is pure opinion and not actionable. (*See* Dkt. 74 at 16.)

Because Plaintiff is not identified by Bouzy as having used the n-word (**Statement #15**) or of being one of the "main" or even "secondary" hate accounts (**Statements #12-14**), Plaintiff just makes it up as she goes along. For example, she interprets Bouzy's passing reference to her "like, 11 additional accounts" (**Statement #18**) as stating or implying she had the additional Twitter accounts to "attack[ ] Meghan, who is of mixed race, ... because she is a racist." (Dkt. 79 at 9.) But this is not how "the common mind would understand the words." *Nelson v. Assoc. Press, Inc.*, 667 F. Supp. 1468, 1477 (S.D. Fla. 1987). Indeed, "no *reasonable* viewer of the broadcast would have perceived that this statement made any comment about [Plaintiff being a racist]." *Jeter*, 2014 WL 4996247, at *3 (emphasis added).

Plaintiff is not specifically identified by Bouzy as one of "83" offending accounts (Dkt. 75-3 at 22), but in any event, she is wrong that "grouping people as

racists and then [] suggesting that [Plaintiff] is a member of that group" is "the same" as calling her "racist." (Dkt. 79 at 9.) Groups "*composed of twenty-five or more members*" preclude a plaintiff from "show[ing] the statements were 'of and concerning' them." *Thomas v. Jacksonville Television, Inc.* 699 So. 2d 800, 805 (Fla. 5th DCA 1997) (emphasis added). Thus, comments about that large group are not actionable.

Regardless, contrary to Plaintiff's argument (Dkt. 79 at 9),[2] *Zimmerman v. Buttigieg*, 576 F. Supp. 3d 1082 (M.D. Fla. 2021) did *not* hold that being called a "racist" is per se defamatory, only that such statements *could* be defamatory *if "the statements are based" on facts not "known to the public*." *Id.* at 1098 (emphasis added). Not surprisingly, given the short Tweets at issue there, it was "not clear that the facts underlying the conclusions as to white supremacy, racism, prejudice, and fear [were] available to the public." *Id.* at 1097. Here, by contrast, the facts relied upon by Bouzy in describing the online hate directed at Meghan were laid out in painstaking detail in the publicly broadcast Series. (*See* Dkt. 75-3 at 21-26 of 34.)

Plaintiff is also silent regarding the terms "hate group" and "disinformation" in Bouzy's **Statements #9-10** because they are not falsifiable. *See Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1277 (M.D. Ala. 2019) ("hate group" not defamatory); *Project Veritas v. Leland Stanford Junior Univ.*,

---

[2] *Squitieri v. Piedmont Airlines, Inc.*, 2018 WL 934829 (W.D. N.C. Feb. 16, 2018) did not "rel[y] on North Carolina law." (Dkt. 79 at 9.) After noting "there appears to be no North Carolina court expressly addressing this issue," the court relied on the "many courts in *other* jurisdictions" holding that "accusations of bigotry or racism" are "nonactionable statements of opinion." 2018 WL 934829 at *4 (emphasis added).

2022 WL 1555047, at *7 (W.D. Wash. May 17, 2022) ("disinformation" not defamatory). Thus, Bouzy's use of those terms does not state a claim.

**D. Meghan's opinions of tabloids are not actionable (Statements #16-17).**

Finally, Plaintiff argues that it is "questionable as to whom" **Statements #16-17** "were directed." (Dkt. 79 at 10.) But the question is how a "common mind" would understand the statements, and here, the antecedent of "You" in these statements was not Plaintiff, but "royal pundits" (Dkt. 75-3 at 25) and a handful of unspecified "secondary" hate accounts (Dkt. 75-4 at 31:05-31:43 [tweets]).

**E.      Plaintiff does not and could not allege actual malice.**

Plaintiff misapplies the actual malice standard by arguing that "Meghan acted with malice when she chose the words and made the statements about her [half] sister." (Dkt. 79 at 13.) But this is no different from wrongly alleging Meghan acted out of "ill-will, improper motive, or personal animosity," none of which plays any "role in determining … actual malice." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 (11th Cir. 1999). Likewise, Plaintiff ignores the Series' inclusion of *her* explanation for her Twitter suspension: *i.e.*, "hacking." (*See* Dkt. 74 at 18.) While Plaintiff attempts to distinguish *Klayman v. City Pages*, 650 F. App'x 744, 751 (11th Cir. 2016) (*see* Dkt. 79 at 14), the Series did exactly what the Eleventh Circuit suggested: *i.e.,* it gave "readers sufficient information to weigh for themselves the likelihood of [the Series'] veracity." *Id.* (internal quotation omitted).

In conclusion, Plaintiff has tried to plead a defamation case three times, and she has failed three times. The case should be dismissed without leave to amend.

RESPECTFULLY SUBMITTED this 25th day of May, 2023

KINSELLA WEITZMAN ISER KUMP
HOLLEY LLP

**Michael J. Kump** (Cal. Bar No. 100983)*
mkump@kwikhlaw.com
**Jonathan Steinsapir** (Cal. Bar No. 226281)*
jsteinsapir@kwikhlaw.com
**Nicholas C. Soltman** (Cal. Bar No. 277418)*
nsoltman@kwikhlaw.com
11766 Wilshire Boulevard, Suite 750
Los Angeles, California 90025
Telephone: 310.566.9800
* *Pro hac vice*

BITMAN O'BRIEN & MORAT PLLC
**Ronnie Bitman** (Fla. Bar No. 744891)
rbitman@bitman-law.com
615 Crescent Executive Ct., Ste. 212
Lake Mary, FL 32746-2168
Telephone: 407.815.3115

Attorneys for Defendant Meghan, The
Duchess of Sussex (sued as "Meghan
Markle")

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been furnished to all parties registered to receive service via CM/ECF this 25th day of May, 2023.

BITMAN O'BRIEN & MORAT PLLC

/s/ Ronnie Bitman, Esq.
**Ronnie Bitman** (Fla. Bar No. 744891)
rbitman@bitman-law.com
615 Crescent Executive Ct., Ste. 212
Lake Mary, FL 32746-2168
Telephone: 407.815.3115

Attorneys for Defendant Meghan, The
Duchess of Sussex (sued as "Meghan Markle")

827608

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS