IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:22-cv-00511-CEH-TGW

SAMANTHA M. MARKLE,

        Plaintiff,

v.

MEGHAN MARKLE,

        Defendant.

_____/

**PLAINTIFF'S SUR-REPLY ON MOTION TO DISMISS**

The Plaintiff, SAMANTHA MARKLE, submits this, her Sur-Reply.

### A.    Comments Stated in Oprah Are Actionable

Meghan knew that Samantha used the name "Markle" as well as "Rasmussen," the surname of her former husband and children, depending on the circumstances, all along. By fabricating that Samantha changed her name "***only*** when I started dating Harry,"[1] she implied that Samantha, who she falsely said she did not know, had gone so far as to change her name for the purpose of unconscionably capitalizing on her supposedly non-relationship with Meghan.

In her Reply, Meghan maintained that Samantha "did change her name when Meghan and started dating Prince Harry," and from that concluded that there was no defamation. This is nonsense. Samantha did not change her name at that time, and there was nothing to suggest otherwise. Moreover, this Court should accept the averments in the complaint as true. The claim that Samantha changed her name when Meghan started to date Harry is verifiably false.

Also, the fact that Samantha, on certain occasions, used "Rasmussen" is meaningless. The

---

[1] For some reason, the Defendant misquoted by omitting the important word, "only." "Only" implied that it was only due to her dating Price Harry. It is an important omission.

point is that she used "Markle" all along after her divorce and identified with each name. The statement that she changed her name only when Meghan was dating Harry was made of whole cloth. Also, her name was legally changed with her divorce in 2005 again in 2020, and her driver's license and SSN in 2021.

The impact and the malice are evident on viewing Meghan's motive for defaming Samantha. Meghan had achieved a dream. She was in a relationship with a prince, and had great concerns of any negative press, especially any possible things her family might say. At the time of the Oprah interview, there was concern about a book which Samantha had written. Although it hardly pertained to Meghan, it was believed that it was a "tell all book about [her]," and it was about to be released. (Exhibit 8 Transcript of Oprah interview [00:03:35] [11.8]).

Meghan made a preemptive attack intending to cause the public to distrust Samantha. After all, who would buy a book by someone who is claiming to know Meghan, if she is an imposter, cannot be trusted, and did not even know Meghan? Getting the false message out there including that the met only once in the last 29 years taking 35 year old Meghan back to the age of 6?

Meghan published the story that Samantha did not know Meghan and worse, on the implication that she was a deceptive opportunist who would go so far as to change her name only when Meghan started to date Prince Harry, to, in effect, con the public into buying her book.

The defamation worked. Meghan succeeded in getting the press and hence the public to believe that Samantha should be distrusted. In Exhibit 8, the Oprah transcript, the news commentator immediately said: "That name change does say a lot." [00:04:41]. The comments by Meghan were intended to cause Samantha to be distrusted, and they did have that effect. Meghan was right when she said: "and so, I think that says enough." It was enough to cause the book to fail, to have her fan base harass with some stalking, and death threats, and to ruin Samantha's

career as a counselor.

Meghan's argument that 18 years is like 13 years, is the wrong point. It should be that 29 years with one visit. 29 years ago is a completely different gist than 13 years. If there was only one visit since Meghan was 6, there was no relationship, at all. Especially when Meghan also stated that she did not remember Samantha visiting when she was young. The story was entirely false.

Meghan did not reveal hidden truths. Meghan lived in Canada, and she was busy in her career. The logistics were difficult to visit in person, especially considering Samantha was in a wheelchair. So, they spoke on the phone and kept their relationship alive. The false statement of the extra 16 years omitting that they were in regular phone communications, gave a false implication because the other facts of the relationship were omitted.

"Mixed expression of opinion occurs when an opinion or comment is made which is based on facts regarding the plaintiff or [her] conduct that have not been stated in the article or assumed to exist by the parties to the communication." *From v. Tallahassee Democrat,* 400 So. 2d 52, 575 (Fla 1st DCA 1981.) There was a purposeful avoidance of actual facts, including how Samantha was close to Meghan at a younger age and how they kept in touch through the years. This was consistent as the mission was to destroy Samantha's before her book came out.

