# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

Sam M. Gibbons U.S. Courthouse
Office of the Clerk
801 North Florida Avenue
Tampa, FL 33602
(813) 301-5400
www.flmd.uscourts.gov

Elizabeth M. Warren                                                    Kristin Esposito
Clerk of Court                                                   Tampa Division Manager

**DATE:** April 9, 2024

**TO:**    Clerk, U.S. Court of Appeals for the Eleventh Circuit

SAMANTHA M. MARKLE,

      Plaintiff,

v.                                                  Case No: 8:22-cv-511-CEH-TGW

MEGHAN MARKLE,

      Defendant.

_____

## U.S.C.A. Case No.:          **UNKNOWN**

Enclosed are documents and information relating to an appeal in the above-referenced action.  Please acknowledge receipt on the enclosed copy of this letter.

- Honorable Charlene Edwards Honeywell, United States District Judge appealed from.

- Appeal filing fee was paid.

- Certified copy of Notice of Appeal, docket entries, judgment and/or Order appealed from.  Opinion was not entered orally.

- Court Reporter:  Sharon Miller

                        ELIZABETH M. WARREN, CLERK

                        By:      s/L. Silvia, Deputy Clerk

APPEAL, CLOSED

# U.S. District Court
## Middle District of Florida (Tampa)
## CIVIL DOCKET FOR CASE #: 8:22–cv–00511–CEH–TGW

| | |
|---|---|
| Markle v. Markle | Date Filed: 03/03/2022 |
| Assigned to: Senior Judge Charlene Edwards Honeywell | Date Terminated: 03/12/2024 |
| Referred to: Magistrate Judge Thomas G. Wilson | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity–Libel, Assault, Slander | Nature of Suit: 320 Assault Libel & Slander |
| | Jurisdiction: Diversity |

**Plaintiff**

**Samantha M. Markle**                    represented by    **Peter Ticktin**
The Ticktin Law Group, PA
270 SW Natura Ave
Deerfield Beach, FL 33441–1610
954/570–6757
Fax: 954/570–6760
Email: pt@legalbrains.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jamie Alan Sasson**
Sasson Law Firm
2500 N Military Trail,
Suite 240
Boca Raton, FL 33431
561–246–5085
Email: jamie@sassonlawfirm.com
*ATTORNEY TO BE NOTICED*

**Taylor Young , I**
Shendell & Pollock, PL
2700 N Military Trail
Suite 150
Boca Raton, FL 33426
561–241–2323
Fax: 561–241–2330
Email: taylor@shendellpollock.com
*ATTORNEY TO BE NOTICED*

**Douglas A. Kahle**
Schwed Kahle & Kress, P.A.
11390 North Jog Rd.
Suite 102
Palm Beach Gardens, FL 33418
561–694–0070
Fax: 561–694–0057
Email: dkahle@schwedpa.com

*TERMINATED: 06/07/2022*
*ATTORNEY TO BE NOTICED*

**Ryan Scott Fojo**
Ticktin Law Group
270 SW Natura Ave.
Deerfield Beach, FL 33441
954–570–6757
Fax: 954–418–7120
Email: serv549@legalbrains.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Meghan Markle**                     represented by   **Michael J. Kump**
Kinsella Weitzman Iser Kump & Aldisert,
LLP
3rd Floor
808 Wilshire Blvd
Santa Monica, CA 90401
310/566–9800
Fax: 310/566–9850
Email: mkump@kwikalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan P. Steinsapir**
Kinsella Weitzman Iser Kump & Aldisert,
LLP
3rd Floor
808 Wilshire Blvd
Santa Monica, CA 90401
310/566–9834
Fax: 310/566–9884
Email: jsteinsapir@kwikalaw.com
*ATTORNEY TO BE NOTICED*

**Nicholas C. Soltman**
Nicholas C. Soltman
11766 Wilshire Blvd.
Suite 750
Los Angeles, CA 90025
310–566–9857
Fax: 310–566–9898
Email: nsoltman@kwikhlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronnie J Bitman**
Bitman O'Brien & Morat, PLLC

615 Crescent Executive Court
Suite 212
Lake Mary, FL 32746
407–815–3110
Fax: 407–815–2367
Email: rbitman@bitman–law.com
*ATTORNEY TO BE NOTICED*

**Mediator**

**Mary Ruth Houston**                    represented by   **Mary Ruth Houston**
Shutts & Bowen, LLP
Suite 1600
300 S Orange Ave.
Orlando, FL 32801
407–423–3200
Fax: 407–425–8316
Email: mhouston@shutts.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/03/2022 | 1 | COMPLAINT against Meghan Markle with Jury Demand (Filing fee $402 receipt number AFLMDC–19299153) filed by Samantha M. Markle. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Proposed Summons)(Kahle, Douglas) Modified on 3/4/2022 to correct docket text (BD). (Entered: 03/03/2022) |
| 03/03/2022 | 2 | NEW CASE ASSIGNED to Judge Charlene Edwards Honeywell and Magistrate Judge Thomas G. Wilson. New case number: 8:22–cv–0511–CEH–TGW. (SJB) (Entered: 03/03/2022) |
| 03/03/2022 | 3 | **STANDING ORDER regarding discovery motions. Signed by Magistrate Judge Thomas G. Wilson on 3/3/2022. (KAJ)** (Entered: 03/03/2022) |
| 03/04/2022 | 4 | SUMMONS issued as to Meghan Markle. (BD) (Entered: 03/04/2022) |
| 03/14/2022 | 5 | PROPOSED summons to be issued by Samantha M. Markle. (Kahle, Douglas) (Entered: 03/14/2022) |
| 03/15/2022 | 6 | PROPOSED summons to be issued by Samantha M. Markle. (Kahle, Douglas) (Entered: 03/15/2022) |
| 03/21/2022 | 7 | WAIVER of service returned executed on March 16, 2022 by Samantha M. Markle as to Meghan Markle. (Kahle, Douglas) (Entered: 03/21/2022) |
| 04/06/2022 | 8 | NOTICE of Local Rule 1.07(c), Local Rule 3.02(a)(2), and Local Rule 3.03.  **–Local Rule 1.07(c)** requires lead counsel to *promptly* file a **Notice of a Related Action** that identifies and describes any related action pending in the Middle District or elsewhere.  **–Local Rule 3.02(a)(2)** requires the parties in every civil proceeding, except those |

3

|  |  | described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge.<br><br>–**Local Rule 3.03** requires each party to file a disclosure statement with the first appearance that identifies (1) each person that has or might have an interest in the outcome, (2) each entity with publicly traded shares or debt potentially affected by the outcome, (3) each additional entity likely to actively participate, and (4) each person arguably eligible for restitution. The disclosure statement must include this certification – *I certify that, except as disclosed, I am unaware of an actual or potential conflict of interest affecting the district judge or the magistrate judge in this action, and I will immediately notify the judge in writing within fourteen days after I know of a conflict.* (Signed by Deputy Clerk). (BGS) (Entered: 04/06/2022) |
| 04/06/2022 | 9 | NOTICE informing the parties that they may consent to the jurisdiction of a United States magistrate judge by filing Form AO 85 Notice, Consent, and Reference of a Civil Action to a Magistrate Judge using the event **Consent to Jurisdiction of US Magistrate Judge**. (Signed by Deputy Clerk). (BGS) (Entered: 04/06/2022) |
| 04/06/2022 | 10 | NOTICE of a related action per Local Rule 1.07(c) by Samantha M. Markle. Related case(s): No (Kahle, Douglas) (Entered: 04/06/2022) |
| 04/06/2022 | 11 | CERTIFICATE of interested persons and corporate disclosure statement re 8 Notice to Counsel of Local Rule by Samantha M. Markle. (Kahle, Douglas) (Entered: 04/06/2022) |
| 04/25/2022 | 12 | MOTION for Douglas A. Kahle to Withdraw as Attorney *for Plaintiff* by Samantha M. Markle. (Kahle, Douglas) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 04/25/2022) |
| 05/06/2022 | 13 | **ORDER denying without prejudice 12 Motion to Withdraw as Attorney. Signed by Magistrate Judge Thomas G. Wilson on 5/6/2022. (ABC)** (Entered: 05/06/2022) |
| 05/09/2022 | 14 | MOTION for Miscellaneous Relief, specifically to File Under Seal an Amended Motion to Withdraw as Counsel for Plaintiff by Samantha M. Markle. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Kahle, Douglas) (Entered: 05/09/2022) |
| 05/13/2022 | 15 | MOTION to Dismiss Plaintiff's Complaint by Meghan Markle. (Bitman, Ronnie) (Entered: 05/13/2022) |
| 05/13/2022 | 16 | CERTIFICATE of interested persons and corporate disclosure statement by Meghan Markle. (Bitman, Ronnie) (Entered: 05/13/2022) |
| 05/13/2022 | 17 | MOTION for Miscellaneous Relief, specifically Judicial Notice by Meghan Markle. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Bitman, Ronnie) (Entered: 05/13/2022) |
| 05/13/2022 | 18 | NOTICE by Meghan Markle re 15 MOTION to Dismiss Plaintiff's Complaint (Attachments: # 1 Affidavit Declaration of Michael J. Kump, Esq., # 2 Exhibit 1, # 3 |

| | | Exhibit 2)(Bitman, Ronnie) (Entered: 05/13/2022) |
|---|---|---|
| 05/13/2022 | 19 | Unopposed MOTION for Michael J. Kump to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC−19567331 for $150 by Meghan Markle. (Bitman, Ronnie) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/13/2022) |
| 05/13/2022 | 20 | Unopposed MOTION for Nicholas C. Soltman to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC−19567412 for $150 by Meghan Markle. (Bitman, Ronnie) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/13/2022) |
| 05/13/2022 | 21 | Unopposed MOTION for Jonathan P. Steinsapir to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC−19567455 for $150 by Meghan Markle. (Bitman, Ronnie) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/13/2022) |
| 05/13/2022 | 22 | **ORDER granting 14 Motion to File Under Seal an Amended Motion to Withdraw as counsel for Plaintiff.. Signed by Magistrate Judge Thomas G. Wilson on 5/13/2022. (ABC) (Entered: 05/13/2022)** |
| 05/13/2022 | 23 | **ORDER granting 19 Motion to Appear Pro Hac Vice. Signed by Magistrate Judge Thomas G. Wilson on 5/13/2022. (ABC) (Entered: 05/13/2022)** |
| 05/13/2022 | 24 | **ORDER granting 20 Motion to Appear Pro Hac Vice. Signed by Magistrate Judge Thomas G. Wilson on 5/13/2022. (ABC) (Entered: 05/13/2022)** |
| 05/13/2022 | 25 | **ORDER granting 21 Motion to Appear Pro Hac Vice. Signed by Magistrate Judge Thomas G. Wilson on 5/13/2022. (ABC) (Entered: 05/13/2022)** |
| 05/13/2022 | 26 | MOTION to Substitute Attorney by Samantha M. Markle. (Sasson, Jamie) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/13/2022) |
| 05/20/2022 | 27 | NOTICE by Meghan Markle re 15 MOTION to Dismiss Plaintiff's Complaint (Bitman, Ronnie) (Entered: 05/20/2022) |
| 05/20/2022 | 28 | NOTICE of Appearance by Jamie Alan Sasson on behalf of Samantha M. Markle (Sasson, Jamie) (Entered: 05/20/2022) |
| 05/25/2022 | 29 | Amended MOTION for Douglas A. Kahle to Withdraw as Attorney by Samantha M. Markle. (Kahle, Douglas) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/25/2022) |
| 05/26/2022 | 30 | RESPONSE to Motion re 17 MOTION for Miscellaneous Relief, specifically Judicial Notice *in Support of her Motion to Dismiss* filed by Samantha M. Markle. (Young, Taylor) (Entered: 05/26/2022) |
| 06/03/2022 | 31 | AMENDED COMPLAINT against All Defendants with Jury Demand. filed by Samantha M. Markle.(Young, Taylor) (Entered: 06/03/2022) |
| 06/07/2022 | 32 | **ORDER granting 26 Motion to Substitute Attorney; granting 29 Motion to Withdraw as Attorney. Attorney Douglas A. Kahle terminated. Signed by Magistrate Judge Thomas G. Wilson on 6/7/2022. (ABC) (Entered: 06/08/2022)** |
| 06/17/2022 | 33 | MOTION to Disqualify Judge *Charlene E. Honeywell* by Samantha M. Markle. (Young, Taylor) (Entered: 06/17/2022) |

| 06/17/2022 | 34 | MOTION to Dismiss First Amended Complaint and Incorporated Memorandum of Law by Meghan Markle. (Bitman, Ronnie) (Entered: 06/17/2022) |
|---|---|---|
| 06/17/2022 | 35 | MOTION for Miscellaneous Relief, specifically Judicial Notice by Meghan Markle. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Bitman, Ronnie) (Entered: 06/17/2022) |
| 06/21/2022 | 36 | **ORDER: Plaintiff's Motion to Disqualify Judge Honeywell 33 is DENIED. See order for further details. Signed by Judge Charlene Edwards Honeywell on 6/21/2022. (GLP)** (Entered: 06/21/2022) |
| 06/21/2022 | 37 | **ENDORSED ORDER denying as moot 15 Defendant's Motion to Dismiss; denying as moot 17 Defendant Meghan, the Duchess of Sussex's Request for Judicial Notice in Support of Motion to Dismiss. Plaintiff has filed an amended complaint. Signed by Judge Charlene Edwards Honeywell on 6/21/2022. (GLP)** (Entered: 06/21/2022) |
| 07/01/2022 | 38 | OBJECTION re 35 MOTION for Miscellaneous Relief, specifically Judicial Notice . (Young, Taylor) (Entered: 07/01/2022) |
| 07/01/2022 | 39 | AFFIDAVIT of Samantha Markle re: 38 Objection by Samantha M. Markle. (Young, Taylor) (Entered: 07/01/2022) |
| 07/06/2022 | 40 | **ORDER TO SHOW CAUSE: Plaintiff, as the party responsible for this action's prosecution, is hereby directed to SHOW CAUSE by filing a written response within FOURTEEN (14) DAYS from the date of this order, indicating why the Court should not dismiss this action under Local Rule 3.10 for lack of prosecution due to the non–filing of a case management report within the time prescribed by Local Rule 3.02. Failure to respond will result in the Court dismissing this action without further notice. See order for further details. Signed by Judge Charlene Edwards Honeywell on 7/6/2022. (GLP)** (Entered: 07/06/2022) |
| 07/08/2022 | 41 | RESPONSE in Opposition re 34 MOTION to Dismiss First Amended Complaint and Incorporated Memorandum of Law filed by Samantha M. Markle. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Sasson, Jamie) (Entered: 07/08/2022) |
| 07/08/2022 | 42 | AFFIDAVIT of Samantha M. Markle by Samantha M. Markle. (Attachments: # 1 Exhibit, # 2 Exhibit)(Sasson, Jamie) (Entered: 07/08/2022) |
| 07/13/2022 | 43 | CASE MANAGEMENT REPORT. (Young, Taylor) (Entered: 07/13/2022) |
| 07/14/2022 | 44 | MOTION for Leave to File Other Document :Reply in Support of Motion to Dismiss and Request for Judicial Notice, and Incorporated Memorandum of Law by Meghan Markle. (Bitman, Ronnie) (Entered: 07/14/2022) |
| 07/14/2022 | 45 | **ENDORSED ORDER granting in part and denying in part 44 Defendant's Motion for Leave to File Reply In Support of Motion to Dismiss and Request for Judicial Notice. Defendant may file a reply, not to exceed six (6) pages, on or before July 25, 2022. Signed by Judge Charlene Edwards Honeywell on 7/14/2022. (GLP)** (Entered: 07/14/2022) |
| 07/20/2022 | 46 | RESPONSE TO ORDER TO SHOW CAUSE filed by Samantha M. Markle. (Young, Taylor) (Entered: 07/20/2022) |
| 07/21/2022 | 47 | |