### B. Netflix Statements Are Actionable

Statement No. 5 and 7 were false, and it can objectively be proved that Samantha was at her father's home, living right there, and would help Meghan by driving her to school and other places. The issue of whether Meghan has no memory is the part which is more subjective and which can be proved by common sense and a jury's experience. These are more misrepresentations, which, when taken as a whole, convey that Samantha is a false usurper.

All of Meghan's prevarications combine to cause her audience to believe that Samantha is a charlatan who could not be trusted. Therefore, no one should buy her 'tell all' book.

Statement No.6 is false. Samantha *never* stated that she "raised" Meghan. Meghan does not deny this, but has now researched a number of articles which she says attributes Samantha as making the statement. Although none of the articles provide the original source or show any statement by Samantha in quotes, Meghan's point should be well taken, as a matter of law.

### Christopher Bouzy's ("Bouzy") Statements are Defamatory and Actionable

Whether Bouzy is an agent of Meghan is in dispute. However, even assuming *arguendo*, that he was not hired by her, his words and statements were placed and published by Meghan to give the inference that Samantha was one who was attacking Meghan.

Again Meghan, though, attempts to isolate the different sources of information. Here, Meghan is responsible for the knitting together of a quilt with her statements, mixed with the statements of Mr. Bouzy. Meghan would love to examine each patch on its own, however the context is essential. This is what Meghan published of Mr. Bouzy's words with dramatic music in the background, tying it all together:

> Bot Central has looked at everything from Q-Anon to MAGA to Covid disinformation to climate change disinformation. We've never seen anything quite like this. We looked at 114,000 Tweets, and we were able to then determine that 70% of the hateful content came from just 83 accounts, and it had a reach of 17 million people. So, this was not your everyday trolling. They were coordinating and talking about what they would discuss for that particular day or week, what pictures they should disseminate. They were actively recruiting people, telling people how to create multiple accounts, how to use VPNs, Virtual Private Networks, to hide the IP so that they don't get suspended. And it was done by people who were just not the typical quote unquote trolls. These are housewives. These are middle-aged Caucasian women creating just constant attacks from 'go back to America' to 'why don't you die.' For the main hate accounts, their primary motive is monetizing stuff. But the secondary accounts, it's about hatred. It's about, you know, race. Samantha Markle was part of the group that was putting out a lot of disinformation. Samantha

>had her account suspended and then we actually sent Twitter a list because she had like 11 additional accounts and we were baffled by this. How can the half sister of Meghan be part of a hate group?

Notwithstanding the fact that Twitter found that there was no such campaign, Meghan published this, with the intention that Samantha be harmed.

In her reply, Meghan relied on *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 805 (Fla. 5th DCA 1997) for the proposition that one cannot determine that a statement is about one individual in any group of more than 25 or more members. This would be a good point except for the fact that there was no such "group." In *Thomas*, for instance, the group was allegedly defamed, and the plaintiff sought an inference that it therefore defamed the plaintiff. This is not what is occurring, here. Here, there is no group. It was only Meghan and Bouzy categorizing people into a group of people who spread disinformation. If spewing disinformation makes you a member of a group, by including Samantha in the group, Meghan and Bouzy were specifically saying that Samantha spread disinformation.

For instance, if one were to publish that Joe Boston was in a group of Boston burglars, it would not be logical for a defendant sued by Joe Boston to claim that he cannot be sued for saying that he is in the group of Boston burglars because there are more than 25 of them. In *Thomas*, 436 commercial net fishermen were all included as a class, but one could not deduce that any one of them was being maligned because they were part of a large group. If, on the other hand, the group were defined by those who dumped dead fish in the water, and the publisher of false information named an individual and suggested that the individual was a member of the group, the case would be similar to the on *sub judice*.

In the case at bar, according to Twitter, there was no such group, at all.

Meghan had a hands-on role in the Series. She controlled the flow of information and how

that information was disseminated.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to all parties registered to receive service via CM/ECF this **5th day of June, 2023**.

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (954) 570-6757


 /s/ *Peter Ticktin*
PETER TICKTIN, ESQUIRE
Florida Bar No. 887935
JAMIE ALAN SASSON, ESQUIRE
Florida Bar No. 10802
RYAN FOJO, ESQUIRE
Florida Bar No. 1035588