| | | |
|---|---|---|
| | | **ORDER: The Court will take no further action on the Order to Show Cause 40, and it is discharged. See order for further details. Signed by Judge Charlene Edwards Honeywell on 7/21/2022. (GLP)** (Entered: 07/21/2022) |
| 07/25/2022 | 48 | REPLY to Response to Motion re 34 MOTION to Dismiss First Amended Complaint and Incorporated Memorandum of Law filed by Meghan Markle. (Bitman, Ronnie) (Entered: 07/25/2022) |
| 08/03/2022 | 49 | **CASE MANAGEMENT AND SCHEDULING ORDER: Discovery due by 4/3/2023, Dispositive motions due by 5/5/2023, Pretrial statement due by 8/22/2023, All other motions due by 8/29/2023, Final Pretrial Conference set for 9/19/2023 at 3:15 PM in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell, Jury Trial set for term commencing 10/2/2023 in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell. Conduct mediation hearing by 8/31/2023. Lead counsel to coordinate dates. Signed by Judge Charlene Edwards Honeywell on 8/3/2022. (BGS)** (Entered: 08/03/2022) |
| 08/17/2022 | 50 | NOTICE of mediation conference/hearing to be held on June 23, 2023 at 9:30 a.m. before Mary Ruth Houston, Esq. (Young, Taylor) (Entered: 08/17/2022) |
| 08/17/2022 | 51 | NOTICE of mediation conference/hearing to be held on June 23, 2023 at 9:30 a.m. before Mary Ruth Houston, Esq. (Young, Taylor) (Entered: 08/17/2022) |
| 09/02/2022 | 53 | NOTICE by Samantha M. Markle *of Service of Initial Disclosures* (Young, Taylor) (Entered: 09/02/2022) |
| 09/30/2022 | 54 | MOTION to Stay *Discovery Pending Outcome of Dispositive Motion* by Meghan Markle. (Attachments: # 1 Exhibit 1)(Bitman, Ronnie) (Entered: 09/30/2022) |
| 10/04/2022 | 55 | RESPONSE in Opposition re 54 MOTION to Stay *Discovery Pending Outcome of Dispositive Motion* filed by Samantha M. Markle. (Young, Taylor) (Entered: 10/04/2022) |
| 01/09/2023 | 56 | Joint MOTION to Modify 49 Case Management Scheduling Order by Meghan Markle. (Bitman, Ronnie) (Entered: 01/09/2023) |
| 02/01/2023 | 57 | NOTICE of Hearing on Motions re 35 MOTION for Miscellaneous Relief, specifically Judicial Notice, 34 MOTION to Dismiss First Amended Complaint and Incorporated Memorandum of Law. Motions Hearing set for 2/15/2023 at 1:30 PM via zoom video conference before Judge Charlene Edwards Honeywell. The motions hearing scheduled for FEBRUARY 15, 2023 at 1:30PM will be conducted via ZOOM VIDEO CONFERENCE. The Clerk will be sending everyone an invitation to the meeting via email. If you have any questions, please contact courtroom deputy, Bettye Samuel, at Bettye_Samuel@flmd.uscourts.gov. Although the hearing is taking place by video, all parties should dress appropriately for this Court proceeding. Furthermore, you are hereby reminded that under Local Rule 5.01 the taking of photographs, the operation of recording or transmission devices, and the broadcasting or televising of proceedings in any courtroom or hearing room of this Court, or the environs thereof, either while the Court is in session or at recesses between sessions when Court officials, lawyers, jurors, witnesses or other persons connected with judicial proceedings of any kind are present, are prohibited. Additionally, please dress appropriately for the hearing.(BGS) (Entered: 02/01/2023) |
| 02/01/2023 | 58 | NOTICE to counsel Nicholas Soltman of Local Rule 2.01(b)(1)(G), which requires members of the Middle District bar to register with the Middle District CM/ECF |

| | | system by submitting an e–file registration through PACER. (Signed by Deputy Clerk). (CTR) (Entered: 02/01/2023) |
|---|---|---|
| 02/03/2023 | 59 | MOTION to Compel Coordination of Depositions by Samantha M. Markle. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Young, Taylor) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 02/03/2023) |
| 02/03/2023 | 60 | MOTION to Compel Defendant's Responses to First Request for Production First Set of Interrogatories and First Request for Admissions by Samantha M. Markle. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Young, Taylor) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 02/03/2023) |
| 02/07/2023 | 61 | **AMENDED CASE MANAGEMENT AND SCHEDULING ORDER. Plaintiff's Joint Unopposed Motion to Modify Scheduling Order 56 is GRANTED. See Order for new scheduling deadlines. Signed by Judge Charlene Edwards Honeywell on 2/7/2023. (BGS)** (Entered: 02/07/2023) |
| 02/07/2023 | | Set/reset scheduling order deadlines: Discovery due by 7/3/2023, Dispositive motions due by 8/4/2023, Pretrial statement due by 11/14/2023, All other motions due by 11/21/2023, Final Pretrial Conference set for 12/12/2023 at 2:15 PM in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell, Jury Trial set for term commencing 1/2/2024 in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell. Conduct mediation hearing by 6/23/2023. Lead counsel to coordinate dates. (BGS) (Entered: 02/07/2023) |
| 02/07/2023 | 62 | **ORDERED: Defendant Markle's Motion to Stay Discovery 54 is denied. See Order for further details. Signed by Judge Charlene Edwards Honeywell on 2/7/2023. (AB)** (Entered: 02/07/2023) |
| 02/10/2023 | 63 | **ORDER denying without prejudice 60 Motion to Compel. Signed by Magistrate Judge Thomas G. Wilson on 2/10/2023. (ABC)** (Entered: 02/10/2023) |
| 02/15/2023 | 64 | Minute Entry. Virtual Proceedings held before Judge Charlene Edwards Honeywell: MOTION HEARING held on 2/15/2023 re 35 MOTION for Miscellaneous Relief, specifically Judicial Notice filed by Meghan Markle, 34 MOTION to Dismiss First Amended Complaint and Incorporated Memorandum of Law filed by Meghan Markle. Court Reporter: Sharon A. Miller (BGS) (Entered: 02/15/2023) |
| 02/15/2023 | 65 | **ORAL ORDER: Defendant's Request for Judicial Notice In Support of Motion to Dismiss First Amended Complaint 35 is GRANTED for the reasons stated on the record. The Court will take judicial notice as to the existence of (a) one chapter from one book (i.e., chapter 12 from Finding Freedom, by Omid Scobie and Carolyn Durand); (b) two New Mexico state court dockets involving Plaintiff; and (c) the date of Prince Harry's announcement that he was dating Meghan. Counsel withdraws the request to take judicial notice as to (d) Plaintiff's admissions on a television interview with Good Morning Britain available on YouTube. Signed by Judge Charlene Edwards Honeywell on 2/15/2023. (BGS) Modified on 2/15/2023. (Entered: 02/15/2023)** |
| 02/16/2023 | 66 | NOTICE by Samantha M. Markle re 64 Motion Hearing, *Correction of Record* (Young, Taylor) (Entered: 02/16/2023) |
| 02/17/2023 | 67 | TRANSCRIPT of MOTION HEARING (via Zoom) held on FEBRUARY 15, 2023 before Judge CHARLENE EDWARDS HONEYWELL. Court Reporter/Transcriber: SHARON A. MILLER. Email address: Sharon_miller@flmd.uscourts.gov. |

| | | |
|---|---|---|
| | | Telephone number: 8133015041.<br><br>NOTICE TO THE PARTIES – The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 3/10/2023. Redacted Transcript Deadline set for 3/20/2023. Release of Transcript Restriction set for 5/18/2023. (SAM) (Entered: 02/17/2023) |
| 02/17/2023 | 68 | RESPONSE in Opposition re 59 MOTION to Compel Coordination of Depositions filed by Meghan Markle. (Attachments: # 1 Exhibit)(Bitman, Ronnie) (Entered: 02/17/2023) |
| 03/15/2023 | 69 | **ORDER denying 59 Motion to Compel. Signed by Magistrate Judge Thomas G. Wilson on 3/15/2023. (ABC)** (Entered: 03/16/2023) |
| 03/30/2023 | 70 | **ORDERED: 1. Defendant's Motion to Dismiss for Failure to State a Claim 34 is GRANTED. 2. Plaintiff's defamation claims based on the contents of the book Finding Freedom are DISMISSED WITH PREJUDICE. 3. Plaintiff's defamation claims based on Defendant's CBS interview and her claim for injurious falsehood are DISMISSED WITHOUT PREJUDICE. Plaintiff may file an amended complaint within FOURTEEN (14) DAYS of this order. 4. Defendant's request for Attorneys' fees and costs under the anti–SLAPP statute are denied, without prejudice, as premature. Signed by Judge Charlene Edwards Honeywell on 3/30/2023. (AB)** (Entered: 03/30/2023) |
| 04/13/2023 | 72 | AMENDED COMPLAINT *Third* against Meghan Markle with Jury Demand. filed by Samantha M. Markle.(Fojo, Ryan) (Entered: 04/13/2023) |
| 04/21/2023 | 73 | ***STRICKEN; DISCOVERY NOTICE ATTACHED; COUNSEL NOTIFIED*** NOTICE by Samantha M. Markle *Plaintiff's Notice of Serving Responses to Defendant's First Request for Answers to Interrogatories* (Penalta, Gabrielle) Modified text on 4/26/2023 (SET). (SET). (Entered: 04/21/2023) |
| 04/27/2023 | 74 | MOTION to Dismiss Third Amended Complaint by Meghan Markle. (Bitman, Ronnie) (Entered: 04/27/2023) |
| 04/27/2023 | 75 | MOTION for Miscellaneous Relief, specifically for Judicial Notice in Support of Motion to Dismiss Third Amended Complaint *Partially Unopposed* by Meghan Markle. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Bitman, Ronnie) (Entered: 04/27/2023) |
| 05/09/2023 | 77 | Joint MOTION to Modify 61 Order on Motion to Amend / Correct / Modify / Supplement, *Unopposed* by Meghan Markle. (Bitman, Ronnie) (Entered: 05/09/2023) |
| 05/18/2023 | 78 | **SECOND AMENDED CASE MANAGEMENT AND SCHEDULING ORDER. The parties' Joint Unopposed Motion to Modify Scheduling Order 77 is GRANTED. See Order for new scheduling deadlines. Signed by Judge Charlene Edwards Honeywell on 5/18/2023. (BGS)** (Entered: 05/18/2023) |
| 05/18/2023 | | Set/reset scheduling order deadlines: Discovery due by 1/2/2024, Dispositive motions due by 2/2/2024, Pretrial statement due by 5/17/2024, All other motions due by |

| | | |
|---|---|---|
| | | 5/28/2024, Final Pretrial Conference set for 6/18/2024 at 2:30 PM in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell, Jury Trial set for term commencing 7/1/2024 in Tampa Courtroom 13A before Judge Charlene Edwards Honeywell. Conduct mediation hearing by 12/29/2023. Lead counsel to coordinate dates. (BGS) (Entered: 05/18/2023) |
| 05/18/2023 | 79 | RESPONSE in Opposition re 74 MOTION to Dismiss Third Amended Complaint filed by Samantha M. Markle. (Attachments: # 1 Exhibit A)(Ticktin, Peter) (Entered: 05/18/2023) |
| 05/22/2023 | 80 | Unopposed MOTION for Leave to File Other Document :Reply in Support of Motion to Dismiss Third Amended Complaint and Incorporated Memorandum of Law by Meghan Markle. (Bitman, Ronnie) (Entered: 05/22/2023) |
| 05/22/2023 | 81 | **ENDORSED ORDER granting 80 Defendant's Unopposed Motion for Leave to File Reply in Support of Motion to Dismiss the Third Amended Complaint. Defendant may file a reply consisting of no more than six (6) pages on or before 5/29/2023. Signed by Judge Charlene Edwards Honeywell on 5/22/2023. (AB)** (Entered: 05/22/2023) |
| 05/25/2023 | 82 | MEMORANDUM in support re 74 Motion to Dismiss *Plaintiff's Third Amended Complaint* filed by Meghan Markle. (Bitman, Ronnie) (Entered: 05/25/2023) |
| 05/30/2023 | 83 | MOTION for Leave to File Other Document :Surreply by Samantha M. Markle. (Fojo, Ryan) (Entered: 05/30/2023) |
| 05/31/2023 | 84 | NOTICE of mediation conference/hearing to be held on December 18, 2023 before Mary Ruth Houston, Esq. (Fojo, Ryan) (Entered: 05/31/2023) |
| 05/31/2023 | 85 | Unopposed MOTION to Modify 49 Case Management Scheduling Order by Meghan Markle. (Bitman, Ronnie) (Entered: 05/31/2023) |
| 05/31/2023 | 86 | **ENDORSED ORDER denying without prejudice for failure to comply with Local Rule 3.01(g) 83 Plaintiff's Motion for Leave to File Surreply. The motion lacks a good−faith conferral certification. Local R. M.D. Fla. 3.01(g). Signed by Judge Charlene Edwards Honeywell on 5/31/2023. (AB)** (Entered: 05/31/2023) |
| 05/31/2023 | 87 | MOTION to Correct 86 Order on Motion for Leave to File Document, *Unopposed Motion for Leave to File a Sur−reply to Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss and in Favor of the Plaintiff's Third Amended Complaint.* by Samantha M. Markle. (Ticktin, Peter) (Entered: 05/31/2023) |
| 05/31/2023 | 88 | **ENDORSED ORDER granting 87 Plaintiff's Unopposed Motion for Leave to File Surreply. Plaintiff may file a surreply consisting of no more than six (6) pages on or before 6/5/2023. Signed by Judge Charlene Edwards Honeywell on 5/31/2023. (AB)** (Entered: 05/31/2023) |
| 06/05/2023 | 89 | REPLY to Response to Motion re 74 MOTION to Dismiss Third Amended Complaint *Plaintiff's Sur−reply on Defendants Motion to Dismiss* filed by Samantha M. Markle. (Ticktin, Peter) (Entered: 06/05/2023) |
| 06/28/2023 | 91 | Unopposed MOTION for Miscellaneous Relief, specifically Request for Leave to Lodge Flash Drive by Meghan Markle. (Bitman, Ronnie) (Entered: 06/28/2023) |
| 06/28/2023 | 92 | **ENDORSED ORDER granting 91 Defendant's Unopposed Motion for Leave to Lodge Flash Drive. Signed by Judge Charlene Edwards Honeywell on 6/28/2023.** |

| | | |
|---|---|---|
| | | **(AB)** (Entered: 06/28/2023) |
| 06/29/2023 | 93 | NOTICE TO COUNSEL Nicholas Soltman Local Rule 2.01(c), Special Admission of Non–Resident Lawyer – Submit a Pro Hac Vice E–File Registration through PACER. Visit www.flmd.uscourts.gov/for–lawyers for details (Signed by Deputy Clerk). (LNR) (Entered: 06/29/2023) |
| 06/30/2023 | 94 | NOTICE of supplemental authority by Meghan Markle. (Bitman, Ronnie) (Entered: 06/30/2023) |
| 07/03/2023 | 95 | APPENDIX: Flash Drive received and placed on shelf as to re 92 Order on Motion for Miscellaneous Relief by Meghan Markle Filed Separately. (CTR) (Entered: 07/03/2023) |
| 07/06/2023 | 96 | JOINT REQUEST for oral argument on _74 Motion to dismiss Third Amended Complaint_ by Samantha M. Markle (Ticktin, Peter) Modified on 7/11/2023 to edit filing event and text.(AG) (Entered: 07/06/2023) |
| 07/11/2023 | 97 | NOTICE TO COUNSEL Michael J. Kump of Local Rule 2.01(b)(2)(B), which requires members of the Middle District bar to maintain with the clerk a current telephone number, mailing address, and email address. Update your contact information for the Middle District through PACER. (Signed by Deputy Clerk). (AG) (Entered: 07/11/2023) |
| 07/12/2023 | 98 | NOTICE by Meghan Markle _of Change of Defense Counsel's Firm Name, and Email and Office Addresses_ (Bitman, Ronnie) (Entered: 07/12/2023) |
| 09/11/2023 | 100 | **ENDORSED ORDER granting 85 Joint Motion to Modify Case Management and Scheduling Order. The Parties may conduct their mediation conference via videoconference. Signed by Judge Charlene Edwards Honeywell on 9/11/2023. (AB)** (Entered: 09/11/2023) |
| 10/03/2023 | 101 | NOTICE by Meghan Markle _of Supplemental Authority_ (Bitman, Ronnie) (Entered: 10/03/2023) |
| 10/04/2023 | 102 | NOTICE TO ALL COUNSEL of Local Rule 2.02(a), which states, "The first paper filed on behalf of a party must designate only one lead counsel who – unless the party changes the designation – remains lead counsel throughout the action." Counsel must file a **Notice of Lead Counsel Designation** identifying lead counsel. (Signed by Deputy Clerk). (GL) (Entered: 10/04/2023) |
| 10/05/2023 | 103 | NOTICE of Lead Counsel Designation by Peter Ticktin on behalf of Samantha M. Markle. Lead Counsel: Peter Ticktin. (Ticktin, Peter) (Entered: 10/05/2023) |
| 10/05/2023 | 104 | NOTICE of Lead Counsel Designation by Ronnie J Bitman on behalf of Meghan Markle. Lead Counsel: Michael J. Kump. (Bitman, Ronnie) (Entered: 10/05/2023) |
| 10/09/2023 | 105 | JOINT Unopposed MOTION to Modify 78 Order on Motion to Amend / Correct / Modify / Supplement by Meghan Markle. (Bitman, Ronnie) (Modified on 10/10/2023, to edit text) (BGR). (Entered: 10/09/2023) |
| 10/20/2023 | 106 | NOTICE of hearing on motion re: 75 MOTION for Miscellaneous Relief, specifically for Judicial Notice in Support of Motion to Dismiss Third Amended Complaint _(Partially Unopposed)_ and 74 MOTION to Dismiss Third Amended Complaint. Motion Hearing set for 11/8/2023 at 01:30 PM in Tampa Courtroom 13 A before Judge Charlene Edwards Honeywell. (CAB) (Entered: 10/20/2023) |

| | | |
|---|---|---|
| 10/20/2023 | 107 | **ENDORSED ORDER granting <u>96</u> the Parties' Joint Request for Oral Argument on Defendant's Motion to Dismiss the Third Amended Complaint. The Motions at <u>74</u> and <u>75</u> have been scheduled for oral argument. Signed by Judge Charlene Edwards Honeywell on 10/20/2023. (AB)** (Entered: 10/20/2023) |
| 10/24/2023 | <u>108</u> | Joint MOTION for Miscellaneous Relief, specifically To Conduct Oral Argument Via Zoom Video Conference on Motion to Dismiss Third Amended Complaint by Meghan Markle. (Bitman, Ronnie) (Entered: 10/24/2023) |
| 10/24/2023 | 109 | **ENDORSED ORDER denying <u>108</u> Joint Motion to Conduct Oral Argument via Zoom Video Conference on Motion to Dismiss Third Amended Complaint. The oral argument will be an in–person proceeding. Signed by Judge Charlene Edwards Honeywell on 10/24/2023. (AB)** (Entered: 10/24/2023) |
| 11/08/2023 | <u>110</u> | Minute Entry. In Person Proceedings held before Judge Charlene Edwards Honeywell: ORAL ARGUMENT held on 11/8/2023. Court Reporter: Sharon A. Miller (CAB) (Entered: 11/08/2023) |
| 11/14/2023 | <u>111</u> | **THIRD AMENDED CASE MANAGEMENT AND SCHEDULING ORDER: Discovery due by 5/3/2024, Dispositive motions due by 6/3/2024, Pretrial statement due by 9/17/2024, All other motions due by 9/24/2024, Final Pretrial Conference set for 10/15/2024 at 02:30 PM in Tampa Courtroom 13 A before Judge Charlene Edwards Honeywell, Jury Trial set for term commencing 11/4/2024 at 09:00 AM in Tampa Courtroom 13 A before Judge Charlene Edwards Honeywell. Conduct mediation hearing by 4/26/2024. Lead counsel to coordinate dates. Signed by Judge Charlene Edwards Honeywell on 11/14/2023. (CAB)** (Entered: 11/14/2023) |
| 03/05/2024 | <u>112</u> | NOTICE by Samantha M. Markle *of Serving Discovery* (Fojo, Ryan) (Entered: 03/05/2024) |
| 03/12/2024 | <u>113</u> | **ORDERED: 1. Defendant's Motion to Dismiss for Failure to State a Claim (Doc. <u>74</u>) is GRANTED. 2. Plaintiff's Defamation Claims (Count One) are DISMISSED WITH PREJUDICE. 3. Plaintiff's Defamation–By–Implication Claims (Count Two) are also DISMISSED WITH PREJUDICE. The Clerk is directed to enter judgment in favor of Defendant, Meghan Markle, (also known as Meghan, the Duchess of Sussex), terminate any pending motions, and CLOSE this case. Signed by Senior Judge Charlene Edwards Honeywell on 3/12/2024. (AB)** (Entered: 03/12/2024) |
| 03/12/2024 | <u>114</u> | JUDGMENT in favor of Defendant. ( Signed by Deputy Clerk) (AJS) (Entered: 03/12/2024) |
| 04/08/2024 | <u>115</u> | NOTICE OF APPEAL as to <u>114</u> Judgment by Samantha M. Markle. Filing fee $ 605, receipt number AFLMDC–21959604. (Ticktin, Peter) (Entered: 04/08/2024) |
| 04/09/2024 | <u>116</u> | CORRECTED NOTICE OF APPEAL as to <u>114</u> Judgment by Samantha M. Markle. Filing fee $ 605, receipt number AFLMDC–21960377. (Ticktin, Peter) Modified text on 4/9/2024 (LSS). (Entered: 04/09/2024) |

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SAMANTHA M. MARKLE,

     Plaintiff,

v.                                                          Case No: 8:22-cv-511-CEH-TGW

MEGHAN MARKLE,

     Defendant.

_____

## <u>ORDER</u>

     This cause comes before the Court upon Defendant Meghan Markle's Motion to Dismiss the Third Amended Complaint and Incorporated Memorandum of Law (Doc. 74), Plaintiff Samantha M. Markle's Response in Opposition (Doc. 79), and the respective Reply and Sur-Reply (Docs. 82, 89).[1] For the reasons set forth below, the Court will grant the Motion to Dismiss. Moreover, because amendment would be futile, Plaintiff's claims will be dismissed with prejudice.

## I.    <u>FACTUAL BACKGROUND</u>

     This motion addresses the third iteration of Plaintiff's Complaint, in which she brings one count of defamation and one count of defamation by implication. *See* Docs. 1, 31, 72. Previously, the Court granted Defendant's Motion to Dismiss the First Amended Complaint. *See* Doc. 70. Plaintiff's defamation claims based on *Finding Freedom*—a book published by a third party—were dismissed with prejudice because

_____

[1] The Court has also considered the supplemental authorities provided. *See* Docs. 94, 101.

Defendant did not publish the relevant statements and therefore could not be held liable for them. *Id.* at 15. The Court dismissed defamation claims based on three statements from a televised interview, without prejudice, based in part on Plaintiff's mischaracterizations of the transcript. *Id.* at 17–23. The Order further noted that Defendant's substantive arguments regarding these claims appeared to have merit. *Id.* Count Two, a claim for injurious falsehood, was dismissed without prejudice under Florida's single action rule, which holds that a plaintiff generally may not allege multiple causes of action based on the same defamatory publication or event. *Id.* at 25–27. Plaintiff has not repleaded the injurious falsehood claim.

In the operative complaint, Plaintiff reasserts her defamation claim (and adds a defamation-by-implication claim) based on the television interview. Doc. 72 ¶¶ 23–38, 65, 74. She also asserts new defamation and defamation-by-implication claims based on statements from *Harry & Meghan*, a Netflix documentary series released in December 2022. *Id.* ¶¶ 39–55, 65, 74.

### A. The Parties and Background Allegations[2]

Samantha M. Markle ("Plaintiff") is a citizen of Florida and half-sister to Meghan Markle, also known as Meghan, the Duchess of Sussex ("Defendant"). *Id.* ¶¶ 3–6. The two were close during childhood, and Plaintiff regularly drove Defendant to school and helped her with homework. *Id.* ¶ 7. They had a "good to wonderful

---

[2] The following statement of facts is derived from the Third Amended Complaint (Doc. 72), the allegations of which the Court accepts as true in ruling on the instant Motion to Dismiss. *See Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992).

relationship." *Id.* As Defendant achieved success as an actress, "she no longer had time for [Plaintiff]," and the two stopped "visiting" by 2016. *Id.* ¶ 8. Then, once Defendant met Prince Harry and became engaged to him, the half-sisters became estranged. *Id.* ¶ 9.

In 2017 and 2018, Defendant hung up on Plaintiff during a phone call and ultimately, of her family members, only invited her mother to the Royal Wedding. *Id.* ¶¶ 10–13. Plaintiff was subsequently "discovered" by the media and, in an interview, stated that Defendant had not contacted their father after he suffered two heart attacks. *Id.* ¶¶ 15–16. The press used fabricated quotes and wrote that Plaintiff "bashed" Defendant. *Id.* ¶ 17. Subsequently, Defendant allegedly started a "smear campaign" against Plaintiff and began to resent her. *Id.* ¶¶ 17–19.

**B. The CBS Interview**

On March 7, 2021, Oprah Winfrey interviewed Defendant and Prince Harry on a televised CBS special. *Id.* ¶ 23. Approximately 50 million people tuned in. *Id.* Plaintiff alleges that Defendant made four defamatory statements in that interview. *Id.* ¶ 24.

The Court has already taken judicial notice of an undisputed transcript of the relevant portion of the interview, reproduced below. *See* Doc. 41-2; Doc. 64 at 2. The allegedly defamatory statements are underlined. Any typographical errors or repeated words appear in the transcript submitted to the Court (Doc. 41-2).

> **Speaker 3 [CBS Reporter]:** But she found out her dad was working with the tabloids.
>
> **Defendant:** There was such an obsession about anything in my world, including tracking down my parents, and I did everything

3

that I could to protect both of them in that media frenzy. But for over a year, the UK tabloids were trying to find my dad offering people so much money to try to find his address. Once they did, I remember being told there was a huge headline like We found him or we've got him saying that about someone's father. And from that point, the tabloids they moved into the apartment next door and across from him descended on the small town, which is giving him gifts. The whole thing brings us to where we are today.

**Oprah Winfrey:** Did it feel like betrayal when you found out your father was working with the tabloids.

**Defendant:** I'm just trying to decide if I'm comfortable even talking about that. If we're going to use the word betrayal. It's because when I asked him when we were told by the comms team, this is a story that was going to be coming out, which by the way, the tabloids had apparently known for a month or so and decided to hold until the Sunday before our wedding because they wanted to create drama, which is also a really key point in all this. They don't report the news, they create the news. We called my dad and I asked him and he said, No, absolutely not. And I said, You know, the the institution has never intervened for anything for us, but they can try to go in and kill this story. But if they do this once we're not going to be able to use that same leverage to protect our own kids one day.

**Oprah Winfrey:** He said no, absolutely not. He hadn't been talking to them.

**Defendant:** Yea.

**Oprah Winfrey:** So he basically lied to you.

**Defendant:** Well, and so when I said we won't be able to protect our own kids one day. And and I said, I just need you to tell me, and if you tell me the truth, we can help. And he wasn't able to do that. And that, for me, has has really resonated, especially now as a mother, you know,

**Oprah Winfrey:** not being able to, not being willing to protect you

**Defendant:** and also me saying, just full stop, if we use this to protect you won't be able to protect our own children one day. Well, I'm talking about your grandchildren. So I can't. I mean, I

4

look at Archie. I think about this child, and I go, I can't. I genuinely can't imagine doing anything to intentionally cause pain to my child. I can't. I can't imagine it. So it's hard for me to reconcile that.

**Oprah Winfrey:** So your father being hunted down? It seemed like you were saying in some ways that they did this to him. So I want you to be able to clarify this, that that that the tabloids, the media did this to him. They hunted him. But he has a responsibility in it to

**Defendant:** everyone, has accountability. Look, they've hunted my mom down.

**Oprah Winfrey:** Right. And she never speaks to the tabloids.

**Defendant:** I never heard her say a word and remained in silent dignity for four years watching me go through this.

**Oprah Winfrey:** And Samantha Markle, your half-sister on your father's side, has written a, a supposedly tell all book about you. What is what is your relationship with her?

**Defendant:** <u>I think it be very hard to tell all when you don't know me.</u> And I, it's this is a very different situation than my dad, right? <u>When you talk about betrayal, betrayal comes from someone that you have a relationship with. Right? I don't feel comfortable talking about people that I really don't know.</u> But I grew up as an only child, <u>which everyone who grew up around me knows, and I wished I had siblings.</u> I would have loved to have had siblings, so I'm excited to be pregnant that Archie has someone. It was really interesting to me. <u>The last time I saw her must have been at least 18, 19 years ago and before that, 10 years before that.</u>

**Oprah Winfrey:** So you all weren't close. You didn't grow up together.

**Defendant:** <u>No.</u>

**Oprah Winfrey:** She doesn't really know you.

**Defendant:** No. <u>She changed her last name back to Markle, and I think she's an early fifties at that time only when I started dating Harry. And so I think that's says enough.</u>

5

**Speaker 3 [CBS Reporter]:** That name change does say a lot. Oprah is still with us, Oprah. The other thing that leapt out to me was the way Meghan described how her mother had been bearing up under all this scrutiny with, quote, silent dignity. And then you contrast that with her father. Is she open at this point to having a relationship with her father? I know he's never met Archie or Harry.

**Oprah Winfrey:** I know or Harry. I think, I think I haven't really. I didn't pursue that conversation with them. From what I gather, her relationship with her father is similar to what's happening with Prince Harry and Prince William now that there is distance there. And maybe with time, things will get better.

## C. Netflix Series

Beginning in December 2022, the streaming platform Netflix released a 6-part mini-series entitled *Harry & Meghan* (the "Series"). Doc. 72 ¶ 39. The Series, a joint effort between Defendant's production company and another entity, was "filmed, edited, and produced for Netflix under the direction of [Defendant] and Prince Harry." *Id.* ¶ 40. It consisted of six episodes, each spanning around an hour and featuring interviews with Defendant, Prince Harry, and "friends, family, and interested and participatory parties." *Id.* ¶ 42. The Series "directly or indirectly" references Plaintiff in four episodes. *Id.* ¶ 45. Plaintiff alleges that fourteen statements from the Series were defamatory, including numerous statements by Christopher Bouzy, a non-party to the suit. *Id.* ¶ 49.

**D. Damages**

Plaintiff lives in Lakeland, Florida, where she is well known for her ties to Defendant. *Id.* ¶ 57. As a result of the defamatory statements, Defendant's "fan base," including a significant part of Lakeland's population, became angry with Plaintiff and "turned against" her. *Id.* ¶¶ 57–58. Plaintiff became known as an opportunist trying to cash in on her sister's success and fame, despite having no relationship with her. *Id.* ¶ 58. The defamatory statements caused prejudice, injury, and harm to Plaintiff's reputation, as well as anxiety and emotional distress. *Id.* ¶ 61. She received hate mail, ongoing negative press, and was stalked. *Id.* ¶ 63. Moreover, Plaintiff has been unable to work as a mental health counselor due to the reputational damage. *Id.* ¶ 62.

**E. Judicial Notice**

The Court heard oral argument on this motion on November 8, 2023. Doc. 110. At that proceeding, Plaintiff's counsel indicated that Plaintiff did not oppose any portion of Defendant's Request for Judicial Notice in Support of the Motion to Dismiss. *Id.* at 1. He also agreed to withdraw Plaintiff's claims based on Statement Six from the Netflix Series, discussed *infra*.

Thus, the Court takes judicial notice of: (a) the provided transcripts and footage of the Netflix series; (b) the existence of previous media reports regarding certain claims in the series; and (c) the transcript of the CBS interview at issue in the First Amended Complaint and again here.[3] *See* Docs. 41-2, 75, 75-1, 75-2, 75-3. The Court

---

[3] To be clear, the Court takes judicial notice of the referenced materials to the extent of recognizing their existence and what is stated within them, not to establish the truth of any

has reviewed these exhibits in full, including both the transcript and footage of Episode Five, which was provided on a flash drive because certain visual elements of the episode could not be transcribed. Docs. 91, 92.

## II.   **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* at 678. Overall, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

---

facts contained in the transcripts, footage, or previous media reports. *See Thomas v. Waste Pro USA, Inc.*, No. 8:17-CV-2254-CEH-CPT, 2019 WL 3835255, at *2 (M.D. Fla. Aug. 15, 2019) ("[T]he court may take judicial notice of the documents filed in a proceeding, but not the facts contained in the documents.")

In ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint." *Austin v. Modern Woodman of Am.,* 275 F. App'x 925, 926 (11th Cir. 2008) (quoting *Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)). However, it may also consider attachments or exhibits provided with the complaint. *See Gill as Next Friend of K.C.R. v. Judd,* 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss."). A district court can also take judicial notice of an adjudicative fact that is "not subject to reasonable dispute" and either (1) "generally known within the trial court's territorial jurisdiction" or (2) capable of being "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.,* 869 F.3d 1204, 1224–1225 (11th Cir. 2017) (quoting Fed. R. Evid. 201(b)).

## III.   DISCUSSION

Plaintiff's Third Amended Complaint brings just two claims: defamation and defamation by implication. Nevertheless, the eighteen statements on which those two claims rely present a plethora of issues. Ultimately, the Court finds that Plaintiff fails to plausibly state a claim for defamation or defamation by implication as to any of the statements.

As to the defamation claims, each and every statement is non-actionable, either because it is a protected opinion, substantially true based on judicially noticed evidence, not capable of being considered defamatory, or because Plaintiff is precluded

from meeting the actual malice standard (because the statement in question was presented together with Plaintiff's version of events). Therefore, the defamation claims in Count One (based on the CBS Interview and the Netflix Series) will be dismissed with prejudice.

As to Count Two, Plaintiff's own allegations contradict the elements of her claim. She repeatedly asserts that each of Defendant's relevant statements is false, but a defamation-by-implication claim requires Plaintiff to identify statements that are *true*, but create a false implication. Moreover, as the protections of defamation law extend to defamation-by-implication claims, and the Court has determined that each statement is non-actionable, Plaintiff's claims in Count Two are deficient twice-over. Moreover, Plaintiff fails to plausibly plead actual malice. Therefore, as described below, Plaintiff cannot state a claim for defamation by implication and amendment would be futile.

### A. Defamation

The substantive law of Florida applies to Plaintiff's defamation claims. *Turner v. Wells,* 879 F.3d 1254, 1262 (11th Cir. 2018).[4] Defamation comes in one of two forms: libel (expressed in print) or slander (spoken or oral defamation). *Cooper v. Miami Herald*

---

[4] *Turner* outlined the proper analysis in evaluating defamation claims under Florida Law. "Where the . . . [Florida Supreme Court] . . . has not spoken . . . [the Eleventh Circuit] must predict how the highest court would decide the case." 879 F.3d 1254, 1262 (11th Cir. 2018). "Decisions of the . . . Florida District Courts of Appeal" provide guidance and generally must be followed. *Id.*

*Pub. Co.*, 31 So.2d 382, 384 (Fla. 1947); *Scott v. Busch*, 907 So.2d 662, 666 (Fla. 5th DCA 2005).

Either type of defamation consists of the same elements: (1) publication; (2) falsity; (3) that the actor acted with knowledge or reckless disregard as to the falsity of the publication on a matter concerning a public official (also known as actual malice), or at least negligently on a matter concerning a private person; (4) actual damages; and (5) that the statement was defamatory. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105–1106 (Fla. 2008); *Turner*, 879 F.3d at 1262 (citations omitted).

As to the third element, Plaintiff's counsel agreed at oral argument that Plaintiff must allege actual malice because Defendant is a public figure for purposes of this lawsuit (as the Complaint suggests (*see* Doc. 72 ¶¶ 59, 80)). Therefore, to survive a Rule 12(b)(6) challenge, Plaintiff must plausibly allege that Defendant made each defamatory statement with "knowledge that [it] was false or . . . reckless disregard of whether it was false or not." *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964); *see Turner*, 879 F.3d at 1262.

A statement is defamatory if it "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated . . . exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Rapp*, 997 So. 2d at 1108–1109. True statements, statements that are not readily capable of being proven false, and statements of pure opinion, however, are protected from defamation actions by the First Amendment. *Turner*, 879 F.3d at

1262 (citing *Keller v. Miami Herald Publ'g Co.,* 778 F.2d 711, 714–715, 717 (11th Cir. 1985) (applying Florida law).

Whether a statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court. *Keller,* 778 F.2d at 715 (citing *From v. Tallahassee Democrat, Inc.,* 400 So. 2d 52, 56–57 (Fla. 1st DCA 1981); *see Fortson v. Colangelo,* 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006)). In answering these two questions, the court must construe statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement. *Keller,* 778 F.2d at 717.

The CBS Interview

Plaintiff's first four defamation claims draw from Defendant's televised interview with Oprah Winfrey. Doc. 72 ¶¶ 26–38.

The first three come from the same interview answer.

*CBS Interview Statements (One through Three)* (Doc. 41-2)

**Oprah Winfrey:** And Samantha Markle, your half-sister on your father's side, has written a, a supposedly tell all book about you. What is . . . your relationship with her?

**[Statement One] Defendant:** I think it be very hard to tell all when you don't know me. And I, it's this is a very different situation than my dad, right? When you talk about betrayal, betrayal comes from someone that you have a relationship with. Right? I don't feel comfortable talking about people that I really don't know.

**[Statement Two] Defendant:** But I grew up as an only child, which everyone who grew up around me knows, and I wished I had siblings. I would have loved to have had siblings, so I'm excited to be pregnant that Archie has someone. It was really interesting to me.

12

> **[Statement Three] Defendant:** <u>The last time I saw her must have</u> <u>been at least 18, 19 years ago and before that, 10 years before that.</u>

The Fourth[5] Statement is as follows:

> **Oprah Winfrey:** So you all weren't close. You didn't grow up together?
>
> **Defendant:** No.
>
> **Oprah Winfrey:** She doesn't really know you.
>
> **[Statement Four] Defendant:** <u>No. She changed her last name</u> <u>back to Markle, and I think she's in her early fifties at that time,</u> <u>only when I started dating Harry. And so I think that says enough.</u>

*Id.* at 4.

Plaintiff avers that these "disparaging, hurtful, and false" statements insinuated she is "a stranger, a liar, and a . . . deceptive fame-seeking imposter with avaricious intentions towards" Defendant. <u>Doc. 72</u> ¶ 24.

Defendant argues that none of the statements are actionable. <u>Doc. 74 at 5</u>. As to Statements One and Two, she argues that they are unfalsifiable opinions and substantively identical to claims that were previously dismissed as opinions of her own childhood. *Id.* at 6. Defendant argues that Plaintiff fails to allege falsity as to Statement Three, and again mischaracterizes the transcript in trying to rescue her claim as to this statement. *Id.* Finally, Defendant argues that Statement Four is substantially true and thereby incapable of supporting a claim. *Id.*

---

[5] Plaintiff appears to suggest that Defendant's response of "No" to Ms. Winfrey's question of whether the two grew up together was defamatory, which would be a fifth statement. <u>Doc.</u> <u>72</u> ¶ 31. Although this is unclear, the Court analyzes the statement below as a separate claim.

In response, Plaintiff concedes that "the first 2 statements . . . may be opinions and the 3rd is incorrect only as to the amount of time that lapsed between visits." Doc. 79 at 4. However, Plaintiff asserts that the statements, combined with the fourth, "most damaging" comment regarding her use of the surname Markle, sufficiently state a claim. *Id.* at 4–5. Further, Plaintiff maintains that the statements can be proven. *Id.* at 5. She also argues that the substantial truth doctrine does not apply, because Defendant "stated her opinion based on facts not disclosed" and the statements were thus mixed opinions (rather than pure opinions). *Id.* at 5–7. Lastly, Plaintiff emphasizes the "millions of viewers worldwide" that watched the Oprah interview and argues (without citation to authority or further explanation) that "libel by implication" is obvious based on the audience to which Defendant made the statements. Doc. 79 at 4.[6]

Defendant replies that the substantial truth doctrine does apply, that the statements were not mixed opinions, and that all the interview claims should be dismissed. Doc. 82 at 2–3.

The Court considers each statement individually, drawing all *reasonable* inferences in favor of Plaintiff. Before doing so, however, the Court notes that several allegations, in particular those related to falsity, immediately suggest that Plaintiff disagrees with Defendant's opinions rather than statements of fact.

---

[6] To the extent this argument is aimed at Plaintiff's second Count, for defamation by implication, it will be addressed separately. To the extent it relates to Count One (defamation), it is unsupported by citation to any authority or analysis.

For example, Plaintiff alleges that the statements painted her as "a stranger, a liar," and "a deceptive fame-seeking imposter with avaricious intentions." Doc. 72 ¶ 24. She goes on to argue that the statements "insinuated that [Plaintiff] has concocted a fictitious story to reap some inappropriate reward from [Defendant]'s fame." *Id.* ¶ 25. These (and other allegations discussed below) are quintessential examples of opinion that cannot be verified and therefore cannot serve as the basis of a defamation action. *Turner*, 879 F.3d at 1262.

For the reasons that follow, each statement is protected from suit either as a pure opinion, because it is substantially true based on judicially noticed materials, or based on Plaintiff's failure to plausibly allege that they are defamatory in the first place.

*Statement One – CBS Interview* (Doc. 41-2)

**Oprah Winfrey:** And Samantha Markle, your half-sister on your father's side, has written a, a supposedly tell all book about you. What is . . . your relationship with her?

**Defendant:** I think it be very hard to tell all when you don't know me. And I, it's this is a very different situation than my dad, right? When you talk about betrayal, betrayal comes from someone that you have a relationship with. Right? I don't feel comfortable talking about people that I really don't know.

Plaintiff asserts that this statement "attack[ed] the veracity of [her] recently written and released book" and "insinuat[ed] that [Plaintiff] had concocted a fictitious story to reap some inappropriate reward from [Defendant]'s fame." Doc. 72 ¶ 25.

Defendant argues that the Court already found that a similar statement about her childhood and family was not objectively verifiable or subject to empirical proof, and therefore was protected opinion. Doc. 74 at 5–6. She adds that "betrayal" is even

more obviously a matter of opinion and cites authority from within and outside the Eleventh Circuit supporting this argument. *Id.* at 6. Plaintiff responds that Defendant implied "that [Plaintiff] did not know her," and, combined with the other statements, aimed to portray her as "an unwelcome opportunist" "weaseling her way" into the life of "her half-sister who did not even know who she was." Doc. 79 at 4.

"[S]tatements that cannot reasonably be interpreted as stating actual facts about an individual" cannot support a cause of action. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 (1990). Likewise, "[o]pinions cannot be defamatory." *Hoon v. Pate Const. Co.,* 607 So. 2d 423, 429 (Fla. 4th DCA 1992). While pure opinions are protected, mixed expressions of opinion are not. *Fuente Cigar, Ltd. v. Opus One,* 985 F. Supp. 1448, 1457 (M.D. Fla. 1997). The test for determining whether statements are protected opinions is whether they "are capable of being proved false." *Fla. Med. Ctr., Inc. v. New York Post Co.,* 568 So. 2d 454, 458 (Fla. 4th DCA 1990). Opinions with no provably false connotations cannot support a defamation claim. *Hamze v. Cummings,* 652 F. App'x 876, 881 (11th Cir. 2016) (citing *Milkovich,* 497 U.S. at 20); *Keller,* 778 F.2d at 714–715.

The Court agrees that this first statement is, in the context of the interview, an opinion—which Plaintiff essentially concedes, stating that "[y]es, the first 2 statements on their own may be opinions," *see* Doc. 79 at 4.

First, the statement must be considered from the perspective of a reasonable viewer. *See Fortson,* 434 F. Supp. 2d at 1379. In that light, the Court can only conclude

that Defendant's statement is an opinion about her childhood and relationship with Plaintiff. As the Court noted in its prior order,[7] Defendant went so far as to qualify her statement with the word "really" to make clear that she was not suggesting she did not know who Plaintiff was, as Plaintiff implies (Doc. 79 at 4). Thus, as a reasonable listener would understand it, considering the qualifying terms in Defendant's statement, she is merely opining that she did not have a close relationship with Plaintiff. *Keller,* 778 F.2d at 717.

What it means to be "close"—to share a relationship with someone so intimate that you "really know" that person—is a subject that might make good fodder for philosophical, psychological, or personal exploration. However, it is not capable of being definitively answered. Plaintiff cannot objectively prove that she "*really knows*" Defendant or that Defendant *falsely* felt that their relationship was not sufficiently intimate to justify use of the word "betrayal." Because this statement is an opinion not readily capable of being proven, it is protected by law from a defamation action. *See Turner,* 198 F. Supp. 3d at 1370; *see Wolfson v. Kirk,* 273 So. 2d 774, 778 (Fla. 4th DCA 1973).

Moreover, Defendant is correct that the concept of betrayal would typically be a matter of opinion, as other courts have found. Doc. 74 at 6 (citing *Johnson v. Clark,* 484 F. Supp. 2d 1242, 1251 (M.D. Fla. 2007), *aff'd,* 294 F. App'x 502 (11th Cir. 2008)).[8]

---

[7] *See* Doc. 70 at 18.

[8] *Johnson* is readily distinguishable from this case—but nevertheless instructive. In that decision, the court denied a motion for new trial in a libel matter based on its finding that an

Here, not only is the concept of betrayal an opinion, but Defendant specifically states that she does not perceive herself as close enough to Plaintiff to even feel betrayed by her, which there is no way to verify, making the statement a protected opinion.

The claim is dismissed, as the statement constitutes protected opinion. Plaintiff's further arguments regarding "implications" and "insinuations" will be revisited when addressing her defamation-by-implication claim.

*Statement II – CBS Interview* (Doc. 41-2)

**Defendant:** But I grew up as an only child, which everyone who grew up around me knows, and I wished I had siblings.

The Court addressed this statement once before, concluding that Plaintiff could not plausibly disprove Defendant's opinion of her own childhood. Doc. 70 at 19.

This time, Plaintiff fails to specifically allege falsity, and instead attempts to tie in other statements from the interview, stating that in context, this statement "was a denial that Samantha played a part in her life and her upbringing." Doc. 72 ¶ 28. Whether a reasonable viewer would draw such an implication from this statement is doubtful, but even if they did, it is clearly protected opinion.

"In determining the basic question of whether certain language is defamatory . . . the words used are not to be construed or taken in their mildest or most grievous

---

allegedly defamatory letter contained mixed opinion and fact, notwithstanding its use of the terms "spin," "lying," and "betrayal." *Johnson*, 484 F. Supp. 2d at 1251. While not on point in all respects, the *Johnson* court noted that it is certainly an "opinion" that the plaintiff engaged in betrayal of his heirs. *Id.* Here, the Court finds that Defendant's statement regarding betrayal is a pure opinion, not a mixed one, and therefore is protected from suit.

sense, but . . . should be construed as the common mind would understand it." *Loeb v. Geronemus*, 66 So. 2d 241, 245 (Fla. 1953) (quotation omitted). Following this determination, the Court can dismiss a claim if it finds that a statement is nonactionable. *See Turner v. Wells*, 198 F. Supp. 3d 1355, 1370 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018) (finding a statement not "subject to empirical proof" or an "objectively verifiable event" to be a protected opinion). Again, "context is paramount" to this determination. *Fortson,* 434 F. Supp. 2d at 1379.

Defendant's statement came in response to a question about her relationship with Plaintiff. Doc. 41-2 at 3. She replied that she did not "really know" Plaintiff and "grew up as an only child." *Id.* at 3–4. Further, she says that she "would have loved to have had siblings." *Id.*

As a reasonable listener would understand it, Defendant merely expresses an opinion about her childhood and her relationship with her half-siblings. Thus, the statement is not objectively verifiable or subject to empirical proof. *See Turner,* 198 F. Supp. 3d at 1370. Plaintiff cannot plausibly disprove that Defendant feels she "grew up as an only child" and wished she had siblings. Doc. 41-2 at 3. Because the statement is not "capable of being proved false, [it] is protected from a defamation action." *New York Post Co.,* 568 So. 2d at 458. Thus, the Court will dismiss the claim, which has not gained any merit since the last motion to dismiss was ruled on. *See Wolfson,* 273 So. 2d at 778.

19

*Statement III – CBS Interview* ([Doc. 41-2](#))

> **Defendant:** <u>The last time I saw her must have been at least 18, 19 years ago and before that, 10 years before that.</u>

Plaintiff argues that this statement falsely "ignores the multitude of phone conversations [Defendant] and [Plaintiff] had enjoyed throughout the years." [Doc. 72](#) ¶ 30.

Defendant urges dismissal of the claim because, assuming phone calls occurred, that would not be the same as meeting in person. [Doc. 74 at 7](#). Therefore, she argues Plaintiff does not plausibly allege falsity. *Id.* As to the suggestion that the statement "implied that [Plaintiff] was a liar and fame-seeker," Defendant claims this is another improper mischaracterization of the transcript. *Id.* Finally, Defendant argues that defamation law is concerned with truth, not generosity, and that she thus had no duty to mention phone calls during the interview. [Doc. 82 at 3](#).

Plaintiff concedes that this statement is "incorrect only as to the amount of time that lapsed between visits." [Doc. 79 at 4](#)–5. She argues, however, that "[i]t is objectively verifiable that the last time" Plaintiff and Defendant met was "far more recent than [Defendant] said." *Id.* at 7. Then, Plaintiff proceeds to connect the statement to others from the interview and argue defamation by implication, which the Court will address with the rest of Count Two. *Id.*

A "[p]laintiff must specify what *false* statement or statements caused [her] injuries." *Hill Nissan, Inc. v. Jenkins Nissan, Inc.,* No. 8:11-cv-2757-MSS-EAJ, [2012 WL 13106337](#), at *2 (M.D. Fla. Aug. 7, 2012) (emphasis added). And the element of falsity

is only met "if the publication is substantially and materially false . . ." *Smith v. Cuban Am. Nat'l Found.,* 731 So.2d 702, 707 (Fla. 3d DCA 1999).

Here, Plaintiff has failed to plausibly allege that Defendant's statement was "substantially and materially false," as she must to state a claim. *Smith*, 731 So.2d at 707. This conclusion follows from a few premises. First, Plaintiff admits that the statement alone is unlikely to support a claim, as it "is incorrect *only* as to the amount of time that lapsed between visits." Doc. 79 at 4–5 (emphasis added). Next, Plaintiff responds that it is objectively verifiable the last time Defendant saw her was "far more recent[ly]." This conclusory assertion in a response (omitting when their last meeting was, what is meant by "far more recently," or any further detail) does not allow the Court to plausibly infer that Defendant's statement was substantially and materially false.

Additionally, Defendant is right that a mistake regarding whether she saw Plaintiff thirteen or eighteen years ago would be protected by the substantial truth doctrine, as the gist of the statement is the same. *See, e.g., Jeter v. McKeithen,* 2014 WL 4996247 at *3 (N.D. Fla. Oct. 7, 2014) (dismissing a defamation claim on the grounds that the substantial truth or "gist" of a statement was the same "regardless of whether [the plaintiff] was alleged . . . to have bullied 'dozens' of victims or 'at least one' victim"). Plaintiff responds as follows:

> Meghan's argument that 18 years is like 13 years, is the wrong point. It should be that 29 years with one visit. 29 years ago is a completely different gist than 13 years. If there was only one visit since Meghan was 6, there was no relationship, at all. Especially when Meghan also stated

21

that she did not remember Samantha visiting when she was young. The story was entirely false.

(Doc. 89 at 3).[9]

Regardless of how the Parties did their math (Plaintiff did not exactly "show her work"), the Court agrees with Defendant that the gist of the statement, that it has been over a decade since the two last saw each other, is the same. Therefore, the statement is protected by the substantial truth doctrine. *Jeter*, 2014 WL 4996247 at *3. And as such, Plaintiff's allegations do not allow the Court to reasonably infer that this statement is substantially and materially false. *Smith*, 731 So.2d at 707.

Moreover, Defendant qualified her statement by stating the last time she saw Plaintiff "must have been" "at least" a certain number of years ago. This language would give a reasonable viewer the impression she was relying on her memory and providing approximations, rather than drawing from documentary evidence or undisclosed facts to come up with a number. *See Fortson*, 434 F. Supp. 2d at 1379.

Finally, Plaintiff's argument that this statement was a mixed opinion is without merit. She fails to plausibly allege that Defendant implied the existence of undisclosed facts on which her statement was based. *From*, 400 So. 2d at 57. Plaintiff's generic response that Defendant "stated her opinion based on facts not disclosed," (Doc. 79 at 7) is of little help to her because the Court need not accept such legal conclusions as true.

---

[9] Plaintiff's reply is also telling, in that her main complaint about Defendant's statement is that it implied "there was no relationship, at all." Doc. 89 at 3. Whether the two had a relationship, in turn, is a pure opinion that cannot be objectively proven or falsified.

Therefore, as described above, the court cannot "draw a reasonable inference that the defendant is liable for the misconduct alleged" based on this statement. *Iqbal*, 556 U.S. at 678. Additionally, there is no allegation from which the Court can reasonably infer that Defendant made this statement knowing that it was false or with reckless disregard of its potential falsity. As such, Plaintiff's claim as to this statement will be dismissed.[10]

<em>Statements Four and Five – CBS Interview (Doc. 41-2)</em>

The final two statements from the interview are embedded in the following excerpt.

> **Oprah Winfrey:** So you all weren't close. You didn't grow up together?
>
> **Defendant:** <u>No.</u>
>
> **Oprah Winfrey:** She doesn't really know you.
>
> **Defendant:** <u>No. She changed her last name back to Markle, and I think she's in her early fifties at that time, only when I started dating Harry. And so I think that says enough.</u>

Defendant's first allegedly defamatory "statement" consisted of her answering "no" to the question of whether she and Plaintiff grew up together. Plaintiff claims that this "damaging and hurtful response" "attacked [Plaintiff]'s veracity calling into question on a world stage, [her] own fond memories of the times spent together when

---

[10] Plaintiff's actual malice allegations, which are generally alleged as to "[a]ll the false remarks in the Oprah Winfrey Interview and Netflix Series" in a conclusory manner, Doc. 72 ¶ 59, fall short of plausibly alleging actual malice.

23

they were both younger, with their father, Thomas Markle, in his home, where she was living at that time." Doc. 72 ¶ 31.

Again, Defendant's answer, in context, is clearly her opinion of her own childhood and relationship with Plaintiff. It is neither objectively verifiable nor subject to empirical proof. Therefore, it cannot support a claim for defamation and must be dismissed. *See Turner,* 198 F. Supp. 3d at 1370. Plaintiff's attempt to explain why this statement was false in fact supports this conclusion. According to Plaintiff, Defendant's single-word answer "call[ed] into question" Plaintiff's various "*fond memories.*" (emphasis added). *Id.* An occasion or period in time that one person remembers as a "fond memory" may be remembered quite differently by others. And either way, an individual's feelings about the past are not objectively verifiable. Therefore, Plaintiff's claim as to this statement, which would ultimately have to establish that the two half-sisters "grew up together," and/or "were close," falls outside the boundaries of a plausible defamation claim.

Next, the Court considers the second part of the statement regarding Plaintiff's name change. Plaintiff argues the statement was false and harmful because it was "not the time that [she] began to use the name 'Markle.'" Doc. 72 ¶ 32. She asserts that this statement created an "air of mendacity" around her and ignored the number of reasons why one might change their name and the (unspecified) reason Defendant in fact did so. *Id.* Plaintiff also postulates that the second part of the statement—"I think that says enough"—implies that she was "nefariously using Defendant's last name to cash-in on her sister's fame." Furthermore, Plaintiff states that she used the name Markle

"interchangeably all of life [sic]," and legally changed her name back to Markle only five years after Defendant started dating Prince Harry. *Id.* ¶ 34.

Defendant argues for dismissal of this claim based on the materials that have been judicially noticed and the substantial truth doctrine. Doc. 74 at 8. She argues that using last names "interchangeably" would not be substantially more damaging to Plaintiff's reputation than changing her name legally for some particular reason. *Id.* at 8–9. Plaintiff responds that the statement is not substantially true despite her intermittent use of the name Markle. Doc. 79 at 5. She contends that her complaint avers she did not change her name when Defendant started to date Prince Harry, which Defendant stated as a fact. *Id.*

Based on the materials that have been judicially noticed in this case, this claim must be dismissed based on the substantial truth doctrine, in addition to Plaintiff's failure to plausibly allege actual malice, other than in a conclusory manner.

As previously explained, a substantially true statement is generally not actionable. *See Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 516 (1991) (explaining that even a flawed assertion of fact is not actionable as long as it is "substantial[ly] tru[e]," because the common law of libel "overlooks minor inaccuracies"); *see also Smith*, 731 So.2d at 707 (holding that "falsity only exists if the publication is substantially and materially false, not just if it is technically false."). The Court has taken notice of the fact that Plaintiff used the surname Rasmussen in September 2016 and Markle two months later, soon after Defendant's royal relationship was first reported. Doc. 70 at 25 n.10 (citing Doc. 34 at 17–18; Doc. 35-2; Doc. 35-3). Therefore,

the gist of the statement—that Plaintiff switched to her family name a short time after it was reported Defendant was involved with Prince Harry—is true. Moreover, the precise reasons for her switch were not specified or suggested by Defendant (who merely stated "I think that says enough,") an amorphous statement that cannot be objectively verified.

The claim based on Statement Five will thus be dismissed. A plaintiff's attempt to plead a viable cause of action may be defeated by her own evidence. *See Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205–1206 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations."); *see also Associated Builders, Inc. v. Ala. Power Co.,* 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R. Civ. P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."). That Plaintiff used one last name and then the name Markle soon after reports of Defendant's relationship with Prince Harry were published is substantially true, based on the exhibits in the record, of which the Court has taken judicial notice,[11] and the Court cannot reasonably infer otherwise. For these

---

[11] *See* Doc. 34 at 17–18; Doc. 35-2; Doc. 35-3.

reasons, the Court cannot "draw a reasonable inference that the defendant is liable" for this statement. *Iqbal*, <u>556 U.S. at 677</u>–678 (2009).

**Futility**

<u>Federal Rule of Civil Procedure 15</u> says that courts "should freely give leave [to amend] when justice so requires." <u>Fed. R. Civ. P. 15(a)(2)</u>. Despite this generally permissive approach, a district court need not allow amendment where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed"; (2) "allowing amendment would cause undue prejudice to the opposing party"; or (3) "amendment would be futile." *Bryant v. Dupree,* <u>252 F.3d 1161, 1163</u> (11th Ci<u>r. 2001</u>) (per curiam). And where a communication could not possibly serve as grounds for a claim, the court is justified in dismissing it with prejudice. *Sloan v. Shatner*, No. 8:17-CV-332-JDW-AAS, <u>2018 WL 3769968</u>, at *7 (M.D. Fla. June 22, 2018) (holding that dismissal with prejudice is appropriate where "[a]mending would be futile because a viable defamation action does not exist based on the statements Plaintiff' attributes to Defendant).

Plaintiff's claims based on the CBS Interview have fared no better on second review. Although she now properly quotes the statements, rather than paraphrasing or changing them (*See* <u>Doc. 70 at 20</u>–25), each statement is incapable of supporting a defamation claim.

Therefore, with the benefit of substantial briefing and two rounds of oral argument, the Court concludes that Plaintiff would not be able to cure the deficiencies in these claims through amendment. She has amended her complaint multiple times

and yet still fails to sufficiently plead multiple elements. Moreover, the Court has found that the statements on which the claims are based are not actionable. As such, further amendment would be futile, these claims are without merit, and they will be dismissed with prejudice. *Shatner,* 2018 WL 3769968 at *7 (citing *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999)).

**Netflix Series**[12]

The Netflix claims differ from those based on the interview in that they are plucked from several hour-long episodes of *Harry & Meghan*, for which transcripts were submitted. *See* Doc. 75-3. For Episode Five, video footage and a transcript were submitted, as the episode contained certain images and graphics not amenable to transcription. The Court has reviewed the transcripts and footage.

Defendant separates the Netflix statements into two groups: those said by Defendant, and those said by Christopher Bouzy, a non-party interviewed in the Series. Doc. 74 at 10–26. The Court will do the same, beginning with Defendant's five statements.

*Statements Five and Seven – The Netflix Series*

The Court addresses the first two statements from the Series (numbered Five and Seven in the Motion) together. Statement Five (Doc. 75-1 at 20) reads as follows:

---

[12] Defendant notes that the Netflix allegations may exceed the scope of the leave to amend, as the film was published after the filing of this suit. Doc. 74 at 10–11 n.3. Having considered this issue and with the benefit of oral argument on both sets of claims, the Court will address them all together, as the Parties requested in their pleadings and at oral argument. *See id.*

> "<u>I was with my mom during the week and with my dad on the weekends. And my dad lived alone, he had two adult children who had moved out of his house.</u>"

<u>Doc. 72 at 10</u> ¶ 49(a).

Next, Statement Seven (<u>Doc. 75-2 at 14</u>):

> "<u>I don't remember seeing her when I was a kid at my dad's house, if and when they would come around.</u>"

<u>Doc. 72</u> ¶ 49(c).

Plaintiff alleges that in fact Defendant lived mostly with her father and visited her mother some weekends. *Id.* ¶ 49(a). She also disagrees with how the family's living arrangements were described, stating that when Defendant was in "Jr. High School, [Plaintiff] lived on the property and was always home when [Defendant] came home from school." *Id.* Plaintiff states that she often drove Defendant to school herself or with her father and helped her in other ways. *Id.* Defendant's statements were allegedly false because, "[i]n reality, [Defendant] was close to [Plaintiff] while she lived in her father's home, and there is no way that she could have forgotten it, considering that she continues to have memories of other issues at that time." *Id.*

Defendant moves for dismissal on the grounds that both statements are opinions regarding her own childhood. <u>Doc. 74 at 10</u>–13. Further, she argues that Plaintiff fails to (and logically cannot) allege actual malice as to either statement, which would require a plausible allegation that Defendant "doubted her own recollection" and thereby "recklessly disregarded the truth." *Id.* at 11, 23. Defendant argues that the allegation that "there is no way [Defendant] could have forgotten" seeing Plaintiff is

not a workaround. *Id.* at 11. Defendant also argues that the supposed implication of the two statements (the denial "that [Plaintiff] played a part in [Defendant's] life and her upbringing," Doc. 72 ¶ 28) is yet again a non-actionable opinion about her childhood and family life. Doc. 74 at 11.

Plaintiff responds that both statements are false statements of fact, that their father (Thomas Markle), Defendant, and Plaintiff did not live alone, and that Defendant falsely claims to not remember Plaintiff. Doc. 79 at 8. She argues that the issues in the statements are provable by "common sense" and unspecified "other indicia," such as payments, photographs, or testimony. *Id.* Defendant replies that neither statement could be construed as defamatory, even if they were verifiable. Doc. 82 at 4. Finally, in her sur-reply, Plaintiff contends that "[t]he issue of whether Meghan has no memory is the part which is more subjective and which can be proved by common sense and a jury's experience." Doc. 89 at 3–4.

The claims based on Statements Five and Seven are fatally deficient and due to be dismissed with prejudice. First, Statement Five is not plausibly capable of being considered defamatory. A defamatory statement "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Rapp,* 997 So. 2d at 1108–1109. In Statement Five, Defendant states that she lived with one parent (her mother) during the week and another (her father) on weekends, and that at some point during her childhood, her father's two adult children moved out of the house.

Defendant's memory of childhood minutiae does not plausibly defame Plaintiff. First, Statement Five barely mentions Plaintiff, to say only that at some point during Defendant's childhood, Plaintiff moved out of her father's house. It is not plausible that Plaintiff would be exposed to hatred, ridicule, or contempt as a result of this statement. Nor would it plausibly "injure her business." At worst, it is a "minor and immaterial inaccuracy." *See Mercola v. The New York Times Company,* No. 2:23-CV-545-SPC-KCD, 2024 WL 551952, at *4 (M.D. Fla. Feb. 12, 2024) (dismissing a defamation claim with prejudice for not plausibly defaming the plaintiff).[13]

Unlike the statement in *Mercola*, Defendant did not (implicitly or overtly) reference Plaintiff's profession, diligence, character, or anything beyond her having moved out from her father's house at some unspecified date in time during Defendant's childhood. Therefore, considering the statement in context of the series and drawing all reasonable inferences in Plaintiff's favor, the statement simply cannot be defamatory because it would not tend to harm Plaintiff or expose her to hatred,

---

[13] The plaintiff in *Mercola* was a scientist and doctor who had an article written about him indicating that he was responsible for spreading coronavirus misinformation. *Id.* at *1. The statement at issue, within an article, indicated that the plaintiff-scientist "did not address whether his coronavirus claims were factual" in a response to the publisher and mentioned certain research that he failed to provide, and that the publisher could not verify. *Id.* at *2.

The plaintiff in *Mercola* argued that the statement was defamatory because he in fact did identify and provide the publication in his response. Therefore, he argued that the article implied he lied about his scholarly work or was so confused he could not identify it. *Id.* Nevertheless, the Court found that "Defendant's literal report that Plaintiff did not identify his publication and it could not verify his claim does not tend to lower Plaintiff's reputation in the community. It does not expose Plaintiff to hatred, ridicule, or contempt. It does not injure his business. It is at best a minor and immaterial inaccuracy." *Id.* at *4. Therefore, it dismissed his claim with prejudice. *Id.* at *5.

31

ridicule, or contempt.[14] *Wolfson,* 273 So. 2d at 778 ("Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in either dismissing the complaint for failure to state a cause of action or in granting a directed verdict at the proof stage.").

Additionally, Statement Five (as it relates to how Defendant split her time as a child) is substantially true based on Plaintiff's own allegations. Falsity only exists if a publication is substantially and materially false, not just technically false. *See Smith*, 731 So.2d at 707. Here, even if Plaintiff somehow could prove that Defendant spent more time as a child with her father than she remembered, the "gist" of Defendant's statement would still be substantially and materially true. *See Jeter,* 2014 WL 4996247 at *3. Per Plaintiff's own allegations, Defendant spent some time with her father and some time with her mother. Doc. 72 at 10–11. This statement therefore cannot support a claim for defamation because it is substantially true.

Plaintiff goes on to list extraneous facts that have little to do with the statement, claiming to have helped Defendant with her homework and taken her shopping. *Id.* at 11. Her response concedes that it is difficult to prove "what one's memory may be," but argues that "issues of memory are provable by" various "indicia," including "previous payments, photographs or testimony, to uncover the truth of a situation."

---

[14] Plaintiff's assertions that the "numerous isolated statements" about her in the series, "taken individually or collectively," falsely depict Defendant's story as being "rags-to-riches," while discrediting her sister as a liar and "fame seeker," (Doc. 72 at 10 ¶ 47) are untethered to any specific statements by Defendant and do not allow the Court to plausibly infer that the statement is defamatory either.

Doc. 79 at 8. In fact, though, it would be impossible for Plaintiff to objectively falsify Defendant's statement, given that it was a memory provided in the context of how Defendant felt about her own childhood. Therefore, Florida law (and the First Amendment) wisely bars the claim from going forward. *See Turner*, 198 F. Supp. 3d at 1370.

The Court doubts that Statement Seven [15] could plausibly be considered defamatory either. Nevertheless, it is subject to dismissal based on a more obvious defect—that it is a protected opinion (in addition to Plaintiff's failure to allege actual malice).

First, Statement Seven is a protected opinion because it is not subject to "empirical proof" or "objectively verifiable." *See Turner,* 198 F. Supp. 3d at 1370. Defendant states that she does not "remember seeing [Plaintiff] when I was a kid at my dad's house, if and when they would come around." Doc. 72 at 10 ¶ 49(c). In the clips preceding this statement, she and Prince Harry describe their personal goals and wishes for themselves as parents and for their children. Doc. 75 at 18.[16] A reasonable

---

[15] "I don't remember seeing her when I was a kid at my dad's house, if and when they would come around." (Doc. 75-2 at 14):

[16] **Prince Harry**: My son, my daughter, my children are mixed-race, and I'm really proud of that. When my kids grow up and they look back at this moment, and they turn to me and say, "What did you do in this moment?" I want to be able to give them an answer.

[. . .]

**Prince Harry:** But equally what's most important for the two of us is to make sure that we don't repeat the same mistakes that perhaps our parents made.

viewer could not perceive it as defaming Plaintiff, considering the statement in the context of how Defendant remembers being a child of divorced parents and hopes to be as a parent. *See Fortson,* 434 F. Supp. 2d at 1379. Moreover, considering that Defendant qualifies the statement by stating she does not "*remember*" seeing Plaintiff "*if and when*" she and her brother came around, the falsity of this statement could not objectively be proven. *Keller,* 778 F.2d at 717.

Finally, Plaintiff fails to plausibly allege actual malice as to either statement. To do so, she must include factual allegations that allow the court to plausibly infer Defendant made her statements "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1192 (11th Cir. 1999) (internal citations and quotations omitted). As previously mentioned, Plaintiff's primary actual malice allegation is a conclusory recitation of the standard, referencing her defamation-by-implication claims in particular. Doc. 72 at ¶ 80. She also states that "at the time the statements were made [Defendant] had actual knowledge that these statements were false." *Id.* ¶ 69. In addition, Plaintiff argues that Defendant "knew that the facts within the statements were false," and that her statements were "stated with actual malice." Doc. 79 at 14.

These allegations are legal conclusions that the Court need not take as true, even at this stage. *Iqbal,* 556 U.S. at 578. Sufficiently pleading actual malice requires Plaintiff to allege facts that would allow the Court to reasonably infer that Defendant

---

**Defendant:** There's so much I think from anyone's childhood that you bring with you into the present, especially when you're the product of divorce. (*See* Doc. 75 at 18–20).

"actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 702–703 (11th Cir. 2016). The conclusory recitations mentioned above fail to meet this standard.

Plaintiff's claims based on statements Five and Seven will be dismissed, with prejudice, because amendment would be futile. *Taylor v. Florida State Fair Auth.,* 875 F. Supp. 812, 814 (M.D. Fla. 1995) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Specifically, having reviewed the contents of the series, the complaint, and the Parties' briefing and oral argument, these communications could not possibly serve as grounds for a claim. There is  no way for Plaintiff to objectively prove either statement, which makes them protected statements of opinion. *See Turner,* 198 F. Supp. 3d at 1370. Additionally, Statement Five is substantially true, from Plaintiff's own allegations, and she fails to plausibly allege actual malice as to either statement. Therefore, these statements cannot support a claim for defamation and will be dismissed with prejudice. *Shatner,* 2018 WL 3769968, at *7.

Finally, Plaintiff conceded at oral argument, and in her sur-reply (Doc. 89 at 4) that Statement Six is non-actionable based on the numerous public reports that Plaintiff has claimed that she raised Defendant. The law supports this conclusion. Because this claim was repeated in numerous prior reports, including one quoted in the series itself, a finding of actual malice is precluded. *Rosanova v. Playboy Enterprises,*

*Inc.,* 580 F.2d 859, 862 (5th Cir. 1978).[17] These articles were cited in Defendant's request for Judicial Notice (Doc. 75 at 4 n.2.), which Plaintiff withdrew partial opposition to at oral argument. Therefore, the claim as to Statement Six will be dismissed as well, with prejudice.

*Statements Sixteen and Seventeen – Netflix Series* (Doc. 75-3 at 26)

The next two statements were presented in the following context. First, a social media post (a "Tweet") from an unknown user with a blurred-out screenname was shown at **31:43**, stating the following:

> *Condolence for Prince Harry and Meghan Markle enjoy your moment. We will not support you and the day your wedding Curse you, MM witch, gold digger, immoral, sex maniac dirty bitch, selfish, fake, scammer gold digger, We hate you MM.*

Then, Defendant and Prince Harry said the following:

**Prince Harry:** The seriousness of what has happened to hear [sic] and what happened - what happened to us, and what continues to happen to her, that needs to be acknowledged.

**Defendant:** Also I think for people to really understand, you know, when you plant a seed that is so hateful what it can grow into. I mean, just a couple days ago I was going through the manual for our security team at home. And on one of the pages that I happened to flip to it was about online monitoring. And they were, like, "If you see a tweet like this, please report it to head of security immediately." And it just said, "Meghan just needs to die. Someone needs to kill her. Maybe it should be me."

**Defendant:** And you're just, like, okay. That's, like, what's actually out in the world because of people creating hate. And I'm a mom. That's my real life, you know? And that's the piece when you see it and you go, you

---

[17] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

are making people want to kill me. It's not just a tabloid. It's not just some story. You are making me scared, right?

Plaintiff argues that the underlined comments were defamatory. Specifically, she excerpts Defendant's statements that "when you plant a seed that is so hateful, what it can grow into," and "You're making people want to kill me . . . You are making me scared." Doc. 72 at 12 ¶¶ 49(e)–(f) .

Defendant contends that the statements, based on the context and preceding information, referred not to Plaintiff, but to the media and a group of unspecified "secondary" hate accounts. Doc. 74 at 13. She argues that Plaintiff cannot magically wave away the context of the statement when the transcript contradicts her allegations. *Id.* Finally, Defendant argues that the statements cannot support a defamation claim because neither sufficiently specifies Plaintiff as its subject. *Id.*

As to Statements Sixteen through Eighteen, Plaintiff essentially responds that the statements are defamatory when "all of [Defendant's] statements are combined" and that these statements, when "added to the mosaic . . . are indivisibly setting the framework which supports the defamation." Doc. 79 at 10–11. No authority is cited for this line of argument.

To the contrary, the Court agrees that these statements are clearly and fatally deficient. Plaintiff is indeed not named in either one, and based on the context, the transcript, and the footage of the episodes, there are not "sufficient facts or references" to identify Plaintiff as the subject of the statements. *Mac Isaac v. Twitter, Inc.,* 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021).

As to Statement Seventeen, the Court agrees with Defendant that a reasonable viewer would identify the "[y]ou" in the phrase "You're making people want to kill me . . . you are making me scared" as either the unnamed social media user whose message was shown on the screen, or the media, based on Defendant's reference to "a tabloid" in the same statement. Doc. 75-3 at 26–27. This being the case, the Court cannot plausibly infer that Statement Seventeen is "of and concerning" Plaintiff or plausibly states a defamation claim as against Defendant.

Statement Sixteen is even more clearly deficient, as it fails to reference any person at all, and instead is Defendant's opinion on how hate can "grow into" something more. After the tweet referenced above was shown, Defendant stated: "Also I think for people to really understand, you know, when you plant a seed that is so hateful what it can grow into." Doc. 72 at 12 ¶ 49(e). In context, a reasonable viewer might take this to reference the previous discussion of the tabloids, the unnamed accounts allegedly attacking Defendant online, or other groups. This, however, is not enough for the Court to reasonably infer that the statement contained "sufficient facts or references" to identify Plaintiff as its subject and thus be capable of supporting a defamation claim. *Mac Isaac*, 557 F. Supp. 3d at 1258.

Moreover, both statements are protected opinions because they are not objectively verifiable or statements of fact. Defendant's statement that she believed the hate posts were "making people want to kill me. It's not just a tabloid. It's not just some story. You are making me scared, right?" is not subject to empirical proof. *Turner*, 198 F. Supp. 3d at 1370. It is no more possible to falsify Defendant's statement that people

should be aware of how a "seed" that is "hateful" can grow. *Id.* Therefore, neither statement can support a claim for defamation.

Based on these fundamental deficiencies, the Court finds that Plaintiff cannot state a plausible claim based on either statement, even through amendment. Therefore, the claims based on Statements Sixteen and Seventeen will be dismissed with prejudice. *Shatner*, 2018 WL 3769968, at *7.[18]

**Bouzy's Statements**

In addition to Defendant's statements from the Netflix Series, Plaintiff seeks to hold Defendant liable for a number of statements by Christopher Bouzy, a social media analyst who "worked for Bot Sentinel and was retained by [Defendant] for the Series, and in his employ by [Defendant], in the course of and scope of his retention . . . said and [Defendant] published" nine allegedly defamatory statements. Doc. 72 at 11 ¶ 49(d). Defendant argues that she cannot be held liable for these statements because: (1) they are not her statements, and (2) even if they were, they are non-actionable opinions or substantially true. Doc. 74 at 13–22. Plaintiff disagrees, arguing that Defendant published the statements, regardless of whether she was their "actual author." Doc. 79 at 3. Furthermore, Plaintiff argues that the statements were defamatory. *Id.* at 8–19.

*Publication*

---

[18] Separately, Plaintiff again fails to plausibly allege actual malice as to either statement.

Publication is an element of defamation. *Rapp,* 997 So. 2d at 1106. As the Florida Supreme Court has explained, "[b]ecause the publication of a statement is a necessary element in a defamation action, only one who publishes can be subject to this form of tort liability." *Doe v. Am. Online, Inc.,* 783 So. 2d 1010, 1017 (Fla. 2001) (discussing the definition of "publisher" in a negligence action involving "distributor liability," which is "indistinguishable from a garden variety defamation action"); *see also Zimmerman v. Buttigieg,* 521 F. Supp. 3d 1197, 1212 (M.D. Fla. 2021).

Taking her allegations as true and drawing all reasonable inferences in her favor, Plaintiff sufficiently pleads that Defendant "published" the statements. [19] Her allegation that Bouzy was retained by Defendant for the Series and made the statements while in Defendant's employ and "in the course and scope of his retention" is enough to withstand Defendant's challenge, at least at the motion to dismiss stage. *Doe,* 783 So. 2d at 1017 (holding that "[i]n addition, both the negligent communication of a defamatory statement and the failure to remove such a statement when first communicated by another party—each alleged by [plaintiff] here under a negligence label—constitute publication.").

---

[19] Although the Court will not dismiss the claims based on Bouzy's statements for failure to allege publication, the question of whether Defendant could ultimately be held liable for his statements is far from certain. Defendant adamantly denies compensating or employing Bouzy, stating that "Plaintiff's allegation that [Defendant] hired Bouzy for the Series is a false statement which, as Plaintiff's counsel has been told, will be met at the appropriate time with a Rule 11 motion if it is not withdrawn from the TAC." Doc. 74 at 14. Plaintiff's response, without citing to authority, states that "[Defendant] claims that she is not responsible for the statements of Bouzy, but the fact is that she was the producer of the Series, and it was [Defendant] who had the final authority as to what was included." Doc. 79 at 12. Regardless, as discussed *infra,* none of Bouzy's statements are actionable as against Defendant.

40

*Statements Eight and Eleven through Fifteen – Netflix*

Defendant argues that these six statements of Bouzy's are not actionable because they are not directed to Plaintiff, and therefore are not plausibly defamatory. Doc. 74 at 14–16. Plaintiff concedes that it is "possible that Statements 8 and 15 were not directed at [Plaintiff]," but disagrees as to the rest. Doc. 70 at 11–15. The Court agrees that these statements are due to be dismissed, with prejudice, because they cannot plausibly support a defamation claim.

*Statement Eight – Netflix Series* (Doc. 75-3 at 22)

**Bouzy**: "So this is not your everyday trolling . . . it's insane. And it was done by people who were just not the typical quote-unquote trolls. Thes [sic] are housewives. These are middle-aged Caucasian women creating just constant attacks, from "Go back to America," to basically, you know "Why don't you die?"

Defendant argues that Plaintiff clearly was not among the "housewives" Bouzy references based on the immediately preceding footage of various YouTube personalities, none of whom are Plaintiff, attacking Defendant. Doc. 74 at 15. Plaintiff responds that it is possible this statement was not directed at her, "though they are intertwined in the statements made against [Plaintiff]." Doc. 79 at 11. Plaintiff argues that the descriptor "middle-aged Caucasian women" applies to her, and that her claim should thus go forward. *Id.* at 11–12. Defendant replies that this description applies to millions of women, and that the phrases used in this statement would be pure opinion and non-actionable even if Plaintiff had been identified. Doc. 82 at 5.

Defendant provides an accurate description of the statement's context, and the Court agrees that this claim is due to be dismissed. First, there are insufficient "facts

or references" to identify Plaintiff as the subject of the statement. *Mac Isaac*, <u>557 F. Supp. 3d at 1258</u>. Thus, it cannot be defamatory towards her. *Id.* Next, there is indeed no way to objectively prove or disprove that a group of individuals are "trolls."[20] This characterization is unverifiable and not subject to empirical proof. Because it is not "capable of being proved false, [the statement] is protected from a defamation action." *New York Post Co.,* <u>568 So. 2d at 458</u>. Additionally, as is true regarding all of Bouzy's statements (discussed *infra*), Plaintiff fails to allege actual malice. Because there is no way to plead a defamation claim based on this statement of protected opinion, which does not sufficiently reference Plaintiff in the first place, and Plaintiff also fails to plead actual malice, the Court will dismiss this claim with prejudice. *Shatner*, <u>2018 WL 3769968</u>, at *7.

Statement Eleven – Netflix Series (<u>Doc. 75-3 at 25</u>)

**Prince Harry:** <u>Perhaps the most troubling part of this is the number of British journalists interacting with and amplifying the hate and the lies.</u> When a lie spreads on social media it's dangerous, of course it is. But when that same lie is given credibility by journalists or publishers it's unethical and as far as I'm concerned an abuse of power.

That this statement was included in the operative complaint is perplexing and suggests haste, a misunderstanding of the law, or a lack of diligence on the part of Plaintiff's counsel. Based on the transcript (*and* the footage) of this episode, Prince

---

[20] The context of the Series and the briefing indicates that the Parties apply the common modern-day definition of troll: "a person who intentionally antagonizes others online by posting inflammatory, irrelevant, or offensive comments or other disruptive content," rather than the trolls of Scandinavian folklore or any alternative definition. *See* Merriam–Webster, www.merriam-webster.com/dictionary/troll (last visited Feb. 12, 2024)

Harry made this statement, not Bouzy, and not Defendant. *Id.* Moreover, it is unclear how this statement could be defamatory towards Plaintiff, as it does not reference her. Defendant points this out. Doc. 74 at 14–15. Plaintiff responds as follows (Doc. 79 at 13):

> Statement No. 11 is not defamatory in its own right. It is simply implying that Samantha's bullhorn is greater than it would seem, in that the British journalists are amplifying the hate which they are falsely accusing Samantha of spewing. As to malice, Meghan acted with malice when she chose the words and made the statements about her sister, the Plaintiff.

Thus, Plaintiff completely ignores the fact that Defendant did not make this statement. First, in her complaint, she alleges that Bouzy made the statement. Doc. 72 at 11 ¶ 49(d). Then, her response discusses Defendant's malice in choosing "the words and ma[king] the statements." Doc. 79 at 13. In fact, this statement was spoken by somebody else entirely. The Court agrees with Plaintiff's own concession that the statement is "not defamatory in its own right" (Doc. 79 at 13) and will dismiss this claim because Plaintiff fails to plausibly allege that the statement identifies her in the first place. *Mac Isaac*, 557 F. Supp. 3d at 1258. Nor does the complaint or any pleading explain how Defendant can be sued for Prince Harry's statement. Amendment would be futile, and this (royally) deficient claim is dismissed with prejudice. *Shatner*, 2018 WL 3769968, at *7.

*Statements Twelve through Fourteen – Netflix Series* (Doc. 75-3 at 25)

These three statements, made by Bouzy, came back-to-back in the same interview response.

43

**Bouzy**: [**Statement Twelve**] <u>For the main hate accounts their primary motive is monetizing this stuff.</u> [**Statement Thirteen**] <u>But the secondary accounts, it's about hatred,</u> [**Statement Fourteen**] <u>it's about, you know, race.</u>

Defendant argues that the claims must be dismissed because Plaintiff is not identified as one of the "main" or "secondary hate accounts." <u>Doc. 74 at 15</u>–16. Moreover, she argues that the claims are per se non-actionable because, where a group is composed of twenty-five or more members, Florida law holds that plaintiffs cannot show that the statements were "of and concerning" them. *Id.* (citing *Thomas v. Jacksonville Television, Inc.,* <u>699 So. 2d 800, 805</u> (Fla. 5th DCA 1997)).

Plaintiff responds that Defendant *can* be held responsible for Bouzy's statements but fails to initially respond to the arguments that the statements are not "of and concerning" Plaintiff and are nonactionable due to the group's size. <u>Doc. 79 at 12</u>. Elsewhere, under the heading *Allegation that Samantha was a Racist*, Plaintiff argues that "[w]hen [Defendant] spoke negatively of people who she grouped as the ones who all had the same qualifying factor to belong to the group, she was not speaking of an actual group." *Id.* at 8–9. Finally, in her sur-reply, Plaintiff argues that Defendant's group-defamation argument:

> would be a good point except for the fact that there was no such "group." In *Thomas,* for instance, the group was allegedly defamed, and the plaintiff sought an inference that it therefore defamed the plaintiff. This is not what is occurring, here. Here, there is no group. It was only Meghan and Bouzy categorizing people into a group of people who spread disinformation. If spewing disinformation makes you a member of a group, by including Samantha in the group, Meghan and Bouzy were specifically saying that Samantha spread disinformation.

<u>Doc. 89 at 5</u>.

Plaintiff's response is difficult to parse and contradicted by the transcript. Bouzy says the following in the relevant statement:

> We looked at 114,000 tweets and we were able to then determine that 70% of the, you know, hateful content came from just 83 accounts and they had a reach of 17 million people.

Doc. 75-3 at 22.

Plaintiff argues that "there is no group" because "[i]t was only [Defendant] and Bouzy categorizing people into a group of people who spread disinformation." Doc. 89 at 5. Her circular argument is essentially that no group exists because she is at odds with the individuals who identified the group, Defendant and Bouzy. Plaintiff cites to no authority and her argument fundamentally does not add up.

Therefore, the Court agrees that this statement is protected because when "a group is large, that is, composed of twenty-five or more members, courts consistently hold that plaintiffs cannot show the statements were 'of and concerning' them." *Thomas,* 699 So. 2d at 805. Statements Twelve through Fourteen, which refer to a group of 83 accounts and do not specifically reference Plaintiff, are non-actionable under Florida law and will be dismissed with prejudice. *Shatner,* 2018 WL 3769968 at *7.[21]

---

[21] The Court also notes that such statements speculating on the motives of such a large group of accounts and individuals would likely be impossible to verify and therefore constitute protected opinion. *See Turner,* 198 F. Supp. 3d at 1370.

*Statement Fifteen – Netflix Series* (<u>Doc. 75-3 at 26</u>)

**Bouzy**: And the focus was predominantly on Meghan. Comparing her to, for example, you know, a monkey. And then also there would be derogatory terms where <u>they would use the N-word on tweets</u>.

Defendant argues that Bouzy did not accuse Plaintiff of using the "N-word" in this statement, and that because this statement follows a reference to 83 accounts spreading disinformation, it too is precluded from supporting a defamation claim as a matter of law. <u>Doc. 74 at 15</u>. Plaintiff responds that "she [presumably referring to Defendant, although Bouzy in fact made the statement]" made this statement, that Plaintiff "never used the N-word on any tweet," and that this was false. <u>Doc. 79 at 12</u>. In essence, again, Plaintiff fails to address the substance of the argument, besides in her sur-reply, whereas previously discussed, she unpersuasively argues that no group exists because she does not agree with the individuals who created the group. *See* <u>Doc. 89 at 4</u>–5.

Plaintiff's claim as to this statement is due to be dismissed because it is not plausibly "of and concerning" her, is thus not capable of being defamatory, and because it lacks "sufficient facts or references" to identify her as the subject of the statements. *Mac Isaac*, <u>557 F. Supp. 3d at 1258</u>. As this statement cannot support an actionable claim against Defendant, Plaintiff's claim will be dismissed with prejudice. *Shatner*, <u>2018 WL 3769968</u> at *7.

*Statements Nine and Ten – Netflix Series* (Doc. 75-3 at 24)

*Statement Nine*

**Bouzy**: <u>Samantha Markle was part of the group that was putting out a lot of this disinformation</u>. Samantha had her account suspended, and then we actually sent Twitter a list because she had, like, 11 additional accounts**.**

*Statement Ten*

**Bouzy**: <u>And we were baffled by this. You know,</u> <u>how can the half-sister of Meghan be part of a hate group?</u>

Defendant argues that these two statements, the only ones to specifically identify Plaintiff, are both unfalsifiable and thus protected from a defamation action. Specifically, she cites an opinion from the Middle District of Alabama, which granted a Rule 12(b)(6) motion, holding that "the meaning of the term 'hate group' is so 'debatable, loose and varying,' that labeling [a plaintiff] as one is 'insusceptible to proof of truth or falsity.'" *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,* <u>406 F. Supp. 3d 1258, 1277</u> (M.D. Ala. 2019) (analogizing "hate group" to the non-actionable terms "fascism," "radical right," and "political Marxist"), *aff'd,* <u>6 F.4th 1247</u> (11th Ci<u>r. 2021)</u>, *cert. denied,* <u>142 S.Ct. 2453</u> (2022) (internal citations and quotations omitted). <u>Doc. 74 at 17</u>. Defendant argues that the same is true of the concept of "disinformation." *Id.* (citing *Project Veritas v. Leland Stanford Junior Univ.,* <u>2022 WL 1555047</u>, at *7 (W.D. Wash. May 17, 2022)).

Plaintiff responds that she is not arguing that Defendant is liable for defamation based on the disinformation or hate group allegations. <u>Doc. 79 at 13</u>. Instead, she argues that "[t]his is a statement which ties all the allegations of racism, spreading

47

hateful information which is making people want to kill her sister, Meghan, and the big lie that Samantha is an evil opportunist. This is more than an allegation. It is the string which is tying the package together." *See id*. Plaintiff fails to respond to Defendant's arguments regarding the statements being protected opinion, which are well taken, and the Court agrees that neither statement can be empirically verified or falsified, and thus both are non-actionable. *See Turner,* 198 F. Supp. 3d at 1370; *see Wolfson,* 273 So. 2d at 778. Because the statements cannot support a claim as against Defendant, they will be dismissed with prejudice. *Shatner*, 2018 WL 3769968, at *7. Plaintiff's various arguments regarding the implications of the statements and that they "[tie] the package together" (Doc. 79 at 13) will be addressed as to Count Two.

>  *Statement Eighteen – Netflix Series* (Doc. 75-3 at 24)

>  **Bouzy:** Samantha Markle was part of the group that was putting out a lot of this disinformation. Samantha had her account suspended, and then we actually sent Twitter a list because she had, like, 11 additional accounts.

Defendant argues that this statement was substantially true, by Plaintiff's own admission, and that she again fails to plead actual malice. Doc. 74 at 18. Defendant further claims that the failure to plead actual malice is apparent because the Series affirmatively included Plaintiff's proffered explanation for her dozen Twitter accounts and suspension. *Id.* In response, Plaintiff states Defendant "used a series of statements to create the implication that [Plaintiff] . . . was suspended from Twitter." Doc. 79 at 16. Plaintiff's complaint contradicts the argument that this statement was a false

48

"implication" by admitting that the suspension occurred, albeit for unrelated reasons. Doc. 72 ¶ 51.

As Defendant asserts, it is exceedingly clear that Plaintiff fails to plead actual malice as to this statement. The Series explicitly notes that "[a]ccording to [Plaintiff's] attorney [Plaintiff's] Twitter account has never been 'suspended' but was instead 'hacked,' resulting in 'imposter accounts' made by third parties to defame his client." Doc. 75-3 at 25. The Court agrees that Plaintiff therefore fails to and as a matter of law cannot plead actual malice as to this statement. *Jacoby v. Cables News Network, Inc.,* 537 F. Supp. 3d 1303, 1312 (M.D. Fla. 2021), *aff'd,* 2021 WL 5858569 (11th Cir. Dec. 10, 2021) (granting motion to dismiss, reasoning that comments attributed to "representatives" for plaintiff in the articles at issue were "contrary to the general conclusions reached in the articles," thereby "undermin[ing] Plaintiff's claims of malice") (citing *Michel,* 816 F.3d at 703; *Turner,* 879 F.3d at 1274).

Additionally, the Court agrees that the statement would otherwise be substantially true because Plaintiff's account was suspended, by her own admission. Doc. 72 ¶ 51. In another case, albeit applying the defamation law of another state, the Northern District of Georgia relied on similar reasoning to dismiss a claim arising out of CNN's statement that Twitter suspended an individual's account for promoting "misinformation"—notwithstanding that individual's claim that his account was actually suspended for sharing private information. *Project Veritas,* 591 F. Supp. 3d at 1332. Here too, the statement is substantially the same whatever the reason for the suspension, and it is thus non-actionable. *See Jeter,* 2014 WL 4996247 at *3. For these

reasons, Statement Eighteen cannot support a defamation claim and will be dismissed with prejudice. *Shatner*, 2018 WL 3769968, at *7.

*Actual Malice*

Although Plaintiff sufficiently alleged publication, all of the claims based on Bouzy's statements from the Series (Statements Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Eighteen) are due to be dismissed for the fact that Plaintiff fails to plausibly plead actual malice.

Actual malice requires that a plaintiff plead (and ultimately establish) that the defendant acted with the "knowledge that [a statement] was false or [] reckless disregard of whether it was false or not." *New York Times,* 376 U.S. at 280. Thus, surviving Defendant's 12(b)(6) argument on this point requires Plaintiff to plead allegations that allow the Court to reasonably infer that Defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel*, 816 F.3d at 702–703. Malice in this context refers to the truth, not to Plaintiff. *Masson*, 501 U.S. at 510. In fact, "ill-will, improper motive, or personal animosity plays no role in determining whether a defendant acted with actual malice." *Dunn,* 193 F.3d at 1198.

Here, Plaintiff falls far short of making the necessary allegations. Her response recites the definition of actual malice and claims that it applies here, as alleged in her complaint. *See* Doc. 79 at 13–14. However, such legal conclusions need not be credited

50

by the Court.[22] Tellingly, none of Plaintiff's background allegations plausibly allege that Defendant had serious doubts about Bouzy's statements or knew that they were false.[23] Further, Defendant is correct that based on *Rosanova v. Playboy Enterprises, Inc.,* 580 F.2d 859, 862 (5th Cir. 1978), Plaintiff cannot establish actual malice as to statements Nine, Ten, or Eighteen because the contents of those statements were "supported by a multitude of previous reports." Specifically, based on the articles in the record (*see* Doc. 75 at 4–5 n.3), Plaintiff's alleged harassment of Defendant had been widely reported by the time of the series. Thus, even if Defendant were responsible for Bouzy's statements (and they were actionable), actual malice is precluded as to those statements. *Rosanova,* 580 F.2d at 862.

As described above, each statement is also non-actionable for at least one other reason beyond Plaintiff's failure to allege actual malice. Therefore, all the claims based on Bouzy's statements are due to be dismissed with prejudice, as the statements on which the claims are based are non-actionable, and amendment would be futile. *Shatner,* 2018 WL 3769968 at *7.

---

[22] *See, e.g.,* Doc. 72 ¶ 80 ("[Defendant] engaged in such defamatory by implication conduct knowingly, intentionally and with actual malice. . .")

[23] These background allegations (*see, e.g.,* Doc. 72 ¶¶ 9, 10, 11, 19, 47, 55) allege, if anything, that Defendant harbors resentment or "ill-will" towards Plaintiff, but this does not constitute actual malice.

## B. Defamation by Implication

Plaintiff's original complaint included a claim for defamation by implication. Doc. 1 ¶¶ 38–43. Defendant filed a motion to dismiss that complaint, including that claim. Doc. 15. Subsequently, Plaintiff amended her complaint and replaced the claim with one for injurious falsehood. Doc. 31 ¶¶ 55–72. Now, the operative complaint revives this claim. Doc. 74 ¶¶ 74–82. Notably, it is based on precisely the same statements as the defamation claims and fails to reference any additional statements. *Id.*

Defamation by implication is deemed to occur (i) where there is a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (ii) where a defamatory implication is created by omitting facts. *Turner*, 198 F. Supp. At 1365–1366 (citing *Rapp*, 997 So.2d at 1106). Importantly, such claims are "analyzed under the same actual malice/negligence framework as traditional defamation claims." *See Jacoby,* 537 F. Supp. 3d at 1312. Furthermore, "[a]ll of the protections of defamation law that are afforded to the media and private defendants are . . . extended to the tort of defamation by implication." *Rapp*, 997 So.2d at 1108.

Under Florida law, defamation by implication "applies in circumstances where literally true statements are conveyed in such a way as to create a false impression." *Id.* The cause of action in other words, "arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts." *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1123–1124 (S.D.

Fla. 2021). Defamation by implication is thus "premised not on direct statements but on false suggestions, impressions and implications arising from otherwise *truthful* statements." *Id.* at 1124 (emphasis added).

Plaintiff alleges that based on the same statements alleged to be defamatory in Count One, Defendant is liable for defamation by implication because of how "she crafted her false narrative" to damage Plaintiff. Doc. 72 ¶ 75. She argues that Defendant "silence[d]" the truth by impugning and damaging her character, because Plaintiff "knew the truth of [Defendant]'s past." *Id.* ¶ 76. Defendant argues for dismissal of Count Two in full because the statements supporting the claim are non-actionable and the protections of defamation law extend to claims for defamation-by-implication. *See* Doc. 74.

The Court agrees. First, Plaintiff fails to adequately state a claim for defamation by implication for a simple reason. She fails to identify the literally true facts that would serve as the basis for such a claim. *Rapp,* 997 So. 2d at 1108. In fact, Plaintiff consistently alleges that all the statements based upon which she alleges defamation were false.[24] *See* Doc. 72 ¶ 59. Thus, her complaint logically precludes a defamation by implication claim as she fails to specify the true facts Defendant manipulated to create a defamatory implication. *See Griffin Indus., Inc.*, 496 F.3d at 1205–1206. In other

---

[24] She also alleges that Defendant's "false statements created the defamatory implication that Plaintiff had no relationship whatsoever with her sister and that Plaintiff was creating a lucrative career selling false stories to the tabloids and television programs." Doc. 72 ¶ 79. Further, Plaintiff alleges that "none" of Defendant's statements from the CBS interview were true. Doc. 72 ¶ 37.

words, she fails to specify how Defendant has either "juxtaposed" facts in order "to imply a defamatory connection between them" or "omitted" facts in a way that "creates a defamatory implication." *Corsi*, 519 F. Supp. 3d at 1123–24.

Additionally, the bulk of the complaint and Plaintiff's briefing focus on Defendant's allegedly false statements. This makes sense because defamation (Count One) generally involves untruths. But defamation by implication is, by definition, the manipulation of *true facts* to create a defamatory effect. *See, e.g., Flynn v. Cable News Network, Inc.,* No. 8:22-cv-343-MSS-SPF, 2023 WL 5985196, at *6 (M.D. Fla. Mar. 17, 2023) ("Florida does recognize the tort of defamation by implication as a concept by which *literally true statements* can be defamatory where they create a false impression." (emphasis added)); *Rapp*, 997 So. 2d at 1106.

With this background in mind, the Court can largely put aside Plaintiff's many allegations regarding Defendant's false statements, and why they were false, in analyzing this count. Where Plaintiff does begin to suggest that Defendant has manipulated *true* facts, her allegations are insufficiently vague. *See e.g.*, Doc. 72 ¶ 75 ("It is not just the words [Defendant] used, but also how she crafted her false narrative that causes damage to [Plaintiff]. Not accomplished by direct statements about [Plaintiff] alone; but also, in [Defendant]'s juxtaposition of lie and fact and the surgically precise omission of truth, that, like the spider and the fly, weaves [Defendant]'s false narrative and injures [Plaintiff], encapsulating the unsuspected listener in the gossamer web of fiction, spun by [Defendant]."); *Id.* ¶ 77 ("One can look at any one of the above statements from either of the Interview and the Series and see

how those statements damage and defame [Plaintiff]'s character by the juxtaposition of [Defendant]'s lies with facts to imply [Plaintiff] is a liar, untruthful fame-seeker, racist and only out to hurt [Plaintiff] to make an unearned and unworthy name for herself.").

These general allegations fail to put Defendant on notice of the specific facts she's (supposedly) manipulated in her effort to "weave" a tapestry of defamation. *Cf. Carroll v. TheStreet.com, Inc.*, 2012 WL 13134547, at *5 (S.D. Fla. May 25, 2012) (granting in part a motion to dismiss a defamation-by-implication claim because "the complaint ma[de] only general, conclusory allegations as to the defamatory nature" of a lengthy exhibit). Because Plaintiff fails to identify the true facts Defendant has manipulated to defame her by implication, Count Two will be dismissed.

Finally, a second (but no less important reason) that Count Two fails is that the Court has already found that each of the statements on which the defamation claims were based are non-actionable. As the protections of defamation law extend to defamation-by-implication claims, this would necessarily doom these claims as well. *See Rapp*, 997 So.2d at 1108.

**Leave To Amend Generally**

District courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Whether "justice so requires" resides within the Court's discretion. *Blackburn v. Shire US Inc.*, 18 F.4th 1310, 1317 (11th Cir. 2021) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999)).

55

The Court considers five factors in deciding whether to provide an opportunity to amend: "(1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, and (5) futility." *Blackburn*, <u>18 F. 4th at 1317</u>–1318 (citing *Foman*, <u>371 U.S. 178, 182</u> (1962); *Burger King Corp.,* <u>169 F.3d at 1319</u>); *see also Bryant v. Dupree,* <u>252 F.3d 1161, 1163</u> (11th Ci<u>r. 2001</u>).

Here, dismissal of both claims with prejudice is warranted. Plaintiff has been given several opportunities to amend, along with guidance and a reminder to be mindful of Rule 11 (<u>Doc. 70 at 20</u> n. 6). Nevertheless, Plaintiff's amendments were sparse (though she added a number of deficient claims based on a new publication), often contradictory or unsupported by authority whatsoever, and largely failed to cure deficiencies identified in the Court's previous order (as to the interview claims). *See* <u>Doc. 70 at 20</u>, <u>25</u>.

Moreover, as to Count Two, amendment would be futile both because Plaintiff largely fails to even try and indicate which true statements form the basis of her claim, and because "[a]ll of the protections of defamation law that are afforded to the media and private defendants are . . . extended to the tort of defamation by implication." *Rapp*, <u>997 So.2d at 1108</u>. Having found that Plaintiff's defamation claims in Count One are based on non-actionable statements, there is no reason to believe amendment of Count Two would lead to a viable claim either.

Therefore, any further amendment would be futile. Of the nearly twenty allegedly defamatory statements Plaintiff has put forward and briefed, not even one

survives a Rule 12(b)(6) challenge. Instead, all of the statements Plaintiff seeks to hold Defendant liable for are non-actionable under Florida law and the First Amendment. There is no reason to think that another amended complaint would be different.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court grants the motion to dismiss, in full. Plaintiff's claims will be dismissed with prejudice, as she has failed to identify any statements that could support a claim for defamation or defamation-by-implication by this point, her third try at amending her complaint, in either the book *Finding Freedom*, the Netflix series *Harry & Meghan*, or Defendant and her husband's hour-long televised CBS Interview. As such, the Third Amended Complaint will be dismissed, with prejudice.

Accordingly, it is **ORDERED**:

1. Defendant's Motion to Dismiss for Failure to State a Claim (<u>Doc. 74</u>) is **GRANTED.**

2. Plaintiff's Defamation Claims (Count One) are **DISMISSED WITH PREJUDICE**.

3. Plaintiff's Defamation-By-Implication Claims (Count Two) are also **DISMISSED WITH PREJUDICE**.

4. The Clerk is directed to enter judgment in favor of Defendant, Meghan Markle, (also known as Meghan, the Duchess of Sussex), terminate any pending motions, and **CLOSE** this case.[25]

   **DONE** and **ORDERED** in Tampa, Florida on March 12, 2024.

   *Charlene Edwards Honeywell*
   Charlene Edwards Honeywell
   United States District Judge

Copies furnished to:

Counsel of Record

---

[25] This order makes no ruling on attorney's fees under Florida's Anti-SLAPP statute, which Defendant indicates she will move for upon dismissal. Doc. 74 at 22.

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**SAMANTHA M. MARKLE,**

        **Plaintiff,**

**v.**                                                **Case No: 8:22-cv-511-CEH-TGW**

**MEGHAN MARKLE,**

        **Defendant.**

_____

## JUDGMENT IN A CIVIL CASE

**Decision by Court.**   This action came before the Court and a decision has been rendered.

        **IT IS ORDERED AND ADJUDGED**

        Judgment is entered in favor of Defendant, Meghan Markle, (also known as Meghan, the

Duchess of Sussex).

**Any motions seeking an award of attorney's fees and/or costs must be filed within the time and in the manner prescribed in Local Rule 7.01, United States District Court Middle District of Florida.**

Date: March 12, 2024

                                      ELIZABETH M. WARREN,
                                      CLERK

                                      s/AS, Deputy Clerk

# CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. V. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

    (b)  **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5**: The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule**: Limited exceptions are discussed in cases including, but not limited to: Cohen V. Beneficial Indus. Loan Corp., 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F. 2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2.  **Time for Filing:** The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

    (a)  **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)  **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)  **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)  **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)  **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:22-cv-00511-CEH-TGW

SAMANTHA M. MARKLE,

      Plaintiff,

v.

MEGHAN MARKLE,

      Defendant.

_____/

## **NOTICE OF APPEAL**

Notice is hereby given that the Plaintiff, SAMANTHA M. MARKLE, by and through her undersigned counsel, appeals to the United States Court of Appeals for the Eleventh Circuit from the Order Granting Defendants, Meghan, the Duchess of Sussex, Motion to Dismiss entered by the Honorable Charlene Edwards Honeywell on March 12, 2024 [ECF 113].

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this 8th day of April  2024, with the Clerk of Court using CM/ECF, which will send a notice of electronic filing to all Parties listed on the Service List.

Respectfully submitted,

   /s/ Peter Ticktin
Peter Ticktin, Esquire
Fla Bar No. 887935
Serv512@LegalBrains.com
Jamie Alan Sasson, Esquire
Fla Bar No. 10802
Serv513@LegalBrains.com
Ryan Fojo, Esquire
Fla Bar No. 1035588
Serv549@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (813) 639-4211
*Attorneys for the Plaintiff*

## SERVICE LIST

**Jonathan P. Steinsapir**
Kinsella Weitzman Iser Kump & Aldisert, LLP
3rd Floor
808 Wilshire Blvd
Santa Monica, CA 90401
310/566-9834
Fax: 310/566-9884
Email: jsteinsapir@kwikalaw.com
*ATTORNEY TO BE NOTICED*

**Michael J. Kump**
Kinsella Weitzman Iser Kump & Aldisert, LLP
3rd Floor
808 Wilshire Blvd
Santa Monica, CA 90401
310/566-9800
Fax: 310/566-9850
Email: mkump@kwikalaw.com
*ATTORNEY TO BE NOTICED*

2

**Nicholas C. Soltman**
Nicholas C. Soltman
11766 Wilshire Blvd.
Suite 750
Los Angeles, CA 90025
310-566-9857
Fax: 310-566-9898
Email: nsoltman@kwikhlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronnie J Bitman**
Bitman O'Brien & Morat, PLLC
615 Crescent Executive Court
Suite 212
Lake Mary, FL 32746
407-815-3110
Fax: 407-815-2367
Email: rbitman@bitman-law.com
*ATTORNEY TO BE NOTICE*

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:22-cv-00511-CEH-TGW

SAMANTHA M. MARKLE,

      Plaintiff,

v.

MEGHAN MARKLE,

      Defendant.

_____/

## CORRECTED NOTICE OF APPEAL

Notice is hereby given that the Plaintiff, SAMANTHA M. MARKLE, by and through her undersigned counsel, appeals to the United States Court of Appeals for the Eleventh Circuit the "Judgment in a Civil Case" [ECF 114] which was a final judgment that adjudicated all remaining claims and the rights and liabilities of all remaining parties entered in favor of the Defendant, Meghan Markle, on March 12, 2024 in the above styled case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this 9th day of April 2024, with the Clerk of Court using CM/ECF, which will send a notice of electronic filing to all Parties listed on the Service List.

    /s/ Peter Ticktin
Peter Ticktin, Esquire
Fla Bar No. 887935
Serv512@LegalBrains.com
Jamie Alan Sasson, Esquire
Fla Bar No. 10802
Serv513@LegalBrains.com
Ryan Fojo, Esquire
Fla Bar No. 1035588
Serv549@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (813) 639-4211
*Attorneys for the Plaintiff*

## SERVICE LIST

**Jonathan P. Steinsapir**
Kinsella Weitzman Iser Kump & Aldisert, LLP
3rd Floor
808 Wilshire Blvd
Santa Monica, CA 90401
310/566-9834
Fax: 310/566-9884
Email: jsteinsapir@kwikalaw.com
*ATTORNEY TO BE NOTICED*

**Michael J. Kump**
Kinsella Weitzman Iser Kump & Aldisert, LLP
3rd Floor
808 Wilshire Blvd
Santa Monica, CA 90401
310/566-9800
Fax: 310/566-9850

2

Email: mkump@kwikalaw.com
*ATTORNEY TO BE NOTICED*

**Nicholas C. Soltman**
Nicholas C. Soltman
11766 Wilshire Blvd.
Suite 750
Los Angeles, CA 90025
310-566-9857
Fax: 310-566-9898
Email: nsoltman@kwikhlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronnie J Bitman**
Bitman O'Brien & Morat, PLLC
615 Crescent Executive Court
Suite 212
Lake Mary, FL 32746
407-815-3110
Fax: 407-815-2367
Email: rbitman@bitman-law.com
*ATTORNEY TO BE NOTICE*

3